# ROSTER OF APPENDICES

**APPENDIX #1 -**      Affidavit of Brian Artis, which is the foundation of this pleading and lower state court proceedings. It is this document which allows petitioner an exception to the AEDPA one (1) year statute of limitations pursuant 28 U.S.C. 2244 (d)(1)(d)

**APPENDIX #2-**      Denial of Relief - Louisiana Supreme Court (Supervisory PCR Brief) denied 2/7/14

**APPENDIX #3-**      Supervisory Writ of Review to La. Supreme Court

**APPENDIX #4-**      Mail Receipt showing Supervisory PCR filed to the Louisiana Supreme Court. 7/9/13

**APPENDIX #5-**      Supervisory Writ of Review to the Third Circuit Court of Appeal

**APPENDIX #6-**      Mail Receipt showing Supervisory PCR filed to the Third Circuit on 1/7/13. Prison withdrawal slip to cover mailing costs attached

**APPENDIX #7-**      Copy of Notice of Intent and the Order granting petitioner until March 22, 2013 to file pleadings

**APPENDIX #8-**      Post-Conviction Relief Application w/ Memo of Law Attached and exhibits

**APPENDIX #9-**      Mail Receipt showing PCR filed 12/10/12. Prison withdrawal slip to cover mailing costs attached

**APPENDIX #1 -**

Affidavit of Brian Artis, which is the foundation of this pleading and lower state court proceedings. It is this document which allows petitioner an exception to the AEDPA one (1) year statute of limitations pursuant 28 U.S.C. 2244 (d)(1)(d)

**Brian Artis**

Brian Artis

do hereby, without any force coercion or suggestion of anyone else, offer this true and correct statement of the following events, recognizing that I am subject to the penalty of perjury.

In November of 1995, I gave testimony in the case of State of Louisiana v. Marcus Artis. This testimony which I gave, I knew to be false and I willingly did so as a result of the threats which the prosecution had made against me, specifically, what they were willing to do to me if I chose not to cooperate and give the false testimony as instructed.

The District Attorney and I guess his investigators or whomever they were, told me that "we were going to play a little game of fill in the blanks", and in return I would get immunity from prosecution for involvement in what happened.

To the best of my knowledge and recollection, I did not know Marcus Artis, on the day that Sammy was killed, to be in possession of any type of weapon. However, the District Attorney made me testify to a false story that, I witnessed Marcus coming back to the car to get a gun that was under the armrest, then to watching him walk up to Sammy, raise the gun and fire. I also falsely testified to seeing Marcus pull Sammy's body into the wooded area and throwing the gun in the river." The whole of this testimony was invented by the prosecution and they rehearsed it with me until I committed it to memory, the employees of the Allen Parish District Attorney's Office, made certain that I was well versed in the false testimony.

Through observing all these cases about people who go to prison when they are innocent all because one or more witnesses gave false testimony to put them there. Seeing this weighed heavily on my conscious to the point that I felt that I needed to right the wrong the District Attorney made me commit. What I was forced to do is morally and legally wrong; it is further appalling to have a prosecutor to use me or anyone in this way to send someone to prison.

Contrary to what I was told to say, I know Marcus Artis to be a good person and I have never known him to be of a violent disposition. The Detectives constantly tried to make me feel comfortable and reassured that getting on the stand and repeating what they rehearsed with me (the false testimony, would not be difficult. Concerned about the lingering threats they directed at me, I gave the false testimony as instructed.

Since that day, I have thought over what they made me do time and time against and I have learned that the Da's and Detectives are legally bound to not force people to give false testimony, instead, they are supposed to uphold the law. They (they District Attorneys) are not to use their authority to put false testimony to a jury and they are definitely not supposed to cover up the wrong they've done.

One July 23, or the morning of July 24, when Artis stopped to pick us (me and Lavelle) up, the first thing he asked was, "where da weed at?" And Lavelle said, I stashed my weed but, I can't find it. Marcus said, "for the right price, I know somebody who will." That's when we saw Sammy, so Marcus stopped to pick him up. Marcus stuck his head out the window and said something, I don't what it was but Sammy got in behind the driver's seat. The next thing I remember was both Lavelle and Marcus getting back in the car. I was in and out of sleep from all the alcohol I had drank.

After that, the next thing I remember was Marcus waking me up in front of the house where my girlfriend was living. They dropped me off there and left. I did not see either of them again until a week later when Marcus cut me and Lavelle's hair. After that, me and Marcus

went to the funeral together.

Let the record reflect and it be forever binding by the verification of my signature, representing my Oath that, the contents of the statements I have made herein are true to the best of my knowledge and understanding and such has been declared before a duly authorized notary, who only affixed his/her signature hereto after having advised me of the penalty of perjury.

Be it know that anything said written or otherwise communicated in any way which sets forth facts contrary to what appears in this document is a lie, false and a distortion of the truth.

I believe that had the jury known my testimony to be false and that this false testimony was created and rehearsed to me by the district attorney and his employees until I learned it and that I had been threatened and intimidated by them, the jury in this case might have reasonably made different findings. I do know that the reason the district attorney made me give this false testimony was to get them jury to believe certain invented facts and affect their decision-making. The district attorney in State of Louisiana v. Marcus Artis deliberately forced me to give testimony they knew to be false to the trial jury in that case, they misrepresented the factual picture of that case and for them to put me on the stand to testify falsely silently communicates to the jury that they believed I had the truth to offer when they really knew it was all false.


_____
Brian Artis

## NOTARY

The undersigned did appear before me, and after being duly sworn, did make the aforementioned statements. He did express his willingness to commit to the required oath. He was thereafter apprised of the penalty of perjury and appeared to be of sound competent mind and body, further after reasonable questioning he did seem to fully understand the oath given and what is connotes as well as his actions. He expressed that the execution of this document and his statements contained herein are the product of his own wishes, in the absence of duress, coercion, my professional assessment allows me to agree to the same with respect to his voluntariness to make the foregoing statement.

Being satisfied with the aforementioned, it was witnessed by me _Ronolay Willis, Jr._ who by having affixed both my signature and seal as a notary, hereby make the above a true and binding document. Sworn to and subscribes before me this _31st_ day of _July_ _2012_.

_____
Notary Public

32

**APPENDIX #2**
Denial of Relief - Louisiana Supreme Court (Supervisory PCR
Brief) denied 2/7/14

# The Supreme Court of the State of Louisiana

STATE EX REL. MARCUS ARTIS

NO. 2013-KH-1711

VS.

STATE OF LOUISIANA

— — — — —

IN RE: Artis, Marcus; - Plaintiff; Applying For Supervisory and/or Remedial Writs, Parish of Allen, 33rd Judicial District Court Div. A, No. 95-3570; to the Court of Appeal, Third Circuit, No. KH 13-00035;

— — — — —

February 7, 2014

Denied.

JPV

BJJ

JTK

JLW

GGG

MRC

JDH

Supreme Court of Louisiana
February 7, 2014

Clerk of Court
For the Court

**Deputy**

34

**APPENDIX #3**
Supervisory Writ of Review to La. Supreme Court

IN THE
SUPREME COURT
STATE OF LOUISIANA


CRIMINAL DOCKET NO: _____


STATE EX. REL. Marcus Artis
*Petitioner*

VERSUS

N. BURL CAIN, WARDEN
Louisiana State Penitentiary
*Respondent*


*DUE TO PROCEDURAL ERROR BY THE 33RD JUDICIAL DISTRICT COURT THIS CASE
IS NOT PROPERLY BEFORE THIS HONORABLE COURT, NOR WAS IT PROPERLY
BEFORE THE THIRD CIRCUIT COURT OF APPEAL, BUT, BECAUSE A ERRONEOUS
DECISION WAS HANDED DOWN ON PROCEDURAL MATTERS
PETITIONER IS COMPELLED TO PRESENT THIS PLEADING*


SUPERVISORY WRIT OF REVIEW
TO THE LOUISIANA SUPREME COURT
FROM THE THIRD CIRCUIT, COURT OF APPEAL AND
33RD JUDICIAL DISTRICT COURT
ON PETITIONER'S APPLICATION FOR
POST CONVICTION RELIEF IN THE


(PETITIONER REQUESTS THAT
THIS CASE BE REMANDED TO THE DISTRICT COURT
IN ORDER TO PROPERLY ADDRESS PROCEDURAL ISSUES)


*Pro SE' Application*


Respectfully submitted:


Marcus Artis
#361755
La. State Penitentiary

# OBJECTIVE OF THIS PLEADING:

PETITIONER SEEKS A REMAND
TO THE 33RD JUDICIAL DISTRICT COURT,
PARISH OF ALLEN
IN ORDER TO
ACHIEVE COMPLIANCE WITH THE PROCEDURAL
PREREQUISITES MANDATED BY LAW
PURSUANT LA.C.CR.P. ARTS. 930.8(A)(1); 930.4(F) AND
930.7(B),
WHICH ULTIMATELY GOVERN
SUCCESSIVE APPLICATIONS FOR POST-CONVICTION RELIEF

1.)

IS THE TRIAL COURT AT LIBERTY TO **REJECT, RE-DEFINE** AND/OR **RE-INTERPRET** DECISIONS MADE BY THE UNITED STATES SUPREME COURT? (i.e. ***Martinez v. Ryan,*** ____ S.Ct., 2012 WL 912950 (2012))

2.)

IS IT AN ABUSE OF DISCRETION FOR THE TRIAL COURT TO ERRONEOUSLY DENY A REQUEST FOR AN OPPORTUNITY TO ESTABLISH THROUGH AN EVIDENTIARY HEARING THAT HE IS ENTITLED TO THE RELIEF SOUGHT.

3.)

WHEN A PETITIONER AVERS THAT HE CAN OVERCOME ANY ASSERTION THAT THE ORDER FOR HIS CUSTODY IS LEGAL AND PROCEED TO SHOW EXACTLY HOW IT IS ILLEGAL, IS HE ENTITLED TO A HEARING TO PROVE THAT MATTER? (Art. 930.8(A)(1); 930.4(F) and 930.7(B))

## TABLE OF CONTENTS

OBJECTIVE OF PLEADING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

QUESTIONS PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

APPLICATION FOR WRIT OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

GROUNDS FOR INVOKING JURISDICTION OF THIS COURT . . . . . . . . . . . . . . . . . . . . . 6

STATEMENT OF CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

IMMEDIATE WRIT GRANT CONSIDERATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

PRELIMINARY -CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-8

ESTABLISHMENT FOR THE FIRST TIME THAT: GIDEON, POWELL, HALBERT, APPLIES TO
POST CONVICTION PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

PRO SE PLEADINGS ARE HELD TO LESS STRINGENT STANDARDS THAN FORMAL
PLEADINGS DRAFTED BY LAWYERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-10

NULLIFICATION OF STATE'S PROCEDURAL DEFENSES . . . . . . . . . . . . . . . . . . . . . . 10-13

PRESERVATION OF ISSUES AND FEDERAL CONSTITUTIONAL VIOLATIONS RAISED IN
SUCCESSIVE POST-CONVICTION APPLICATION AND PRESERVED FOR REMAND AND
COMPLIANCE WITH La.C.Cr.P. Arts. 930.8(A)(1); 930.4(F) AND 930.7(B) . . . . . . . . . . 13-24

I. Clearly Established Federal Law on "A conviction obtained through use of false evidence . . . 13

    II. Application of clearly Established Federal Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        A. The prosecutor's knowledge of Brian Artis' false testimony . . . . . . . . . . . . . 14

        B. The prosecutor's knowledge of Lavelle Meeks false testimony . . . . . . . . 14-16

**ARGUMENTS**

**#1** VIOLATION OF NAPUE V. PEOPLE OF THE STATE OF ILLINOIS . . . . . . . . . . . . 16-21

**#2** TRIAL COUNSEL WAS FORCED TO PROVIDE INEFFECTIVE ASSISTANCE . . . 21-22

**#3** THROUGH SUBORNING PERJURY, THE STATE PREVENTED PETITIONER'S RIGHT TO
CONFRONTATION OF THE WITNESSES AGAINST HIM . . . . . . . . . . . . . . . . . . . . . . . 22-24

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**"PLEASE NOTE ATTACHED EXHIBITS:**

COPY OF PCR RELIEF APPLICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . EXHIBIT "A"

COPY OF THE MEMORANDUM OF LAW IN SUPPORT OF PCR RELIEF . . EXHIBIT "B"

COPY OF LOWER COURT DECISION ON PCR APPLICATION AND RELATED MOTIONS
AFFIXED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . EXHIBITS "C"-"E"

## TABLE OF AUTHORITIES

### FEDERAL CONSTITUTION

Constitution of the United States .................................................. 6,7

Fourteenth Amendment ...................................................... 13, 17

### FEDERAL CASES AND STATUTES

28 U.S.C. § 2254(d) and (d)(6) .................................................... 9

Martinez v. Ryan, _____ S.Ct.____, (2012) 2012 WL 912950 ..................... 9, 24

Haines v. Kenner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) .................. 10

Napue v. People of the State of Illinois, 79 S.Ct. 1173, 360 U.S 264 ........... 13, 16, 17,19

Mooney v. Holohan, 294 U.S. 103, 112, 55 S.Ct. 340, 79 L.Ed. ____ (1935) ........... 13,20

Jenkins v. Artuz, 294 F.3d 284, 296 n. 2 (2d Cir 2002) ........................... 13

Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) ........... 13, 19

In re Winship, 397 U.S. at 372, 90 S.Ct. 1068 ..................................... 17

Soffar v. Dretke, 368 F.3d 441, 478 (5th Cir. 2004) ................................ 18

Strickland v. Washington, 466 U.S. at 694 ..................................... 18, 19

Imber v. Parchman, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) ................ 19

Kirkpartrick v. Whitley, 992 F.2d 491 (5th Cir 1993) ............................... 19

ABA Model Rules for Professional Conduct, Rules 3.3(a)(4), 3.4(a), (b) and (f) and 308 .... 19

Nash v. Illinois, 389 U.S. 906, 88 S.Ct. 222 (1967) ............................... 20

Giles v. Maryland, 386 U.S. 66, 87 S.Ct. 737 (1967) .............................. 20

United States v. Chargra, 735 F.2d 870 (5th Cir. 1984) ............................. 20

United States v. Bagley, supra. .................................................. 20

Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) ................ 21

Dupart v. United States, 541 F.2d 1148 (5th Cir. 1976) ............................. 21

United States v. Winter, 348 F.2d 204, 210 (1965) ................................. 23

Washington v. Texas, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967) .... 23, 24

### STATE CONSTITUTION

Louisiana Constitution of 1974 .................................................. 6,7

### STATE CASES, STATUTES AND ARTICLES

930.8(A)(1) ................................................................ 6,10,13

930.4(A) ...................................................................... 12

930.4(C) ...................................................................... 12

930.4(D) ...................................................................... 12

930.4(E) ...................................................................... 12

930.4(F) ................................................... 6,7,8,9,10,11,12-13

930.7(B) .................................................... 6,7,9,12,13,

926(d) ........................................................................ 11

La.S.Ct. R. .................................................................... 11

U.R.C.A. ...................................................................... 11

930.4(b),(c), and (e) ............................................................ 11

Cheney C. Joseph, Jr., Post-Conviction Procedure, 41 La.L.Rev. 625, 638 .............. 11,12

State ex rel Medford v. Whitley, 95-1187, (La. 1/26/96), 666 So.2d 652 ................... 6

State ex rel Comier v. State, 95-2208 (La. 10/04, 96) 680 So.2d 1168 ..................... 6

State ex rel Kenneth Rice v. State of Louisiana, 749 So.2d 650 (La.S.Ct. Nov. 12, 1999) .... 11

State ex rel Glover v. State, 93-2330, p.21, 22 (La. 9/15/95) 660 So.2d 1189, 1201-02 ...... 11

Errol J. Carlin, Burl Cain, 706 So.2d 968, 1997-2390 (La.3/13/98) ................... 11,13

State ex rel Lee v. Louisiana, No. 97-KW-2500, (Dec. 23, 1997) ...................... 11

State v. Turner, 544 So.2d 387 (La. 1989) .......................................... 12

State ex rel Ferrand v. Blackburn, 414 So.2d 1207, 1209, footnote 2 (La. 1982) ........... 12

State v. Broadway, 753 So.2d 801 (La. 1999) ...................................... 19

State v. Cavalier, 701 So.2d 949 (1997) ........................................... 22

State of Louisiana                          *      SUPREME COURT OF LOUISIANA
Ex. REL., Marcus Artis
                   Petitioner               *

versus                                      *

Burl Cain, Warden                           *
                   Respondent/Custodian            Filed: _____
                                            *

---

## APPLICATION FOR SUPERVISORY WRITS OF REVIEW

**NOW INTO COURT,** comes Marcus Artis, your petitioner herein, respectfully seeking

Supervisory Review to this Honorable Court from the Judgment of the 33rd Judicial District Court

issued 12/13/12, and the Court of Appeals for the Third Circuit of Louisiana, who erroneously denied

his Application for Post Conviction Relief without compliance with ministerial duties imposes by

statute.

### GROUNDS FOR INVOKING JURISDICTION OF THIS COURT

It is the aforementioned denial, which causes petitioner to invoke this Honorable Court's

Supervisory Jurisdiction. This Honorable Court is given Supervisory Jurisdiction to entertain writs

of review pursuant *Rule 10* of this Honorable Court's Filing requirements.

### STATEMENT OF THE CASE

The nature of the case being presented to this Honorable Court is that of Supervisory Review

of the Lower Court Post Conviction Proceedings. The procedural requirements pursuant *Art.

930.8(A)(1), Art. 930.4(F)* nor *art. 930.7(B)* have not been met. In addition thereto, NO COUNSEL

was afforded to the accused at any time in these proceedings. Petitioner was issued a judgement

(denial) after the pleading had been at the trial court for a one (1) single day. The state/prosecutor

was not ordered to respond or even become involved in any respect, nor was there an investigation

into whether petitioner showed "cause" for the procedural default or whether he met the exception

requirements to the procedural default.

The error of the appellate court was that it ruled in favor of the state while absconding the

application of the law applicable to the case. Laws which were clearly cited within the pleading and

these same laws imposed a ministerial mandate upon the state to and the court to bring this case in

conformity with *Art. 930.8(A)(1), Art. 930.4(F)* and *art. 930.7(B)*. Whereas, even at this present

time, neither has complied with the requirements of said statutes.

### IMMEDIATE WRIT GRANT CONSIDERATIONS

(1) Erroneous Interpretation or Application of the Federal and Louisiana Constitution of 1974 set forth
throughout Writ and Mandated by the Treatise authorized by both

(2) Gross Departure from Adherence to both Federal and State Precedents in a Judicial Proceedings.

(3) All claims are not properly before this Honorable Court

## PRELIMINARY-CLAIM / ISSUE

A cursory review of the trial court record will show that a claim was raised in the instant application for post-conviction relief which ultimately meets the exception of *930.8(A)(1)*. Contrary to statutory law and much settled case-law on the issue. The trial court has erroneously determined petitioner's application to be untimely.

Paragraph (F) of *Article 930.4, REQUIRES* that the trial court give notice to the petitioner if the court is considering dismissal due to **untimeliness** or inexcusable failure to raise the claim at an earlier stage (i.e., prior to trial, on appeal, or in prior application). **This procedure affords the petitioner an opportunity, WITH THE AID OF COUNSEL (see Art 930.7(C), to explain his prior procedural default.** In short *930.7* provides, **The court "must appoint counsel" for an indigent inmate when it orders an evidentiary hearing, ...., or enters an order under Article *930.4(F)*.**

Petitioner furthers that before the procedural grounds could be resolved in the instant matter, the court was obligated to:

1.) afford petitioner an opportunity to refute the judge's position that his petition is untimely;

2.) afford Petitioner an opportunity to call witnesses who could support his facts; and

3.) afford Petitioner an opportunity to ask of the court to authorize the admission of facts, and/or genuineness of documents. *State ex rel., Medford v. Whitley*, 95, 1187, (La. 1/26/96), 666 So.2d 652, State ex rel. *Cormier v. State*, 95-2208 (La. 10/04/96), 690 So.2d 1168.

The Legislative enactment **Article *930.4(F)*** gives Artis standing to ask this Court to enforce the statutory laws of this state and that is exactly what he is requesting of this Honorable Court.

**Petitioner asks this Honorable Appeals Court to intervene "on his behalf" for the purpose of protection his rights pursuant the Equal Protection and Due Process Clause of the 14th Amendment.** The PCR brief was filed pursuant the discovery of "New Facts" which were not previously known to him. These facts are set out in the form of an affidavit which ultimately reflects the date of the discovery/when these facts became knowable.

Since the 33rd Judicial District Court has run awry of the Constitution and ministerial duties set in place by statute, petitioner is only at liberty to seek orders from this Honorable Appeals Court ordering a remand to the lower Court Judge to conform to State and Federal law as well as the Oath of Office of such a judge:

1.) To uphold and Support the Constitution of the United States

2.) To uphold and Support the Constitution of the State of Louisiana

3.) To respect the Laws of the State

4.) To Apply the laws of this state in a just manner without regard for race, creed, color, religion, etc.

Petitioner contends that the actions of the District Court Judge, thus far, do not reflect that the aforementioned precepts are being abided by. These lapses violate petitioner's right to Due Process, Equal Protection, and Reasonable Access to the Courts.

Further, this case matter should be remanded and the Trial Court ordered to conduct a hearing in full compliance with the letter and the spirit of both State and Federal Constitutions, and in accordance with *La.C.Cr.P. Art. 930.4(F)*, and that after affording petitioner the Due Process of Law and the Equal Protection of the Law to which he is entitled; the court shall cause to be served upon petitioner the judgment rendered after said hearing. **At this hearing, petitioner shall enjoy his unfettered right to the effective assistance of counsel in the presentation and adjudication of this claim.**

| Marcus Artis, Petitioner | NUMBER : _____ |
|---|---|
| **VERSUS** | FILED: _____ |

THIRD CIRCUIT COURT OF APPEAL

N. BURL CAIN
Louisiana State Penitentiary, ET AL.    **CLERK OF COURT**
    **Respondent(s)**

### ORIGINAL CLAIMS FILED INTO THE DISTRICT COURT IN PETITIONER'S SUCCESSIVE APPLICATION FOR POST CONVICTION RELIEF'S "MEMORANDUM OF LAW IN SUPPORT"
BASED UPON THE AUTHORITY OF *ART. 930.4* THE COURT HAS DISCRETION TO HEAR ANY CLAIM PREVIOUSLY LITIGATED OR NOT AND 930.8(A)(2) ALLOWS A CASE TO BE HEARD BASED ON A NEW INTERPRETATION OF LAW. AND IN THIS CASE THAT IS:

*MARTINEZ V. RYAN*, --- S.Ct. ---, 2012 WL 912950 AND
*Art. 930.8(A)(1), Art. 930.4(F) nor art. 930.7(B)*

### A PREVIOUSLY UNKNOWN RULE OF LAW,
ESTABLISHING FOR THE FIRST TIME THAT: *GIDEON, POWELL, HALBERT* APPLIES TO POST-CONVICTION PROCEEDINGS IN THE FIRST INSTANCE AS TO THE CLAIM OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

MAY IT PLEASE THE COURT:

NOW COMES, Marcus Artis, hereinafter "Petitioner", who avers that he has and continues

to suffer an illegal custody and the remedy to the same lies with this Honorable Court.

Because of the overlapping operation of *La.C.Cr.P. Art. 930.4(F)* and *930.7(B)* require it,

petitioner, requests that he be afforded a full and fair evidentiary hearing should the Court consider

a denial of the Application or if the District Attorney or designated respondent raise any procedural

objections.[1] Petitioner requests that this Honorable Court provide him with the assistance of counsel,

during such an evidentiary hearing. *See: Martinez v. Ryan*, No. 10-1001, 2012 U.S. Lexis 2317

(3/20/12); *28 U.S.C. § 2254(d) and (d)(6)*. As an issue recently settled by the U.S. Supreme Court,

it has been decided that the case of *Martinez* is applicable in Texas (and since Louisiana paired itself

with Texas, arguing that because the two operated alike, likewise the *Martinez* did not apply here (in

Louisiana) as set out in *Ibarra v. Thaler*, by the U.S.

### PRO SE PLEADINGS ARE TO BE HELD TO LESS STRINGENT STANDARDS THAN FORMAL PLEADINGS DRAFTED BY LAWYERS

The law, as it is presently exists does not hold a pro se prisoner to the high standards in which

---

[1]

It is hereby requested that this Honorable Court insure that, if the Allen Parish District Attorney's Office and/or the designated respondent of the 33rd Judicial District Court, file any type of opposition to the relief sought; the application itself, or any document related hereto, that the same be mailed to petitioner with return receipt service by the West Feliciana Sheriff's Department.

attorneys are held to. Further, the pro se prisoner is to be given the benefit of favorable doubts regarding his pleading, because he may suffer from an inability to articulate what is really wrong in his case. Most importantly, this is how the United States Supreme Court addressed the matter in *Haines v Kenner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972):

> "A pro se complaint, "however inartfully pleaded," **must be held to "less stringent standards than formal pleadings drafted by lawyers"** and **can only be dismissed for failure to state a claim if it appears " 'beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"** Id., at 520-52, 92 S.Ct. At 596, quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed2d 80 (1957).

Under this settled-principle of law, this Honorable Court is duty-bound to permit the development of the underlying facts of this case. Petitioner hereby invokes his right to be held to a less stringent standard and that his pleading "can only be dismissed for failure to state a claim if it appears 'beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," provision of the precedent of the United States Supreme Court regard pro se pleadings.

## NULLIFICATION OF STATE'S PROCEDURAL DEFENSES

Plaintiff avers that the *Louisiana Code of Criminal Procedure, Article 930.4* places limitations on repetitive applications for post conviction relief. *Article 930.4* states as follows:

**Art. 930.4. Repetitive applications**
A.  Unless required in the interest of justice, any claim for relief which was fully litigated in an appeal from the proceedings leading to the judgment of conviction and sentence shall not be considered.
B.  If the application alleges a claim of which the petitioner had knowledge and inexcusably failed to raise in the proceedings leading to conviction, the court may deny relief.
C.  If the application alleges a claim which the petitioner raised in the trial court and inexcusably failed to pursue on appeal, the court may deny relief.
D.  A successive application may be dismissed if it fails to raise a new or different claim.
E.  A successive application may be dismissed if it raises a new and different claim that was inexcusably omitted from a prior application.
F.  If the court considers dismissing an application for failure of the petitioner to raise the claim in the proceedings leading to conviction, failure to urge the claim on appeal, or failure to include the claim in a prior application, the court shall order the petitioner to state the reasons for his failure. If the court finds that the failure was excusable, it shall consider the merits of the claim.

Petitioner's failure to raise the current claims, either on **appeal** or **in a prior application,** should be excused because he had no knowledge of the existence of the underlying claims or the supporting evidence until after his direct appeal or any prior application had been filed.

*La.C.Cr.P. Article 930.4* provides that any claim previously exhausted on appeal may be

re-litigated, if re-litigation is in the "interest of justice." The evidence now adduced ultimately reflects that the interest of justice demands re-evaluation of this case in life of the "new fact" exception of *930.8(A)(1)* post-conviction provisions and relief granted in accordance therewith. Petitioner submits that this is an issue of blatant constitutional denial of the right to a fair trial, that of confrontation, and as the causation of forced ineffective-assistance of trial-counsel.    As such, petitioner is entitled to an evidentiary hearing or reversal of his conviction.

In general, the requirements of Louisiana's independent operative law is governed through the Uniform Application for Post-Conviction Relief. See, *La.C.Cr.P., art. 926(d); La. S.Ct. R.;* and *U.R.C.A.* . *All of which* require an inmate seeking post-conviction relief to explain: "why he may have failed to raise a particular ground in earlier proceedings." The Uniform Application, thus in most cases, provides an inmate with an opportunity to explain his failure to raise a claim earlier and provides the district judge with enough information to undertake the informed exercise of his discretion. Also such a District Judge is thereby empowered to determine whether default of an application under *La.C.Cr.P., arts. 930.4(b), (c) and (e)* is appropriate. Proper use of the uniform application, thus, satisfies the requirement of *La.C.Cr.P., art 930.4(f)* without the need for further filings, formal proceedings or a hearing. *State ex rel. Kenneth Rice v. State of Louisiana,* 749 So.2d 650 (La.S.Ct. Nov. 12, 1999).

Though an Appellate Court of Appeal may itself invoke the mandatory procedural bar of *La.C.Cr.P. art. 930.4(a),* cf. *State ex rel. Glover v. State,* 93-2330, p. 21, 22 (La. 9/15/95) 660 So.2d 1189, 1201-02 (appellate courts may raise the time bar of *La.C.Cr.P., art. 930.8 sua sponte*), the legislature directed the discretionary procedural bars of *La.C.Cr.P. arts. 930.4 (b) & (e)* to district court judges, who in appropriate cases may but need not invoke them to deny relief or dismiss an application. See *Art. 930.4, cmt.*; *Cheney C. Joseph, Jr., Post-Conviction Procedure, 41 La. L. Rev. 625, 638.* Accordingly, appellate courts may not themselves deny relief under these subsections but instead "may only review a district court's actions under them for an abuse of the district court's discretion or for the district court's compliance with *La.C.Cr.P., art. 930.4(f).* See, *Errol J. Carlin v. Burl Cain,* 706 So.2d 968, 1997-2390 (La. 3/13/98).

Under the ruling by the First Circuit in *State ex rel Lee v. Louisiana,* No. 97-KW-2500, (Dec. 23, 1997) the found trial court, abused its discretion, power in denying petitioner's post conviction relief application, since the judge failed to order the petitioner to explain why he had not submitted his claims in an earlier proceedings and additional, the district court's ruling did not indicate it

considered claim (2) ineffective assistance of counsel. The *Lee* court, held, accordingly, the district court is ordered to reconsider the application for post-conviction relief. Should the district court again consider denying the application because of relator's failure to pursue some of the claims on appeal, the court must first comply with the directive of *article 930.4(f)* and order relator to state reasons for the failure. See, *State v. Turner*, 544 So.2d 387 (La.1989).

Professor Cheney C. Joseph, Jr., at 638-39, who constructed the proper procedures for considering an repetitive application and a successive application, noted the following:

> The repetitive application Article recognizes two distinctly different basis for dismissal without reaching the merits of a application. The first involves the prior litigation of the issue on appeal or in a prior application for Post Conviction Relief. See La.C.Cr.P. art. 930.4 (A) and (D). The second involves a successive application that may be dismissed if it raises a new or different claim that was inexcusably omitted from a prior application and the inexcusably procedural default on the part of petitioner due to his failure to raise or pursue the claim in a earlier proceedings. See La.C.Cr.P., art. 930.4 (C), (E) and (F).

However, it remains that the repetitive application Article is very broad in scope and is phrased in discretionary terms. Obviously, the court must assess fairness and considerations to the state and the petitioner in deciding whether to allow the petitioner to relitigate or raise new claims.

In the case *sub* judice, this court should never simply dismiss Mr. Artis' application as repetitive or successive on the face of the pleadings without first affording him an opportunity to show cause for his failure to raise or pursue the claim in the earlier proceedings. *La.C.Cr.P., art. 930.4 (E)* and *(F)*. In fact, Mr. Marcus Artis' can make a substantial showing that delay in filing these claims were not his fault.

The court may always exercise its discretion to consider the merits of any claim. Even claims which were fully litigated in an appeal may be considered in the interest of justice. *State v. Cage*, 637 So.2d 89, 90 (La. 1994). What is more, petitioner are statutorily entitled to counsel if:

(1) An evidentiary hearing is ordered, or
(2) Discovery is authorized to expand the record;
(3) The court is considering dismissal for failure to raise the issue in an earlier proceedings. If the court determines that the repetitive writs provisions may be a basis for dismissal the court must appoint counsel. In appointing counsel for the petitioner is critical in assisting him in explaining his failure to raise the issue in a earlier proceedings. La.C.Cr.P., Art. 930.7.

Mr. Marcus Artis, shall be given the right to due process and equal protection of the law in explaining his failure to raise these issues earlier than now with counsel assisting him to do so. In *State ex rel. Ferrand v. Blackburn*, 414 So.2d 1207, 1209, *footnote 2* (La. 1982), the petitioner applied for post-conviction relief alleging the evidence was insufficient to prove an essential element of the offense. The petitioner had failed to raise the issue on appeal.

However, the Louisiana Supreme court was not hesitate to review the claim (and in fact grant relief) since the conviction was based on insufficiency of evidence is a violation of constitutionally guaranteed due process. The Louisiana legislature directed the discretionary power under *La. C.Cr.P. art. 930.4 (F)*, to the district court judges, if the court finds that the default is excusable or pardonable "in the interest of justice" in appropriate case may but need not involve them to deny relief or dismiss an application. This Honorable court should consider petitioner application in light of the rationale in *Carlin v. Cain*, 706 So.2d 968 (La. 1998), and *State v. Chapman*, 699 So.2d 504 (La. App. 4 Cir 1997). Petitioner alleges that: this court should issue a **order** for him to state his excusable reasons for his preservation and presentation of the successive claims in a earlier proceedings.

### PRESERVATION OF
### ISSUES AND FEDERAL CONSTITUTIONAL VIOLATIONS RAISED IN SUCCESSIVE POST-CONVICTION APPLICATION WHICH ARE PRESERVED HERE FOR REMAND AND COMPLIANCE WITH *Art. 930.8(A)(1), Art. 930.4(F)* AND *art. 930.7(B)*

**VIOLATION OF THE U.S. FEDERAL CONSTITUTION #1**
[Violation of *Napue v. People of the State of Illinois*, 79 S.Ct. 1173, 360 U.S. 264]

**VIOLATION OF THE U.S. FEDERAL CONSTITUTION #2**
[Trial Counsel's Ineffective Assistance]

**VIOLATION OF THE U.S. FEDERAL CONSTITUTION#3**
[Through suborning perjury, the state prevented petitioner's right to confrontation of the witnesses against him

**I. Clearly Established Federal Law on A Conviction Obtained Through Use of False Evidence**

Since at least 1935, it has been the established law of the United States that a conviction obtained through testimony the prosecutor knows to be false is repugnant to the Constitution. See *Mooney v. Holohan*, 294 U.S. 103, 112, 55 S.Ct. 340, 79 L.Ed.2 791 (1935). This is so because in order to reduce the danger of false convictions, we rely on the prosecutor not to be simply a party in litigation whose sole object is the conviction of the defendant before him. The prosecutor is an officer of the court whose duty is to present a forceful and truthful case to the jury, no to win at any cost. See *Jenkins v. Artuz*, 294 F.3d 284, 296 n. 2 (2d Cir. 2002)

Supreme Court holdings have long "established that a conviction obtained through use of false evidence, *known* to be such by representatives of the State, must fall under the *Fourteenth Amendment*. The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears.

And though one prosecutor may disclaim knowledge had by another prosecutor, this defense too has been rejected. In *Giglio*, the Supreme Court held that, even though the specific prosecutor on the case did not have actual knowledge of the facts giving the lie to a prosecution's witness at trial,

he was charged with the knowledge of another prosecutor because a prosecutor's office has a duty to "insure communication of all relevant information on each case to every [prosecutor] who deals with it."

## II. Application of Clearly Established Federal Law

### A. The prosecutor's knowledge of Brian Artis' false testimony

During the presentation of the states case-in-chief, the prosecution knowing used perjured testimony to sway the jury towards a guilty verdict. The states primary witness Brian Artis was obviously testifying falsely under duress and coercion of D.A.'s office[2] at this point in the trial:

**Eye witness account**?

Pg 359 (lines 19-23) (copy attached)

Q.   What happened after Sammy falls?
A.   Lavelle came back to the car and Marcus pulled Sammy into the bushes.
Q.   Did you see how he dragged Sammy into the bushes?
A.   Like by his shoulders.

This statement was proven false by the state's own witness when the state's expert testified that:

*      The deceased was obviously drug by his feet because he had scratches all over his back and his shirt tail was rolled up and they also discovered a crack pipe therein. This would have been impossible if the deceased would have been drug by his shoulders. The soil stains would have been in the lower portions of the deceased jeans and shirt tail would not have been rolled up. (see page 269, lines 9-18)(copy attached)

*      Brian testified that Marcus was the one who threw the gun in the river (see page 361, lines 14-18)(copy attached)

*      Lavelle testified that he was the one who through the gun in the river (see page 9, lines 8-18)(copy attached)

### B. The prosecutor's knowledge of Lavell Meeks' false testimony

During the presentation of the states case-in-chief, the prosecution knowingly used perjured testimony to sway the jury towards a guilty verdict. The states primary witness Brian Artis was obviously testifying falsely under duress and coercion of D.A.'s office at this point in the trial:

**(1) Perjured Testimony:**

**The Undisclosed Plea deal (UNCORRECTED KNOWN FALSE TESTIMONY)**

---

[2] There were letters (undisclosed correspondence) sent to the District Attorney's Office by Lavelle Meeks seeking to work out a deal. During trial Meeks made it seem as though he had no motive in testifying and the District Attorney did nothing to correct this false premise either.

| Initial Sworn Testimony | Napue Violation uncorrected "false" testimony |
|---|---|
| * 364 (lines 24-34)(copy attached) | * 385 (lines 20-27)(copy attached) |
| 24 Q Has the District Attorney offered you anything in exchange for | 20 Q So he told you that you would be charged as an accessory? |
| 25 your testimony at this trial? | 21 A Yes, sir. |
| 26 A Yes, Ma'am | 22 Q Okay. Did he indicate to you that if you cooperated that |
| 27 Q And what did they offer | 23 maybe a deal could be worked |
| 28 A I wouldn't have a charge | 24 out. |
| 29 Q They wouldn't prosecute you on the charge of accessory | 25 A No, sir. |
| 30 after the fact? | 26 Q He never made no promises to you at all? |
| 31 A Yes, ma'am | 27 No, sir. |
| 32 Q Did you accept that offer | |
| 33 A Yes ma'am | |
| 34 | |

The Gun

page 308 lines 15-23 (Lavelle Meeks testimony)(copy attached)

Q. Did you recognize the gun?
A. Yes, I did
Q. And how were you able to recognize it
A. Because it was the same gun that I threw in the river -- I think I threw it in the river.
Q. That was your gun?
A. Yes, it was.
Q. Was that the gun that was used to kill Sammy Cole.
A. Yes, it was

page 361 lines 9-18 (Brian's Testimony)(copy attached)

Q. And then what happened
A. We stopped the car. Marcus stopped the car.
Q. Marcus stopped the car?
A. Yes, ma'am.
Q. And then what happened?
A. He got out and threw the gun in the river.
Q. Who got out?
A. Marcus.

Lavelle testified that it was him who through the gun in the river, but Brian testifies that it was Marcus Artis who through the gun in the river. The prosecutor knew that both statements could not be true and also Lavelle Meeks testimony was more credible that he through the gun in the river because he was making statements against his own interest.

The primary falsehoods which now require a reversal of the conviction and sentence in this case were uncovered when Brian Artis executed a sworn affidavit **(see exhibit "A")** disclosing for the first time that:

1.) He gave testimony he knew to be false in the case of *State of Louisiana v. Marcus Artis.*
2.) That he willingly gave this false testimony as a result of threats made against him by the prosecution if he chose not to cooperate and give the false testimony.

3.) That he received immunity in return for providing false testimony as instructed.
4.) The District Attorney forced him to testify that he witnessed Marcus Artis returning to a car to get a gun under an armrest, walked up to the victim and fired.
5.) He admits to falsely testifying that he witnessed Marcus Artis pull Sammy into the woods
6.) And he admits to falsely testifying to seeing Marcus Artis throw a gun into the river. (When Lavelle Meeks testified that it was his own gun and that he through that same gun in the river.)
7.) Lastly, the affiant declared that the State's prosecutors and staff worked with him until he memorized the false story to be recited to the jury.

The prosecutor in the instant case did precisely what was prohibited in the Napue decision.

Although the prosecutor knew the witness to be spewing false testimony under oath, it did nothing to correct the testimony and in its closing argument, the prosecution expressed to the jury:

> The kicker of it all is the testimony of Brian, Marcus' cousin. Nobody ever accused him of lying. (See page 519, lines 1-19)(copy attached)

The aforementioned statement to the trial jury both by design, poise and delivery was aimed at having a direct effect on the decision making process of the trial jury. And because the new facts in this case shows that the prosecution new this witness to be giving false testimony under oath, requires the type of relief granted in *Napue*. Wherefore petitioner asks for the same.

## VIOLATION OF THE U.S. FEDERAL CONSTITUTION #1
[Violation of *Napue v. People of the State of Illinois*, 79 S.Ct. 1173, 360 U.S. 264]

Petitioner herein avers that the State secured a wrongful conviction against him by the use of perjured testimony. These witnesses colluded/conspired with the prosecution to:

1.) Present perjured testimony to the trial jury

2.) Not disclose to the jury that the testimony was false; and

3.) To mislead the trial jury into believing the false testimony in order to sway their judgement.

Whereas, this practice served to deprive the petitioner herein of several constitutional protections which will be discussed herein. Furthermore, this Honorable Court is cloaked with the authority through the Federal and State Constitutions to tailor a remedy to this deprivation of rights. The controlling precedent upon which this Honorable decision hinges will be the case of *Napue v. People of the State of Illinois*, 79 S.Ct. 1173, as set forth at the heading of this claim.

Petitioner contends that the prosecutor's failure to correct the testimony of witnesses whom he knew to be untruthful constitutes prosecutorial misconduct[3]. It is a matter of settled law that if the prosecutor has knowingly used perjured testimony or false evidence, the standard is considerably less

---

[3] Suborning perjury.

onerous:

> "the conviction "must" be set aside if there is any reasonable likelihood that the false testimony could have affected the jury's verdict." *Napue v. Illinois*, 360 U.S. 264, 79 S.CT. 1173, 3 L.Ed.2d 1217 (1959).

The proper question for this Honorable Court to resolve in an evidentiary hearing is, whether "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." See, *United States v. Agurs*, 427 U.S. 97, 103, 96 S.CT. 2392, 2397, 49 L.Ed.2d 324 (1976). In reaching its decision, the *Napue* Court made it quite clear what the expectations of the *Due Process Clause* was in instances such as the one presently before this Honorable Court when it wrote:

> "Where important witness for the State, in murder prosecution of petitioner, falsely testified that witness had received no promise of consideration in return for his testimony, though in fact Assistant State's Attorney had promised witness consideration, and Assistance State's Attorney did nothing to correct false testimony of witness, fact that jury was appraised of other grounds for believe in that witness may have had an interest in testifying against petitioner did not turn what was otherwise a tainted trial into a fair one. *U.S.C.A. Const. Amend. 14.*

What the U.S. Supreme Court announced here is its intolerance for the State to knowingly use false testimony in order to secure a wrongful conviction. The Court created no cushion nor safeguard for the prosecution to direct the Court's attention to other evidence before the jury tending to suggest to the jury that the falsely testifying witness was brought under scrutiny by the exposure of other reasons for having an interest to testify falsely against the accused. Here the record is replete with the false testimony and the testimony in its form at trial was called into question by the trial jury when they returned to the courtroom and requested an opportunity to re-hear the testimony of this witness (testimony now known to be false).

Such a corruption of the truth-seeking process strike at the heart of the judicial process and renders invalid the conviction and sentence of petitioner, Marcus Artis. More importantly, the prosecution sabotaged the entire purpose of a trial. By design, trials are supposed to be the great instrument through which we seek to establish the truth of an allegation and remove the dross of falsehoods in pursuit of the ambition that:

> "It is far worse to convict an innocent man than to let the guilty go free." In re Winship, 397 U.S. at 372, 90 S.Ct. 1068.

> It is a better thing for ten guilty persons to escape punishment than for one innocent to suffer wrongly.(See 4 William Blackstone, Commentaries *358; Alexander Volokh, "Guilty Man" 146 U. Penn. C. Rev. 173 (1997).

The attention required to support a juror's determination of credibility to assist in his finding of proof beyond a reasonable doubt is of great import. The false testimony creates skepticism as to whether the jurors minds could support their reasoning in reaching a verdict of guilty as charged.

Additionally, as a reflection of juror skepticism, the jurors came out of deliberations requesting re-hear Brian Artis' trial testimony, whereas, the court denied their request. Despite this, the question lingers, "why did they want to hear that testimony again?" **I believe this pleading shows why. It was, because they had reservations.**

Similarly, in order to prevail on the instant claim, *petitioner need only show a reasonable probability that the outcome of his case would have been different, "not" that his counsel would, in fact, have obtained a verdict of not guilty.* See *Soffar v. Dretke*, 368 F.3d 441, 478 (5th Cir 2004). And when the issue is one of "false testimony", the principle that a State may not knowingly use false testimony, to obtain a tainted conviction, implicit in any concept of ordered liberty, does not cease to apply merely because the false testimony goes only to the credibility of the witness. The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interests of the witness in testifying falsely that a defendant's life or liberty may depend.

Marcus Artis contends that, had the jury been apprised of the true facts, however, it might well have concluded that Brain Artis and Lavelle Meeks had fabricated testimony in order to curry favor with the very representative of the State who was prosecuting the case in which Brain Artis and Lavelle Meeks were testifying, for Brain Artis and Lavelle Meeks believed that such a representative was in a position to implement a promise of consideration.

In *Soffar*, the Fifth Circuit explained the practical implications of *Strickland's* requirement that a habeas petitioner, "demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id at 478 (citing *Strickland*, 466 U.S. at 694. (Emphasis added). In that case, defense counsel's performance was deficient because he failed to conduct an adequate pretrial investigation. *Soffar*, 368 F.3d at 479. This failure to investigate prevented the jury from hearing evidence that would have cast doubt on Mr. Soffar's guilt. *Id.* Therefore, the Fifth Circuit concluded that Mr. Soffar had been prejudiced. In assessing the prejudice prong of *Strickland*, the Fifth Circuit explicitly framed the question as whether it was reasonably probable that had the jury heard the additional evidence, at least one juror would have voted for acquittal. *Id.* Thus, a reasonable probability of a hung jury suffices to satisfy the prejudice prong of *Strickland.* Marcus Artis is entitled to the same benefit. If the knowledge of this information could have changed the minds of jurors, then he has proven his case.

Although many courts have initially failed to understand this aspect of *Strickland's* prejudice

inquiry, petitioner herein explains. The petitioner would indeed have borne the burden of proving, by a preponderance of the evidence that he was not guilty of the crime charged. However, to succeed on this Post Conviction Application, petitioner need only show a reasonable probability that a competent counsel's performance would have convinced three of twelve jurors to vote for an outcome other than a conviction, or an outcome where the conviction was of a lesser included offense.1 Petitioner need not demonstrate a reasonable probability that his counsel could actually have obtained a verdict of "not guilty." To hold otherwise is to create a standard that goes beyond *Strickland*, in fact, far heavier than that required by *Strickland*. Petitioner need not prove that his defense would have succeeded; he need only demonstrate that had counsel presented an one of these defenses properly, there is a reasonable probability that at least three of twelve jurors would have voted for an outcome other than conviction or a conviction of a lesser grade of the offense charged.

In our criminal justice system the prosecutor has at his disposal the substantial resources of the government as well as considerable other advantages. In exchange, the system reposes great trust in the prosecutor to place the ends of justice above the goal of merely obtaining a conviction. *Imber v. Pachman*, 424 U.S. 409, 96 S.CT. 984, 47 L.Ed.2d 128 (1976); *Kirkpatrick v. Whitley*, 992 F.2d 491 (5th Cir. 1993). See also *ABA Model Rules of Professional Conduct, Rules 3.3(a)(4), 3.4(a), (b), and (f), and 3.8*, all of which has been violated by the prosecution.

This contention implicates the United States Supreme Court's decision in *Napue*. To prove a *Napue* claim, the accused must show that the prosecutor acted in collusion with the witness to facilitate false testimony. The prosecutor in this case allowed the State witness to give false testimony without correction, therefore, the convictions gained as a result of that perjured testimony must be reversed, if the witness's testimony reasonably could have affected the jury's verdict, even though the testimony may be relevant only to the credibility of the witness. Id. at 269, 79 S.CT. 1173.

Furthermore, fundamental fairness to an accused, *i.e.*, due process, is offended "when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." Id. When false testimony has been given under such circumstances, the defendant is entitled to a new trial unless there is no reasonable likelihood that the alleged false testimony could have affected the outcome of the trial. *Giglio v. United States*, 405 U.S. 150, 92 S.CT. 763, 31 L.Ed.2d 104 (1972).

In this case, petitioner's argument is wholly substantiated as he provides a copy of the police report/interviews with the alleged witnesses lend support to his contentions, which eliminates this claim as a bare assertion. *State v. Broadway*, 753 So.2d 801 (La.1999). The prosecution's actions

raise serious questions about both the reality and appearance of fairness in petitioner's conviction and punishment. Absent an adequate and factual record, petitioner respectfully ask the Court not to sweep away these realities on the assumption that the jury would not have arrived at a different conclusion, had it been told of the matters he attributes to the prosecution. .

Petitioner argues that the State's conduct in this issue is governed by the principle of *Napue v. Illinois*, supra. It is true as supported by the statements, not only did the witness lie, the prosecutor also knew that he was lying. It would be upon hearing the witness' reason for lying in his testimony, a rational trier of fact would discount the witness' testimony and others who were directly connected to the plot to present false testimony and find that a reasonable doubt exist as to whether Marcus Artis actually did the things alleged against him in this case.

The United States Supreme Court has held that there is no place in our system of criminal justice for prosecutorial misconduct. *Nash v. Illinois*, 389 U.S. 906, 88 S.CT. 222 (1967); *Giles v. Maryland*, 386 U.S. 66, 87 S.CT. 793, 17 L.Ed.2d 737 (1967).

The presentation of known false evidence is incompatible with the rudimentary requirements of our system of justice. *Mooney v. Holohan*, 294 U.S. 103, 55 S.CT. 340, 79 L.Ed. 791 (1935). To gain release based upon it, a petitioner must show that the testimony was material and affected the outcome of the trial; that the government knew or should have known that the testimony was false. *United States v. Chagra*, 735 F.2d 870 (5th Cir. 1984). A conviction must be set aside if there is any reasonable possibility that the use of false testimony could have affected the trial. *United States v. Bagley*, supra. The cardinal proposition is that "[t]he constitutional right of a criminal defendant to cross-examine witnesses against him that are free to testify without fear of the state retaliation." It is hard not to conclude, after all the statements that were made and changed each time the Brain Artis and Lavelle Meeks talked with the police or investigators, why the prosecution would still allow their witnesses to testify falsely at trial, the reason should be quite obvious to the Court.

The Court must provide a cumulative evaluation of the false testimony, keeping in mind that petitioner does not have to show that, his trial would have resulted in acquittal or that there would an insufficiency of the evidence to support a conviction. Petitioner need only to show a reasonable likelihood that the false testimony affected the jury's verdict. *Bagley*, 105 S.CT. at 3382 n. 9.

What is also important to the fair administration of justice in this case is the fact that it is now known that the witness's sworn testimony was the result of the prosecution's misconduct, where the prosecutor knew both of the witnesses were testifying falsely and he did nothing to correct it. In

accordance with the law and argument presented, petitioner's conviction in this matter should be set aside, and in the alternative, this matter remanded back to the District Court for an evidentiary hearing.

## VIOLATION OF THE U.S. FEDERAL CONSTITUTION #2
[Trial Counsel Was "Forced" to Provide Ineffective Assistance]

Also, trial counsel was forced to be ineffective because the state withheld that it gave witnesses incentives in return for false testimony . Because this was concealed from the defense, the defense could not properly prepare for false testimony it knew nothing of. This severely hampered defense counsel's ability to defend his client altogether. The state allowed their witnesses to proceed during trial with known false testimony being poured over the jury. Had trial defense counsel been aware of this, he could have properly objected and pointed out before the jury that the testimony presented by the state's star witness was false. Under these circumstances, the credibility of these witnesses would have been greatly undermined. This type of information could have easily occasioned a reasonable probability of a different outcome. Counsel for the defense *did not know that the false testimony was the result of prosecutorial coercion*. These facts were concealed and are better viewed under a combination of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed2d 215 (1963); *Dupart v. United States*, 541 F.2d 1148 (5th Cir. 1976); and *Cronic* where the accused is actively deprived of counsel by state action.

Past judicial decisions on the issue in controversy declare:

> "it's not only up to the Prosecutor to correct it's own witnesses false testimony, it the duty of petitioner's counsel to be alert and detect it and bring it fourth before the eyes of the jury so that they could make the appropriate credibility determination."

Given the above and foregoing, it is appropriate for the court to grant an evidentiary hearing to determine counsel's ineffectiveness provided to petitioner at trial.

After the alleged crime and much interaction with the state prosecutor and threats to charge these individuals as the perpetrators, the witnesses (Brain Artis and Lavelle Meeks) testimony would change drastically in favor of the state. The prosecutor knew that this testimony was fabricated, as it was by his design. This is one and the same reason why the known use of the false testimony went uncorrected. The state prosecutor understood very well that, the believability of the manufactured testimony is what the whole of this conviction would rest upon. Therefore, two constitutional violations occur. *First*, the prosecution's known use of false testimony to secure a conviction, *secondly*, the prosecution's intimidation of witnesses into lying under oath in order to directly affect their verdict; the equivalent of "witness tampering", "creating false evidence" and "obstruction of justice."

Lastly, petitioner contends, that due to the substance of what Brain Artis' testimony would be now, he stands to enjoy the effective assistance of his attorney who then could question Brian Artis about his manufactured false testimony he gave in return for an undisclosed immunity deal. Because Brian Artis no longer lives in fear of retribution by the state, his truthful testimony would be and is fundamental to the ends of justice. Undoubtably, as long as the perjured and fabricated testimony is excluded in a retrial of this matter, a not guilty verdict would be the likely end result. The writer of this petition arrived at this conclusion in light of there not being overwhelming evidence of guilt, and in a retrial the prosecution would not be afforded the benefit of using manufactured testimony before the new jury.

In addition to the above and forgoing, petitioner, in a new trial could conduct better cross-examination of each remaining witness, because their testimony would have to stand on its own for accuracy and truthfulness without the aid of the perjured testimony to uphold it. Specifically, referencing the false testimony of Lavelle Meeks and the fabricated trial testimony of Brian Artis. In all other respects, petitioner's chances of producing a different verdict are far more probable than a second finding of guilty as charged.

Finally, in ruling on the issue of a new trial, because the accused's attorney would no longer be forced into a state of ineffectiveness. In this instance, the trial judge's duty is not to weigh the evidence as though he were a jury determining guilt or innocence, rather his duty is the narrow one of ascertaining whether there is new material fit for a new jury's determination and judgement. *State v. Cavalier*, 701 So.2d 949 (1997).

## VIOLATION OF THE U.S. FEDERAL CONSTITUTION#3
### [Through suborning perjury, the state prevented petitioner's right to confrontation of the witnesses against him]

Petitioner contends that he was denied due process of law and the right to call a witness on his own behalf , thereby likewise denying him equal protection of the law, as well as the right to confront, properly cross-examine and call witnesses on his own behalf. Brian Artis, was to be a witness for the defense, however, the prosecution threatened with accessory charges and incarceration if he did not change his story to fit the state's version of events. (See affidavit by the same). The relevant matter here is how many occasions did the prosecution meet with this witness and how did the threats issued during those meetings sway his testimony.

The court should note that after changing their testimony, neither of the state's witnesses were threatened with the possibility of perjury charges for giving their perjured testimony which was

favorable to the state. This amounts to witness intimidation, because absent the threat made by the prosecution, this witness WAS GOING TO TESTIFY, "TRUTHFULLY" and FOR THE DEFENSE. And let it be noted that all witnesses are required, by law, to be sworn in before they testify and at all times the prosecutor was aware that this false testimony would be given to the jury as sworn truth..

The first statements of these witnesses were not made under oath, however, had the witness taken the stand and false testimony been exposed, the jury would have been afforded an opportunity to make note of it for deliberating purposes. However, the threat of prosecution was aimed at one objective and one objective alone, sealing shut the lips of this witness as an asset to the defense. The looming threat of prosecution effectively made these witnesses unavailable. The witnesses referenced herein were effectively placed under duress so as to preclude then from making free and voluntary choice whether or not to testify truthfully.

In *United States v. Winter*, 348 F.2d 204, 210 (1965), Judge Weinfeld, writing for the Second Circuit, stated:

> 'Once a witness swears to give truthful answers, there is no requirement to 'warn him not to commit perjury or, conversely to direct him to tell the truth.' It would render the sanctity of the oath quite meaningless to require admonition to adhere to it.'

In *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967), the Supreme Court stated:

> "The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies."

Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

There was another option available to the prosecution, remind the witnesses of their obligation to testify truthfully while under oath or alternatively inform them that they did not have to testify at all, yet, the choice was made to issue a threat was selected. The question need be asked, "What was so important that the lips of these witnesses had to be sealed under the threat of a prosecution?" If evidence of guilt of petitioner having committed the murder was so overwhelming, or alternatively so clearly discernable from the facts, no matter what this one witness would have said, guilt would have been the verdict. However, this was not the case, the jury even concluded that they needed to re-hear witness testimony, however, the trial court denied this request.

Wherefore, petitioner prays that he be granted a new trial based upon the evidence presented within these pleadings. Also, petitioner requests an evidentiary hearing, where at, he can support the factual basis of these pleadings. This is needed specifically because, In every respect, petitioner avers that the Sixth Amendment guarantees the accused in a criminal prosecution, the right to present a defense. *Washington v. Texas*, 87 S.CT. 1920 (1967). Thus, the state's unethical practice of presenting the perjured testimony of Brian Artis and Lavelle Meeks deprived the petitioner the opportunity to present a plausible defense.

## CONCLUSION

For the reasons and factual content of the above and aforementioned, petitioner urges this Honorable Court to declare relief in the form of granting Post Conviction Relief or alternatively take all the necessary steps in order to bring this case into conformity with the U.S. Supreme Court holdings in *Martinez v. Ryan*, --- S.Ct. ---, 2012 WL 912950. Also the court may proceed to announce the reversal of the illegally secured conviction, and nullify the sentence imposed as a result thereof

Respectfully submitted:

_____

Marcus Artis #361755
La. State Prison, Spruce-4
Angola, La. 70712

cc: submitted/filed ___/___/13

## CERTIFICATE OF SERVICE

I, Marcus Artis, hereby certify that I have forwarded a copy of the above proceedings to the Clerk of Court for this Honorable Second Circuit and District Attorney's Office for the 33rd Judicial District, Parish of Allen on this _____ day of _____ 2013.

_____

Marcus Artis

## NOTARY

I hereby certify that, on the above date and time, the undersigned above, did appear before me _____ a notary, and was after given full notice of the penalty of perjury, did continue to depose that the above and foregoing is true to the best of his knowledge and belief.

_____

Notary or other person duly authorized to administer a binding oath

**APPENDIX #4**

Mail Receipt showing Supervisory PCR filed to the Louisiana
Supreme Court. 7/9/13

INMATE'S REQUEST FOR LEGAL/INDIGENT MAIL

NAME: **Marcus Artis**

NUMBER: **361755**

LOCATION: **Camp-D/  Raven Unit**

BALANCE IN YOUR DRAWING ACCOUNT: $ **N/A**

LIST EACH ITEM TO BE MAILED
GIVE THE NAME AND COMPLETE ADDRESS OF EACH
PIECE TO BE MAILED:

**Clerk of Court, Sup. Ct. of La.**
name

**400 Royal Street, Ste. 4200**
address

**New Orleans, LA 70119**
city, state, zip code

_____
name

_____
address

_____
city, state, zip code

_____
name

_____
address

_____
city, state, zip code

ANY DELIBERATE MISREPRESENTATION WILL RESULT
IN YOUR MAIL BEING RETURNED

_____     361755
inmate's signature and number

_____     7/9/13
classification officer               date

62

**APPENDIX #5**
Supervisory Writ of Review to the Third Circuit Court of Appeal

IN THE
THIRD CIRCUIT
STATE OF LOUISIANA


CRIMINAL DOCKET NO: _____


STATE EX. REL. Marcus Artis
*Petitioner*

VERSUS

N. BURL CAIN, WARDEN
Louisiana State Penitentiary
*Respondent*


*DUE TO PROCEDURAL ERROR BY THE 33RD JUDICIAL DISTRICT COURT THIS CASE
IS NOT PROPERLY BEFORE THIS HONORABLE COURT, BUT, BECAUSE A
ERRONEOUS PROCEDURAL DECISION WAS HANDED DOWN PETITIONER
IS COMPELLED TO PRESENT THIS PLEADING*


---

SUPERVISORY WRIT OF REVIEW
TO THE LOUISIANA THIRD CIRCUIT
FROM 33RD JUDICIAL DISTRICT COURT
ON PETITIONER'S APPLICATION FOR
POST CONVICTION RELIEF IN THE


(PETITIONER REQUESTS THAT
THIS CASE BE REMANDED TO THE DISTRICT COURT
IN ORDER TO PROPERLY ADDRESS PROCEDURAL ISSUES)

---


*Pro SE' Application*


Respectfully submitted:


_____
Marcus Artis
#361755
La. State Penitentiary
Main Prison , Spruce-4
Angola, La. 70712

# OBJECTIVE OF THIS PLEADING:

PETITIONER SEEKS A REMAND
TO THE 33RD JUDICIAL DISTRICT COURT,
PARISH OF ALLEN
IN ORDER TO
ACHIEVE COMPLIANCE WITH THE PROCEDURAL
PREREQUISITES MANDATED BY LAW
PURSUANT LA.C.CR.P. ARTS. 930.8(A)(1); 930.4(F) AND
930.7(B),
WHICH ULTIMATELY GOVERN
SUCCESSIVE APPLICATIONS FOR POST-CONVICTION RELIEF

## QUESTIONS PRESENTED

1.)

IS THE TRIAL COURT AT LIBERTY TO **REJECT, RE-DEFINE** AND/OR RE-INTERPRET DECISIONS MADE BY THE UNITED STATES SUPREME COURT? (i.e. *Martinez v. Ryan,* ____ S.Ct., 2012 WL 912950 (2012))

2.)

IS IT AN ABUSE OF DISCRETION FOR THE TRIAL COURT TO ERRONEOUSLY DENY A REQUEST FOR AN OPPORTUNITY TO ESTABLISH THROUGH AN EVIDENTIARY HEARING THAT HE IS ENTITLED TO THE RELIEF SOUGHT.

3.)

WHEN A PETITIONER AVERS THAT HE CAN OVERCOME ANY ASSERTION THAT THE ORDER FOR HIS CUSTODY IS LEGAL AND PROCEED TO SHOW EXACTLY HOW IT IS ILLEGAL, IS HE ENTITLED TO A HEARING TO PROVE THAT MATTER? (Art. 930.8(A)(1); 930.4(F) and 930.7(B))

# TABLE OF CONTENTS

OBJECTIVE OF PLEADING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

QUESTIONS PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

APPLICATION FOR WRIT OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

GROUNDS FOR INVOKING JURISDICTION OF THIS COURT . . . . . . . . . . . . . . . . . . . . . 6

STATEMENT OF CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

IMMEDIATE WRIT GRANT CONSIDERATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

PRELIMINARY -CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-8

ESTABLISHMENT FOR THE FIRST TIME THAT: GIDEON, POWELL, HALBERT, APPLIES TO POST CONVICTION PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

PRO SE PLEADINGS ARE HELD TO LESS STRINGENT STANDARDS THAN FORMAL PLEADINGS DRAFTED BY LAWYERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-10

NULLIFICATION OF STATE'S PROCEDURAL DEFENSES . . . . . . . . . . . . . . . . . . . . . 10-13

PRESERVATION OF ISSUES AND FEDERAL CONSTITUTIONAL VIOLATIONS RAISED IN SUCCESSIVE POST-CONVICTION APPLICATION AND PRESERVED FOR REMAND AND COMPLIANCE WITH La.C.Cr.P. Arts. 930.8(A)(1); 930.4(F) AND 930.7(B) . . . . . . . . . . 13-24

I. Clearly Established Federal Law on "A conviction obtained through use of false evidence . . . 13

    II. Application of clearly Established Federal Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        A. The prosecutor's knowledge of Brian Artis' false testimony . . . . . . . . . . . . . 14

        B. The prosecutor's knowledge of Lavelle Meeks false testimony . . . . . . . . 14-16

**ARGUEMENTS**

#1 VIOLATION OF NAPUE V. PEOPLE OF THE STATE OF ILLINOIS . . . . . . . . . . . . 16-21

#2 TRIAL COUNSEL WAS FORCED TO PROVIDE INEFFECTIVE ASSISTANCE . . . 21-22

#3 THROUGH SUBORNING PERJURY, THE STATE PREVENTED PETITIONER'S RIGHT TO CONFRONTATION OF THE WITNESSES AGAINST HIM . . . . . . . . . . . . . . . . . . . . . . . 22-24

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**\*PLEASE NOTE ATTACHED EXHIBITS:**

COPY OF PCR RELIEF APPLICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . EXHIBIT "A"

COPY OF THE MEMORANDUM OF LAW IN SUPPORT OF PCR RELIEF . . EXHIBIT "B"

COPY OF LOWER COURT DEICISON ON PCR APPLICATION AND RELATED MOTIONS AFFIXED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . EXHIBITS "C"-"E"

# TABLE OF AUTHORITIES

## FEDERAL CONSTITUTION

Constitution of the United States . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,7

Fouurteenth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 17

## FEDERAL CASES AND STATUTES

28 U.S.C. § 2254(d) and (d)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Martinez v. Ryan, _____ S.Ct._____, (2012) 2012 WL 912950 . . . . . . . . . . . . . . . . . . . . 9, 24

Haines v. Kenner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) . . . . . . . . . . . . . . . . . . 10

Napue v. People of lthe State of llinois, 79 S.Ct. 1173, 360 U.S 264 . . . . . . . . . . . 13, 16, 17,19

Mooney v. Holohan, 294 U.S. 103, 112, 55 S.Ct. 340, 79 L.Ed. ____ (1935) . . . . . . . . . . . 13,20

Jenkins v. Artuz, 294 F.3d 284, 296 n. 2 (2d Cir 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Giglio v. United States, 405 U.S. 150, 92 S.ct. 763, 31 L.Ed.2d 104 (1972) . . . . . . . . . . . . 13, 19

In re Winship, 397 U.S. at 372, 90 S.ct. 1068 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Soffar v. Dretke, 368 F.3d 441, 478 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Strickland v. Washington, 466 U.S. at 694 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

Imber v. Parchman, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) . . . . . . . . . . . . . . . . . 19

Kirkpartrick v. Whitley, 992 F.2d 491 (5th Cir 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

ABA Model Rules for Professional Conduct, Rules 3.3(a)(4), 3.4(a), (b) and (f) and 308 . . . . 19

Nash v. Illinois, 389 U.S. 906, 88 S.Ct. 222 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Giles v. Maryland, 386 U.S. 66, 87 S.Ct. 737 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

United States v. Chargra, 735 F.2d 870 (5th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

United States v. Bagley, supra. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) . . . . . . . . . . . . . . . . . 21

Dupart v. United States, 541 F.2d 1148 (5th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

United States v. Winter, 348 F.2d 204, 210 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Washington v. Texas, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967) . . . . 23, 24

## STATE CONSTITUTION

Louisiana Constitution of 1974 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,7

## STATE CASES, STATUTES AND ARTICLES

930.8(A)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,10,13

930.4(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

930.4(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

930.4(D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

930.4(E) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

930.4(F) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,7,8,9,10,11,12-13

930.7(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,7,9,12,13,

926(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

La.S.Ct. R. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

U.R.C.A. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

930.4(b),(c), and (e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Cheney C. Joseph, Jr., Post-Conviction Procedure, 41 La.L.Rev. 625, 638 . . . . . . . . . . . . . . 11,12

State ex rel Medford v. Whitley, 95-1187, (La. 1/26/96), 666 So.2d 652 . . . . . . . . . . . . . . . . . . 6

State ex rel Comier v. State, 95-2208 (La. 10/04, 96) 680 So.2d 1168 . . . . . . . . . . . . . . . . . . . . 6

State ex rel Kenneth Rice v. State of Louisiana, 749 So.2d 650 (La.S.Ct. Nov. 12, 1999) . . . . 11

State ex rel Glover v. State, 93-2330, p.21, 22 (La. 9/15/95) 660 So.2d 1189, 1201-02 . . . . . . 11

Errol J. Carlin, Burl Cain, 706 So.2d 968, 1997-2390 (La.3/13/98) . . . . . . . . . . . . . . . . . . 11,13

State ex rel Lee v. Lousiana, No. 97-KW-2500, (Dec. 23, 1997) . . . . . . . . . . . . . . . . . . . . . . . 11

State v. Turner, 544 So.2d 387 (La. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

State ex rel Ferrand v. Blackburn, 414 So.2d 1207, 1209, footnote 2 (La. 1982) . . . . . . . . . . . 12

State v. Broadway, 753 So.2d 801 (La. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

State v. Cavalier, 701 So.2d 949 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

State of Louisiana      *      THIRD CIRCUIT COURT OF APPEAL
Ex. REL., Marcus Artis
             Petitioner      *

versus      *

Burl Cain, Warden      *
             Respondent/Custodian      Filed: _____
     *

---

## APPLICATION FOR SUPERVISORY WRITS OF REVIEW

**NOW INTO COURT**, comes Marcus Artis, your petitioner herein, respectfully seeking Supervisory Review to this Honorable Court from the Judgement of the 33rd Judicial District Court issued 12/13/12, erroneously denying his Application for Post Conviction Relief.

### GROUNDS FOR INVOKING JURISDICTION OF THIS COURT

It is the aforementioned denial, which causes petitioner to invoke this Honorable Court's Supervisory Jurisdiction. This Honorable Court is given Supervisory Jurisdiction to entertain writs of review pursuant *Rule 16* of this Honorable Court's Filing requirements.

### STATEMENT OF THE CASE

The nature of the case being presented to this Honorable Court is that of Supervisory Review of the Lower Court Post Conviction Proceedings. The procedural requirements pursuant *Art. 930.8(A)(1), Art. 930.4(F)* nor *art. 930.7(B)* have been met. In addition thereto, NO COUNSEL was afforded to the accused at any time in these proceedings. Petitioner was issued a judgement (denial) after the pleading had been at the court for a one (1) single day. The state/prosecutor was not ordered to respond or even become involved in any respect, nor was there an investigation into whether petitioner showed "cause" for the procedural default or whther he met the exception requirements to the procedural default.

### IMMEDIATE WRIT GRANT CONSIDERATIONS

(1) Erroneous Interpretation or Application of the Federal and Louisiana Constitution of 1974 set forth throughout Writ and Mandated by the Treatise authorized by both

(2) Gross Departure from Adherence to both Federal and State Precedents in a Judicial Proceedings.

(3) All claims are not properly before this Honorable Court

### PRELIMINARY-CLAIM / ISSUE

A cursory review of the trial court record will show that a claim was raised in the instant application for post-conviction relief which ultimately meets the exception of *930.8(A)(1)*. Contrary to statutory law and much settled case-law on the issue. The trial court has erroneously determined petitioner's application to be untimely.

Paragraph (F) of *Article 930.4, REQUIRES* that the trial court give notice to the petitioner if the court is considering dismissal due to **untimeliness** or inexcusable failure to raise the claim at an earlier stage (i.e., prior to trial, on appeal, or in prior application). **This procedure affords the petitioner an opportunity, WITH THE AID OF COUNSEL (see Art 930.7(C), to explain his prior procedural default.** In short *930.7* provides, **The court "must appoint counsel" for an indigent inmate when it orders an evidentiary hearing, ...., or enters an order under Article *930.4(F)*.**

Petitioner furthers that before the procedural grounds could be resolved in the instant matter, the court was obligated to:

1.) afford petitioner an opportunity to refute the judge's position that his petition is untimely;

2.) afford Petitioner an opportunity to call witnesses who could support his facts; and

3.) afford Petitioner an opportunity to ask of the court to authorize the admission of facts, and/or genuineness of documents. *State ex rel., Medford v. Whitley*, 95, 1187, (La. 1/26/96), 666 So.2d 652, State ex rel. *Cormier v. State*, 95-2208 (La. 10/04/96), 680 So.2d 1168.

The Legislative enactment **Article *930.4(F)*** gives Artis standing to ask this Court to enforce the statutory laws of this state and that is exactly what he is requesting of this Honorable Court.

**Petitioner asks this Honorable Appeals Court to intervene "on his behalf" for the purpose of protection his rights pursuant the Equal Protection and Due Process Clause of the 14th Amendment.** The PCR brief was filed pursuant the discovery of "New Facts" which were not previously known to him. These facts are set out in the form of an affidavit which ultimately reflects the date of the discovery/when these facts became knowable.

Since the 33rd Judicial District Court has run awry of the Constitution and ministerial duties set in place by statute, petitioner is only at liberty to seek orders from this Honorable Appeals Court ordering a remand to the lower Court Judge to conform to State and Federal law as well as the Oath of Office of such a judge:

1.) To uphold and Support the Constitution of the United States

2.) To uphold and Support the Constitution of the State of Louisiana

3.) To respect the Laws of the State

4.) To Apply the laws of this state in a just manner without regard for race, creed, color, religion, etc.

Petitioner contends that the actions of the District Court Judge, thus far, do not reflect that the aforementioned precepts are being abided by. These lapses violate petitioner's right to Due Process,

Equal Protection, and Reasonable Access to the Courts.

Further, this case matter should be remanded and the Trial Court ordered to conduct a hearing in full compliance with the letter and the spirit of both State and Federal Constitutions, and in accordance with *La.C.Cr.P. Art. 930.4(F)*, and that after affording petitioner the Due Process of Law and the Equal Protection of the Law to which he is entitled; the court shall cause to be served upon petitioner the judgment rendered after said hearing. **At this hearing, petitioner shall enjoy his unfettered right to the effective assistance of counsel in the presentation and adjudication of this claim.**

| Marcus Artis, Petitioner | NUMBER : _____ |
|---|---|
| **VERSUS** | FILED: _____ |
| | **THIRD CIRCUIT COURT OF APPEAL** |
| N. BURL CAIN | |
| Louisiana State Penitentiary, ET AL. | **CLERK OF COURT** |
| Respondent(s) | |

## ORIGINAL CLAIMS FILED INTO THE DISTRICT COURT IN PETITIONER'S SUCCESSIVE APPLICATION FOR POST CONVICTION RELIEF'S "MEMORANDUM OF LAW IN SUPPORT"
BASED UPON THE AUTHORITY OF *ART. 930.4* THE COURT HAS DISCRETION TO HEAR ANY CLAIM PREVIOUSLY LITIGATED OR NOT AND 930.8(A)(2) <u>ALLOWS A CASE TO BE HEARD BASED ON A NEW INTERPRETATION OF LAW</u>. AND IN THIS CASE THAT IS:

*MARTINEZ V. RYAN*, --- S.Ct. ---, 2012 WL 912950

<u>A PREVIOUSLY UNKNOWN RULE OF LAW</u>,
ESTABLISHING FOR THE FIRST TIME THAT: *GIDEON, POWELL, HALBERT* APPLIES TO POST-CONVICTION PROCEEDINGS IN THE FIRST INSTANCE AS TO THE CLAIM OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

**MAY IT PLEASE THE COURT:**

NOW COMES, Marcus Artis, hereinafter "Petitioner", who avers that he has and continues to suffer an illegal custody and the remedy to the same lies with this Honorable Court.

Because of the overlapping operation of *La.C.Cr.P. Art. 930.4(F)* and *930.7(B)* require it, petitioner, requests that he be afforded a full and fair evidentiary hearing should the Court consider a denial of the Application or if the District Attorney or designated respondent raise any procedural objections.[1] Petitioner requests that this Honorable Court provide him with the assistance of counsel, during such an evidentiary hearing. *See: Martinez v. Ryan,* No. 10-1001, 2012 U.S. Lexis 2317 (3/20/12); *28 U.S.C. § 2254(d) and (d)(6).*

## PRO SE PLEADINGS ARE TO BE HELD TO LESS STRINGENT STANDARDS THAN FORMAL PLEADINGS DRAFTED BY LAWYERS

The law, as it is presently exists does not hold a pro se prisoner to the high standards in which attorneys are held to. Further, the pro se prisoner is to be given the benefit of favorable doubts regarding his pleading, because he may suffer from an inability to articulate what is really wrong in his case. Most importantly, this is how the United States Supreme Court addressed the matter in

---

[1]
It is hereby requested that this Honorable Court insure that, if the Allen Parish District Attorney's Office and/or the designated respondent of the 33rd Judicial District Court, file any type of opposition to the relief sought; the application itself, or any document related hereto, that the same be mailed to petitioner with return receipt service by the West Felíciana Sheriff's Department.

*Haines v Kenner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972):

> "A pro se complaint, "however inartfully pleaded," **must be held to
> "less stringent standards than formal pleadings drafted by
> lawyers"** and **can only be dismissed for failure to state a claim if it
> appears " 'beyond a reasonable doubt that the plaintiff can prove
> no set of facts in support of his claim which would entitle him to
> relief.'"** Id., at 520-52, 92 S.Ct. At 596, quoting Conley v. Gibson,
> 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed2d 80 (1957).

Under this settled-principle of law, this Honorable Court is duty-bound to permit the
development of the underlying facts of this case. Petitioner hereby invokes his right to be held to a
less stringent standard and that his pleading "can only be dismissed for failure to state a claim if it
appears 'beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim
which would entitle him to relief," provision of the precedent of the United States Supreme Court
regard pro se pleadings.

## NULLIFICATION OF STATE'S PROCEDURAL DEFENSES
Plaintiff avers that the *Louisiana Code of Criminal Procedure, Article 930.4* places
limitations on repetitive applications for post conviction relief. *Article 930.4* states as follows:

**Art. 930.4. Repetitive applications**
A.    Unless required in the interest of justice, any claim for relief which
    was fully litigated in an appeal from the proceedings leading to the
    judgment of conviction and sentence shall not be considered.
B.    If the application alleges a claim of which the petitioner had knowledge and
    inexcusably failed to raise in the proceedings leading to conviction, the court
    may deny relief.
C.    If the application alleges a claim which the petitioner raised in the trial
    court and inexcusably failed to pursue on appeal, the court may deny
    relief.
D.    A successive application may be dismissed if it fails to raise a new or
    different claim.
E.    A successive application may be dismissed if it raises a new and
    different claim that was inexcusably omitted from a prior application.
F.    If the court considers dismissing an application for failure of the
    petitioner to raise the claim in the proceedings leading to conviction,
    failure to urge the claim on appeal, or failure to include the claim in a
    prior application, the court shall order the petitioner to state the
    reasons for his failure. If the court finds that the failure was excusable,
    it shall consider the merits of the claim.

Petitioner's failure to raise the current claims, either on **appeal** or **in a prior application,**
should be excused because he had no knowledge of the existence of the underlying claims or the
supporting evidence until after his direct appeal or any prior application had been filed.

*La.C.Cr.P. Article 930.4* provides that any claim previously exhausted on appeal may be
re-litigated, if re-litigation is in the "interest of justice." The evidence now adduced ultimately
reflects that the interest of justice demands re-evaluation of this case in life of the "new fact"
exception of *930.8(A)(1)* post-conviction provisions and relief granted in accordance therewith.

Petitioner submits that this is an issue of blatant constitutional denial of the right to a fair trial, that of confrontation, and as the causation of forced ineffective-assistance of trial-counsel. As such, petitioner is entitled to an evidentiary hearing or reversal of his conviction.

In general, the requirements of Louisiana's independent operative law is governed through the Uniform Application for Post-Conviction Relief. See, *La.C.Cr.P., art. 926(d); La. S.Ct. R.;* and *U.R.C.A.. All of which* require an inmate seeking post-conviction relief to explain: "why he may have failed to raise a particular ground in earlier proceedings." The Uniform Application, thus in most cases, provides an inmate with an opportunity to explain his failure to raise a claim earlier and provides the district judge with enough information to undertake the informed exercise of his discretion. Also such a District Judge is thereby empowered to determine whether default of an application under *La.C.Cr.P., arts. 930.4(b), (c) and (e)* is appropriate. Proper use of the uniform application, thus, satisfies the requirement of *La.C.Cr.P., art 930.4(f)* without the need for further filings, formal proceedings or a hearing. *State ex rel. Kenneth Rice v. State of Louisiana,* 749 So.2d 650 (La.S.Ct. Nov. 12, 1999).

Though an Appellate Court of Appeal may itself invoke the mandatory procedural bar of *La.C.Cr.P. art. 930.4(a), cf. State ex rel. Glover v. State,* 93-2330, p. 21, 22 (La. 9/15/95) 660 So.2d 1189, 1201-02 (appellate courts may raise the time bar of *La.C.Cr.P., art. 930.8 sua sponte*), the legislature directed the discretionary procedural bars of *La.C.Cr.P. arts. 930.4 (b) & (e)* to district court judges, who in appropriate cases may but need not invoke them to deny relief or dismiss an application. See *Art. 930.4, cmt.; Cheney C. Joseph, Jr., Post-Conviction Procedure, 41 La. L. Rev. 625, 638.* Accordingly, appellate courts may not themselves deny relief under these subsections but instead "may only review a district court's actions under them for an abuse of the district court's discretion or for the district court's compliance with *La.C.Cr.P., art. 930.4(f).* See, *Errol J. Carlin v. Burl Cain,* 706 So.2d 968, 1997-2390 (La. 3/13/98).

Under the ruling by the First Circuit in *State ex rel Lee v. Louisiana,* No. 97-KW-2500, (Dec. 23, 1997) the found trial court, abused its discretion, power in denying petitioner's post conviction relief application, since the judge failed to order the petitioner to explain why he had not submitted his claims in an earlier proceedings and additional, the district court's ruling did not indicate it considered claim (2) ineffective assistance of counsel. The *Lee* court, held, accordingly, the district court is ordered to reconsider the application for post-conviction relief. Should the district court again consider denying the application because of relator's failure to pursue some of the claims on

appeal, the court must first comply with the directive of ***article 930.4(f)*** and order relator to state

reasons for the failure. See, ***State v. Turner***, 544 So.2d 387 (La.1989).

**Professor Cheney C. Joseph, Jr., at 638-39**, who constructed the proper procedures for

considering an repetitive application and a successive application, noted the following:

> The repetitive application Article recognizes two distinctly different basis for
> dismissal without reaching the merits of a application. The first involves the prior
> litigation of the issue on appeal or in a prior application for Post Conviction Relief.
> **See La.C.Cr.P. art. 930.4 (A) and (D)**. The second involves a successive
> application that may be dismissed if it raises a new or different claim that was
> inexcusably omitted from a prior application and the inexcusably procedural default
> on the part of petitioner due to his failure to raise or pursue the claim in a earlier
> proceedings. See La.C.Cr.P., art. 930.4 (C), (E) and (F).

However, it remains that the repetitive application Article is very broad in scope and is

phrased in discretionary terms. Obviously, the court must assess fairness and considerations to the

state and the petitioner in deciding whether to allow the petitioner to relitigate or raise new claims.

In the case *sub* judice, this court should never simply dismiss Mr. Artis' application as

repetitive or successive on the face of the pleadings without first affording him an opportunity to show

cause for his failure to raise or pursue the claim in the earlier proceedings. ***La.C.Cr.P., art. 930.4***

***(E)*** and ***(F)***. In fact, Mr. Marcus Artis' can make a substantial showing that delay in filing these

claims were not his fault.

The court may always exercise its discretion to consider the merits of any claim. Even claims

which were fully litigated in an appeal may be considered in the interest of justice. ***State v. Cage***,

637 So.2d 89, 90 (La. 1994). What is more, petitioner are statutorily entitled to counsel if:

(1)   An evidentiary hearing is ordered, or
(2)   Discovery is authorized to expand the record;
(3)   The court is considering dismissal for failure to raise the issue in an earlier
      proceedings. If the court determines that the repetitive writs provisions may
      be a basis for dismissal the court must appoint counsel. In appointing counsel
      for the petitioner is critical in assisting him in explaining his failure to raise
      the issue in a earlier proceedings. **La.C.Cr.P., Art**. 930.7.

Mr. MarcusArtis, shall be given the right to due process and equal protection of the law in

explaining his failure to raise these issues earlier than now with counsel assisting him to do so. In

***State ex rel. Ferrand v. Blackburn***, 414 So.2d 1207, 1209, ***footnote 2*** (La. 1982), the petitioner

applied for post-conviction relief alleging the evidence was insufficient to prove an essential element

of the offense. The petitioner had failed to raise the issue on appeal.

However, the Louisiana Supreme court was not hesitate to review the claim (and in fact grant

relief) since the conviction was based on insufficiency of evidence is a violation of constitutionally

guaranteed due process. The Louisiana legislature directed the discretionary power under ***La. C.Cr.P.***

*art. 930.4 (F)*, to the district court judges, if the court finds that the default is excusable or pardonable

"in the interest of justice" in appropriate case may but need not involve them to deny relief or dismiss

an application. This Honorable court should consider petitioner application in light of the rationale

in *Carlin v. Cain*, 706 So.2d 968 (La. 1998), and *State v. Chapman*, 699 So.2d 504 (La. App.

4 Cir 1997). Petitioner alleges that: this court should issue a **order** for him to state his excusable

reasons for his preservation and presentation of the successive claims in a earlier proceedings.

### PRESERVATION OF
### ISSUES AND FEDERAL CONSTITUTIONAL VIOLATIONS RAISED IN SUCCESSIVE POST-CONVICTION APPLICATION WHICH ARE PRESERVED HERE FOR REMAND AND COMPLIANCE WITH *Art. 930.8(A)(1), Art. 930.4(F)* AND *art. 930.7(B)*

**VIOLATION OF THE U.S. FEDERAL CONSTITUTION #1**
[Violation of *Napue v. People of the State of Illinois*, 79 S.Ct. 1173, 360 U.S. 264]

**VIOLATION OF THE U.S. FEDERAL CONSTITUTION #2**
[Trial Counsel's Ineffective Assistance]

**VIOLATION OF THE U.S. FEDERAL CONSTITUTION#3**
[Through suborning perjury, the state prevented petitioner's right to confrontation of the witnesses against him

**I. Clearly Established Federal Law on A Conviction**
**Obtained Through Use of False Evidence**

Since at least 1935, it has been the established law of the United States that a conviction obtained through testimony the prosecutor knows to be false is repugnant to the Constitution. See *Mooney v. Holohan*, 294 U.S. 103, 112, 55 S.Ct. 340, 79 L.Ed.2 791 (1935). This is so because in order to reduce the danger of false convictions, we rely on the prosecutor not to be simply a party in litigation whose sole object is the conviction of the defendant before him. The prosecutor is an officer of the court whose duty is to present a forceful and truthful case to the jury, no to win at any cost. See *Jenkins v. Artuz*, 294 F.3d 284, 296 n. 2 (2d Cir. 2002)

Supreme Court holdings have long "established that a conviction obtained through use of false

evidence, *known* to be such by representatives of the State, must fall under the *Fourteenth*

*Amendment*. The same result obtains when the State, although not soliciting false evidence, allows

it to go uncorrected when it appears.

And though one prosecutor may disclaim knowledge had by another prosecutor, this defense

too has been rejected. In *Giglio*, the Supreme Court held that, even though the specific prosecutor on

the case did not have actual knowledge of the facts giving the lie to a prosecution's witness at trial,

he was charged with the knowledge of another prosecutor because a prosecutor's office has a duty to

"insure communication of all relevant information on each case to every [prosecutor] who deals with

it."

**II. Application of Clearly Established Federal Law**

### A. The prosecutor's knowledge of Brian Artis' false testimony

During the presentation of the states case-in-chief, the prosecution knowing used perjured testimony to sway the jury towards a guilty verdict. The states primary witness Brian Artis was obviously testifying falsely under duress and coercion of D.A.'s office[2] at this point in the trial:

<u>Eye witness account</u>?

Pg 359 (lines 19-23) (copy attached)

Q. What happened after Sammy falls?
A. Lavelle came back to the car and Marcus pulled Sammy into the bushes.
Q. Did you see how he dragged Sammy into the bushes?
A. Like by his shoulders.

This statement was proven false by the state's own witness when the state's expert testified that:

\*   The deceased was obviously drug by his feet because he had scratches all over his back and his shirt tail was rolled up and they also discovered a crack pipe therein. This would have been impossible if the deceased would have been drug by his shoulders. The soil stains would have been in the lower portions of the deceased jeans and shirt tail would not have been rolled up. (see page 269, lines 9-18)(copy attached)

\*   Brian testified that Marcus was the one who threw the gun in the river (see page 361, lines 14-18)(copy attached)

\*   Lavelle testified that he was the one who through the gun in the river (see page 9, lines 8-18)(copy attached)

### B. The prosecutor's knowledge of Lavell Meeks' false testimony

During the presentation of the states case-in-chief, the prosecution knowingly used perjured testimony to sway the jury towards a guilty verdict. The states primary witness Brian Artis was obviously testifying falsely under duress and coercion of D.A.'s office at this point in the trial:

**(1) Perjured Testimony:**

**The Undisclosed Plea deal (UNCORRECTED KNOWN FALSE TESTIMONY)**

| Initial Sworn Testimony | Napue Violation uncorrected "false"testimony |
| --- | --- |

[2] There were letters (undisclosed correspondence) sent to the District Attorney's Office by Lavelle Meeks seeking to work out a deal. During trial Meeks made it seem as though he had no motive in testifying and the District Attorney did nothing to correct this false premise either.

| *    364 (lines 24-34)(copy attached) | *    385 (lines 20-27)(copy attached) |
|---|---|
| 24 Q  Has the District Attorney offered you anything in exchange for | 20 Q  So he told you that you would be charged as an accessory? |
| 25      your testimony at this trial? | 21 A  Yes, sir. |
| 26 A  Yes, Ma'am | 22 Q  Okay.  Did he indicate to you that if you cooperated that |
| 27 Q  And what did they offer | |
| 28 A  I wouldn't have a charge | 23      maybe a deal could be worked |
| 29 Q  They wouldn't prosecute you on the charge of accessory | 24      out. |
| 30      after the fact? | 25 A  No, sir. |
| 31 A  Yes, ma'am | 26 Q  He never made no promises to you at all? |
| 32 Q  Did you accept that offer | |
| 33 A  Yes ma'am | 27      No, sir. |
| 34 | |

## The Gun

page 308 lines 15-23 (Lavelle Meeks testimony)(copy attached)

> Q.    Did yo recognize the gun?
> A.    Yes, I did
> Q.    And how were you able to recognize it
> A.    Because it was the same gun that I threw in the river -- I think I threw it in the river.
> Q.    That was your gun?
> A.    Yes, it was.
> Q.    Was that the gun that was used to kill Sammy Cole.
> A.    Yes, it was

page 361 lines 9-18 (Brian's Testimony)(copy attached)

> Q.    And then what happened
> A.    We stopped the car.  Marcus stopped the car.
> Q.    Marcus stopped the car?
> A.    Yes, ma'am.
> Q.    And then what happened?
> A.    He got out and threw the gun in the river.
> Q.    Who got out?
> A.    Marcus.

Lavelle testified that it was him who through the gun in the river, but Brian testifies that it was Marcus Artis who through the gun in the river.  The prosecutor knew that both statements could not be true and also Lavelle Meeks testimony was more credible that he through the gun in the river because he was making statements against his own interest.

The primary falsehoods which now require a reversal of the conviction and sentence in this case were uncovered when Brian Artis executed a sworn affidavit (see exhibit "A") disclosing for the first time that:

1.)    He gave testimony he knew to be false in the case of *State of Louisiana v. Marcus Artis.*

2.)    That he willingly gave this false testimony as a result of threats made against him by the prosecution if he chose not to cooperate and give the false testimony.

3.)    That he received immunity in return for providing false testimony as instructed.

4.)    The District Attorney forced him to testify that he witnessed Marcus Artis

returning to a car to get a gun under an armrest, walked up to the victim and fired.

5.) He admits to falsely testifying that he witnessed Marcus Artis pull Sammy into the woods

6.) And he admits to falsely testifying to seeing Marcus Artis throw a gun into the river. (When Lavelle Meeks testified that it was his own gun and that he through that same gun in the river.)

7.) Lastly, the affiant declared that the State's prosecutors and staff worked with him until he memorized the false story to be recited to the jury.

The prosecutor in the instant case did precisely what was prohibited in the Napue decision. Although the prosecutor knew the witness to be spewing false testimony under oath, it did nothing to correct the testimony and in its closing argument, the prosecution expressed to the jury:

The kicker of it all is the testimony of Brian, Marcus' cousin. Nobody ever accused him of lying. (See page 519, lines 1-19)(copy attached)

The aforementioned statement to the trial jury both by design, poise and deliverey was aimed at having a direct effect on the decision making process of the trial jury. And because the new facts in this case shows that the prosecution new this witness to be giving false testimony under oath, requires the type of relief granted in *Napue*. Wherefore petitioner asks for the same.

## VIOLATION OF THE U.S. FEDERAL CONSTITUTION #1
### [Violation of *Napue v. People of the State of Illinois*, 79 S.Ct. 1173, 360 U.S. 264]

Petitioner herein avers that the State secured a wrongful conviction against him by the use of perjured testimony. These witnesses colluded/conspired with the prosecution to:

1.) Present perjured testimony to the trial jury

2.) Not disclose to the jury that the testimony was false; and

3.) To mislead the trial jury into believing the false testimony in order to sway their judgement.

Whereas, this practice served to deprive the petitioner herein of several constitutional protections which will be discussed herein. Furthermore, this Honorable Court is cloaked with the authority through the Federal and State Constitutions to tailor a remedy to this deprivation of rights. The controlling precedent upon which this Honorable decision hinges will be the case of *Napue v. People of the State of Illinois*, 79 S.Ct. 1173, as set forth at the heading of this claim.

Petitioner contends that the prosecutor's failure to correct the testimony of witnesses whom he knew to be untruthful constitutes prosecutorial misconduct[3]. It is a matter of settled law that if the prosecutor has knowingly used perjured testimony or false evidence, the standard is considerably less onerous:

---

[3] Suborning perjury.

"the conviction "must" be set aside if there is any reasonable likelihood that the false testimony could have affected the jury's verdict." *Napue v. Illinois*, 360 U.S. 264, 79 S.CT. 1173, 3 L.Ed.2d 1217 (1959).

The proper question for this Honorable Court to resolve in an evidentiary hearing is, whether "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." See, *United States v. Agurs*, 427 U.S. 97, 103, 96 S.CT. 2392, 2397, 49 L.Ed.2d 324 (1976). In reaching its decision, the *Napue* Court made it quite clear what the expectations of the *Due Process Clause* was in instances such as the one presently before this Honorable Court when it wrote:

> "Where important witness for the State, in murder prosecution of petitioner, falsely testified that witness had received no promise of consideration in return for his testimony, though in fact Assistant State's Attorney had promised witness consideration, and Assistance State's Attorney did nothing to correct false testimony of witness, fact that jury was appraised of other grounds for believe in that witness may have had an interest in testifying against petitioner did not turn what was otherwise a tainted trial into a fair one. *U.S.C.A. Const. Amend. 14.*

What the U.S. Supreme Court announced here is its intolerance for the State to knowingly use false testimony in order to secure a wrongful conviction. The Court created no cushion nor safeguard for the prosecution to direct the Court's attention to other evidence before the jury tending to suggest to the jury that the falsely testifying witness was brought under scrutiny by the exposure of other reasons for having an interest to testify falsely against the accused. Here the record is replete with the false testimony and the testimony in its form at trial was called into question by the trial jury when they returned to the courtroom and requested an opportunity to re-hear the testimony of this witness (testimony now known to be false).

Such a corruption of the truth-seeking process strike at the heart of the judicial process and renders invalid the conviction and sentence of petitioner, Marcus Artis. More importantly, the prosecution sabotaged the entire purpose of a trial. By design, trials are supposed to be the great instrument through which we seek to establish the truth of an allegation and remove the dross of falsehoods in pursuit of the ambition that:

> "It is far worse to convict an innocent man than to let the guilty go free." In re Winship, 397 U.S. at 372, 90 S.Ct. 1068.

> It is a better thing for ten guilty persons to escape punishment than for one innocent to suffer wrongly.(See 4 William Blackstone, Commentaries *358; Alexander Volokh, "Guilty Man" 146 U. Penn. C. Rev. 173 (1997).

The attention required to support a juror's determination of credibility to assist in his finding of proof beyond a reasonable doubt is of great import. The false testimony creates skepticism as to whether the jurors minds could support their reasoning in reaching a verdict of guilty as charged. Additionally, as a reflection of juror skepticism, the jurors came out of deliberations requesting re-

hear Brian Artis' trial testimony, whereas, the court denied their request. Despite this, the question lingers, "why did they want to hear that testimony again?" **I believe this pleading shows why. It was, because they had reservations**.

Similarly, in order to prevail on the instant claim, *petitioner need only show a reasonable probability that the outcome of his case would have been different*; **"not" that his counsel would, in fact, have obtained a verdict of not guilty**. See *Soffar v. Dretke*, 368 F.3d 441, 478 (5th Cir 2004). And when the issue is one of "false testimony", the principle that a State may not knowingly use false testimony, to obtain a tainted conviction, implicit in any concept of ordered liberty, does not cease to apply merely because the false testimony goes only to the credibility of the witness. The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interests of the witness in testifying falsely that a defendant's life or liberty may depend.

Marcus Artis contends that, had the jury been apprised of the true facts, however, it might well have concluded that Brain Artis and Lavelle Meeks had fabricated testimony in order to curry favor with the very representative of the State who was prosecuting the case in which Brain Artis and Lavelle Meeks were testifying, for Brain Artis and Lavelle Meeks believed that such a representative was in a position to implement a promise of consideration.

In *Soffar*, the Fifth Circuit explained the practical implications of *Strickland's* requirement that a habeas petitioner, "demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id at 478 (citing *Strickland*, 466 U.S. at 694. (Emphasis added). In that case, defense counsel's performance was deficient because he failed to conduct an adequate pretrial investigation. *Soffar*, 368 F.3d at 479. This failure to investigate prevented the jury from hearing evidence that would have cast doubt on Mr. Soffar's guilt. *Id*. Therefore, the Fifth Circuit concluded that Mr. Soffar had been prejudiced. In assessing the prejudice prong of *Strickland*, the Fifth Circuit explicitly framed the question as whether it was reasonably probable that had the jury heard the additional evidence, at least one juror would have voted for acquittal. *Id*. Thus, a reasonable probability of a hung jury suffices to satisfy the prejudice prong of *Strickland*. Marcus Artis is entitled to the same benefit. If the knowledge of this information could have changed the minds of jurors, then he has proven his case.

Although many courts have initially failed to understand this aspect of *Strickland's* prejudice inquiry, petitioner herein explains. The petitioner would indeed have borne the burden of proving,

by a preponderance of the evidence that he was not guilty of the crime charged. However, to succeed on this Post Conviction Application, petitioner need only show a reasonable probability that a competent counsel's performance would have convinced three of twelve jurors to vote for an outcome other than a conviction, or an outcome where the conviction was of a lesser included offense.1 Petitioner need not demonstrate a reasonable probability that his counsel could actually have obtained a verdict of "not guilty." To hold otherwise is to create a standard that goes beyond *Strickland*, in fact, far heavier than that required by *Strickland*. Petitioner need not prove that his defense would have succeeded; he need only demonstrate that had counsel presented an one of these defenses properly, there is a reasonable probability that at least three of twelve jurors would have voted for an outcome other than conviction or a conviction of a lesser grade of the offense charged.

In our criminal justice system the prosecutor has at his disposal the substantial resources of the government as well as considerable other advantages. In exchange, the system reposes great trust in the prosecutor to place the ends of justice above the goal of merely obtaining a conviction. *Imber v. Pachman*, 424 U.S. 409, 96 S.CT. 984, 47 L.Ed.2d 128 (1976); *Kirkpatrick v. Whitley*, 992 F.2d 491 (5th Cir. 1993). See also *ABA Model Rules of Professional Conduct, Rules 3.3(a)(4), 3.4(a), (b), and (f), and 3.8*, all of which has been violated by the prosecution.

This contention implicates the United States Supreme Court's decision in *Napue*. To prove a *Napue* claim, the accused must show that the prosecutor acted in collusion with the witness to facilitate false testimony. The prosecutor in this case allowed the State witness to give false testimony without correction, therefore, the convictions gained as a result of that perjured testimony must be reversed, if the witness's testimony reasonably could have affected the jury's verdict, even though the testimony may be relevant only to the credibility of the witness. Id. at 269, 79 S.CT. 1173.

Furthermore, fundamental fairness to an accused, *i.e.*, due process, is offended "when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." Id. When false testimony has been given under such circumstances, the defendant is entitled to a new trial unless there is no reasonable likelihood that the alleged false testimony could have affected the outcome of the trial. *Giglio v. United States*, 405 U.S. 150, 92 S.CT. 763, 31 L.Ed.2d 104 (1972).

In this case, petitioner's argument is wholly substantiated as he provides a copy of the police report/interviews with the alleged witnesses lend support to his contentions, which eliminates this claim as a bare assertion. *State v. Broadway*, 753 So.2d 801 (La.1999). The prosecution's actions raise serious questions about both the reality and appearance of fairness in petitioner's conviction and

punishment. Absent an adequate and factual record, petitioner respectfully ask the Court not to sweep away these realities on the assumption that the jury would not have arrived at a different conclusion, had it been told of the matters he attributes to the prosecution. .

Petitioner argues that the State's conduct in this issue is governed by the principle of *Napue v. Illinois*, supra. It is true as supported by the statements, not only did the witness lie, the prosecutor also knew that he was lying. It would be upon hearing the witness' reason for lying in his testimony, a rational trier of fact would discount the witness' testimony and others who were directly connected to the plot to present false testimony and find that a reasonable doubt exist as to whether Marcus Artis actually did the things alleged against him in this case.

The United States Supreme Court has held that there is no place in our system of criminal justice for prosecutorial misconduct. *Nash v. Illinois*, 389 U.S. 906, 88 S.CT. 222 (1967); *Giles v. Maryland*, 386 U.S. 66, 87 S.CT. 793, 17 L.Ed.2d 737 (1967).

The presentation of known false evidence is incompatible with the rudimentary requirements of our system of justice. *Mooney v. Holohan*, 294 U.S. 103, 55 S.CT. 340, 79 L.Ed. 791 (1935). To gain release based upon it, a petitioner must show that the testimony was material and affected the outcome of the trial; that the government knew or should have known that the testimony was false. *United States v. Chagra*, 735 F.2d 870 (5th Cir. 1984). A conviction must be set aside if there is any reasonable possibility that the use of false testimony could have affected the trial. *United States v. Bagley*, supra. The cardinal proposition is that "[t]he constitutional right of a criminal defendant to cross-examine witnesses against him that are free to testify without fear of the state retaliation." It is hard not to conclude, after all the statements that were made and changed each time the Brain Artis and Lavelle Meeks talked with the police or investigators, why the prosecution would still allow their witnesses to testify falsely at trial, the reason should be quite obvious to the Court.

The Court must provide a cumulative evaluation of the false testimony, keeping in mind that petitioner does not have to show that, his trial would have resulted in acquittal or that there would an insufficiency of the evidence to support a conviction. Petitioner need only to show a reasonable likelihood that the false testimony affected the jury's verdict. *Bagley*, 105 S.CT. at 3382 n. 9.

What is also important to the fair administration of justice in this case is the fact that it is now known that the witness's sworn testimony was the result of the prosecution's misconduct, where the prosecutor knew both of the witnesses were testifying falsely and he did nothing to correct it. In accordance with the law and argument presented, petitioner's conviction in this matter should be set

aside, and in the alternative, this matter remanded back to the District Court for an evidentiary hearing.

### VIOLATION OF THE U.S. FEDERAL CONSTITUTION #2
[Trial Counsel Was "Forced" to Provide Ineffective Assistance]

Also, trial counsel was forced to be ineffective because the state withheld that it gave witnesses incentives in return for false testimony . Because this was concealed from the defense, the defense could not properly prepare for false testimony it knew nothing of. This severely hampered defense counsel's ability to defend his client altogether. The state allowed their witnesses to proceed during trial with known false testimony being poured over the jury. Had trial defense counsel been aware of this, he could have properly objected and pointed out before the jury that the testimony presented by the state's star witness was false. Under these circumstances, the credibility of these witnesses would have been greatly undermined. This type of information could have easily occassioned a reasonable probability of a different outcome. Counsel for the defense *did not know that the false testimony was the result of prosecutorial coercion*. These facts were concealed and are better viewed under a combination of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed2d 215 (1963); *Dupart v. United States*, 541 F.2d 1148 (5th Cir. 1976); and *Cronic* where the accused is actively deprived of counsel by state action.

Past judicial decisions on the issue in controversy declare:

"it's not only up to the Prosecutor to correct it's own witnesses false testimony, it the **duty** of petitioner's counsel to be alert and detect it and bring it fourth before the eyes of the jury so that they could make the appropriate credibility determination."

Given the above and foregoing, it is appropriate for the court to grant an evidentiary hearing to determine counsel's ineffectiveness provided to petitioner at trial.

After the alleged crime and much interaction with the state prosecutor and threats to charge these individuals as the perpetrators, the witnesses (Brain Artis and Lavelle Meeks) testimony would change drastically in favor of the state. The prosecutor knew that this testimony was fabricated, as it was by his design. This is one and the same reason why the known use of the false testimony went uncorrected. The state prosecutor understood very well that, the believability of the manufactured testimony is what the whole of this conviction would rest upon. Therefore, two constitutional violations occur. *First*, the prosecution's known use of false testimony to secure a conviction, *secondly*, the prosecution's intimidation of witnesses into lying under oath in order to directly affect their verdict; the equivalent of "witness tampering", "creating false evidence" and "obstruction of justice."

Lastly, petitioner contends, that due to the substance of what Brain Artis' testimony would be

now, he stands to enjoy the effective assistance of his attorney who then could question Brian Artis about his manufactured false testimony he gave in return for an undisclosed immunity deal. Because Brian Artis no longer lives in fear of retribution by the state, his truthful testimony would be and is fundamental to the ends of justice. Undoubtably, as long as the perjured and fabricated testimony is excluded in a retrial of this matter, a not guilty verdict would be the likely end result. The writer of this petition arrived at this conclusion in light of there not being overwhelming evidence of guilt, and in a retrial the prosecution would not be afforded the benefit of using manufactured testimony before the new jury.

In addition to the above and forgoing, petitioner, in a new trial could conduct better cross-examination of each remaining witness, because their testimony would have to stand on its own for accuracy and truthfulness without the aid of the perjured testimony to uphold it. Specifially, referencing the false testimony of Lavelle Meeks and the fabricated trial testimony of Brian Artis. In all other respects, petitioner's chances of producing a different verdict are far more probable than a second finding of guilty as charged.

Finally, in ruling on the issue of a new trial, because the accused's attorney would no longer be forced into a state of ineffectiveness. In this instance, the trial judge's duty is not to weigh the evidence as though he were a jury determining guilt or innocence, rather his duty is the narrow one of ascertaining whether there is new material fit for a new jury's determination and judgement. *State v. Cavalier*, 701 So.2d 949 (1997).

### VIOLATION OF THE U.S. FEDERAL CONSTITUTION#3
**[Through suborning perjury, the state prevented petitioner's right to confrontation of the witnesses against him]**

Petitioner contends that he was denied due process of law and the right to call a witness on his own behalf , thereby likewise denying him equal protection of the law,as well as the right to confront, properly cross-examine and call witnesses on his own behalf. Brian Artis, was to be a witness for the defense, however, the prosecution threatened with accessory charges and incarceration if he did not change his story to fit the state's version of events. (See affidavit by the same). The relevant matter here is how many occasions did the prosecution meet with this witness and how did the threats issued during those meetings sway his testimony.

The court should note that after changing their testimony, neither of the state's witnesses were threatened with the possibility of perjury charges for giving their perjured testimony which was favorable to the state. This amounts to witness intimidation, because absent the threat made by the

prosecution, this witness WAS GOING TO TESTIFY, "TRUTHFULLY" and FOR THE DEFENSE.
And let it be noted that all witnesses are required, by law, to be sworn in before they testify and at
all times the prosecutor was aware that this false testimony would be given to the jury as sworn truth..

The first statements of these witnesses were not made under oath, however, had the witness
taken the stand and false testimony been exposed, the jury would have been afforded an opportunity
to make note of it for deliberating purposes. However, the threat of prosecution was aimed at one
objective and one objective alone, sealing shut the lips of this witness as an asset to the defense. The
looming threat of prosecution effectively made these witnesses unavailable. The witnesses referenced
herein were effectively placed under duress so as to preclude then from making free and voluntary
choice whether or not to testify truthfully.

In *United States v. Winter*, 348 F.2d 204, 210 (1965), Judge Weinfeld, writing for the Second
Circuit, stated:

> 'Once a witness swears to give truthful answers, there is no
> requirement to 'warn him not to commit perjury or, conversely to
> direct him to tell the truth.' It would render the sanctity of the oath
> quite meaningless to require admonition to adhere to it.'

In *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967), the
Supreme Court stated:

> "The right to offer the testimony of witnesses, and to compel their attendance, if
> necessary, is in plain terms the right to present a defense, the right to present the
> defendant's version of the facts as well as the prosecution's to the jury so it may decide
> where the truth lies."

Just as an accused has the right to confront the prosecution's witnesses for the purpose of
challenging their testimony, he has the right to present his own witnesses to establish a defense. This
right is a fundamental element of due process of law.

There was another option available to the prosecution, remind the witnesses of their
obligation to testify truthfully while under oath or alternatively inform them that they did not have to
testify at all, yet, the choice was made to issue a threat was selected. The question need be asked,
"What was so important that the lips of thiese witnesses had to be sealed under the threat of a
prosecution?" If evidence of guilt of petitioner having committed the murder was so overwhelming,
or alternatively so clearly discernable from the facts, no matter what this one witness would have said,
guilt would have been the verdict. However, this was not the case, the jury even concluded that they
needed to re-hear witness testimony, however, the trial court denied this request.

Wherefore, petitioner prays that he be granted a new trial based upon the evidence presented

within these pleadings. Also, petitioner requests an evidentiary hearing, where at, he can support the factual basis of these pleadings. This is needed specifically because, In every respect, petitioner avers that the Sixth Amendment guarantees the accused in a criminal prosecution, the right to present a defense. *Washington v. Texas*, 87 S.CT. 1920 (1967). Thus, the state's unethical practice of presenting the perjured testimony of Brian Artis and Lavelle Meeks deprived the petitioner the opportunity to present a plausible defense.

## CONCLUSION

For the reasons and factual content of the above and aforementioned, petitioner urges this Honorable Court to declare relief in the form of granting Post Conviction Relief or alternatively take all the necessary steps in order to bring this case into conformity with the U.S. Supreme Court holdings in *Martinez v. Ryan*, --- S.Ct. ---, 2012 WL 912950. Also the court may proceed to announce the reversal of the illegally secured conviction, and nullify the sentence imposed as a result thereof

Respectfully submitted:

_____
Marcus Artis #361755
La. State Prison, Spruce-4
Angola, La. 70712

cc: submitted/filed ___/___/13

## CERTIFICATE OF SERVICE

I, Marcus Artis, hereby certify that I have forwarded a copy of the above proceedings to the Clerk of Court for this Honorable Second Circuit and District Attorney's Office for the 33rd Judicial District, Parish of Allen on this _____ day of _____ 2013.

_____
Marcus Artis

## NOTARY

I hereby certify that, on the above date and time, the undersigned above, did appear before me _____ a notary, and was after given full notice of the penalty of perjury, did continue to depose that the above and foregoing is true to the best of his knowledge and belief.

_____
Notary or other person duly authorized to administer a binding oath

**APPENDIX #6**
Mail Receipt showing Supervisory PCR filed to the Third Circuit
on 1/7/13. Prison withdrawal slip to cover mailing costs attached

bmd 1/8/13

| CODE | DRAWING ACCOUNT | | DOC NUMBER | NAME: LAST NAME, FIRST NAME, INITIAL | |
|---|---|---|---|---|---|
| 73 | Offender club | | 361755 | Arlis Marcus | |
| 74 | Outside purchase | | LIVING QUARTERS | DATE OF REQUEST | TOTAL AMOUNT |
| | Family member | | Spr-4 | MO. 1 DAY 7 YEAR 13 | $ 7.30 |
| | Educational courses | | | | DOLLARS |
| | Outside bank savings acct# _____ 2 flats | | WRITTEN AMOUNT | | |
| | Newspaper ad for clemency / pardon. | | | | |
| | Other:_____ | | **PAYEE:** | | |
| 79 | Court Cost - Civil action number _____ | | VENDOR NO. | *OFFENDER MUST ATTACH A STAMPED, ADDRESSED ENVELOPE FOR ALL OUTSIDE MAIL* | |
| | | | NAME General Funds | | |
| **CODE** | **SAVINGS ACCOUNT** | | ADDRESS | | |
| 94 | Savings Bond | | CITY | STATE | ZIP |
| 79 | Court Cost - Civil action number _____ | | OFFENDER SIGNATURE: Marcus Arlis | | |
| 82 | Educational courses | | REQUEST DENIED. REASON: | | |
| **CODE** | **TRANSFERS · No check will be produced** | | RIGHT THUMB PRINT | VERIFIED BY: | |
| 68T | Transfer from drawing account to savings. | | | TITLE: | |
| Note: Print name and address in the payee section to the right. Attach necessary documents including a stamped, self-addressed envelope for all outside mail. | | | | APPROVED BY: John J. Joseph TITLE: | |

DOC Form PF-30                         10-A                         CIB Form Revised 08-2003

OFFENDER'S REQUEST FOR LEGAL / INDIGENT MAIL

NAME: Marcus Artis

NUMBER: 361755

LOCATION: Spr-4

BALANCE IN YOUR DRAWING ACCOUNT: $ Ø

LIST EACH ITEM TO BE MAILED
GIVE THE NAME AND COMPLETE ADDRESS OF EACH
PIECE TO BE MAILED :

name Doug Herbert District Attorney
address 105 S. 5th Street, P.O. Box 839
city, state, zip code Oberlin, La 70655-0839

name Third Circuit Court of Appeal,
address Clerk of Court, P.O. Box 16577
city, state, zip code Lake Charles, La 70616-6577

name
address
city, state, zip code

ANY DELIBERATE MISREPRESENTATION WILL RESULT
IN YOUR MAIL BEING RETURNED

offender's signature and number          361755

classification officer          date 1/7/13

**APPENDIX #7**

Copy of Notice of Intent and the Order granting petitioner until
March 22, 2013 to file pleadings



# 33RD JUDICIAL DISTRICT COURT
## PARISH OF ALLEN
## STATE OF LOUISIANA

Marcus Artis, Petitioner         NUMBER ·CR-95-357095, CRIM.

VERSUS         FILED: _____

State Of Louisiana, ET AL,
    Respondent(s)         CLERK OF COURT

### NOTICE OF INTENT TO SEEK AN APPLICATION FOR WRITS IN THE LOUISIANA COURT OF APPEALS, SECOND CIRCUIT

TO: THE HONORABLE JOEL, JUDGE, ORLEANS CRIMINAL 33RD JUDICIAL DISTRICT COURT, PARISH OF ALLEN, STATE OF LOUISIANA.

Pursuant to *Rule 4-2 of the Louisiana Uniform Rules--Courts of Appeal*, notice is hereby given of the intention of Marcus Artis, to seek a writ of review to the Louisiana Court of Appeals, Second Circuit requesting a review of the non-compliance with strict provisions of law which require a hearing when the procedural bars are raised.

Pursuant to *Rule 4-3*, affixed is an order for this Court to set the time for filing his writ application in the Louisiana Court of Appeals, Second Circuit.

SUBMITTED THIS, 2ⁿᵈ DAY OF Jan     , 2013.

### CERTIFICATE OF SERVICE

I, Marcus Artis, hereby certify that a true and correct copy of this Notice of Intent to seek a Writs in the Louisiana Court of Appeal, Second Circuit has been mailed to Mr. Doug Herbert, District Attorney, 33rd Judicial District, P.O. Box 839, Oberlin, La. 70655, this 2ⁿᵈ day of Jan , 2013.

Respectfully submitted,

Marcus Artis, Pro-se
DOC #
Louisiana State Penitentiary
Angola, Louisiana 70712



93

# 33RD JUDICIAL DISTRICT COURT
## PARISH OF ALLEN
## STATE OF LOUISIANA

RECEIVED & FILED
GERALD W. HARRINGTON
CLERK OF COURT
2013 JAN -4 AM 8: 18
BY _____
DEPUTY CLERK
ALLEN PARISH, LA

Marcus Artis, Petitioner

NUMBER : CR-95-357095, CRIM.

VERSUS

FILED: _____

State Of Louisiana, ET AL.
**Respondent(s)**

**CLERK OF COURT**

### ORDER

PREMISES CONSIDERED, IT IS HEREBY ORDERED, that Marcus Artis has until the

27nd day of March ___, 201 3, to apply for a writ of review to the Louisiana

Court of Appeal, Second 3rd Circuit.

IT IS FURTHER ORDERED, that the Clerk of Court and/or Court Reporter for the 33rd

Judicial District prepare and present to the Second 3rd Circuit Court of Appeals: 1.) A "certified

statement" of the date the subject-matter successive PCR was filed; 2.) A certified statement of when

the trial judge ruled on the subject-matter successive PCR; 3.) a certified statement of whether the

state was given an opportunity to raise procedural objections pursuant art. 927, and 4.) a certified

statement of whether the trial court performed its ministerial duties pursuant article 930.4(f).

Signed this 22nd day of February, 2013.

_____
Joe G. Davis
DISTRICT COURT JUDGE

**H. Ward Fontenot**
**Judge Ad Hoc**
Appointment received February 21, 2013



RECEIVED & FILED
GERALD W. HARRINGTON
CLERK OF C
13 FEB 25 AM 8: 20
BY _____
DEPUTY CLERK
ALLEN PARISH, LA

FEB 2 5 2013 - c̄. DA,
M. Artis

RECEIVED
STATE OF
LOUISIANA
JAN 0 4 2013
33RD JUDICIAL DISTRICT COURT

A TRUE & CORRECT COPY OF
ORIGINAL FILED: 1/4/13
OBERLIN, LA. FEB 2 5 2013
_____
Deputy Clerk of Court
ALLEN PARISH, LA.

94

**APPENDIX #8**
Post-Conviction Relief Application w/ Memo of Law Attached and exhibits

## UNIFORM APPLICATION FOR POST-CONVICTION RELIEF

Marcus Artis

NAME OF PETITIONER

No.

(to be filled in by clerk)

361755

PRISON NUMBER

33rd    JUDICIAL DISTRICT

La. State Penitentiary

PLACE OF CONFINEMENT

PARISH OF  WEST FELICIANA

STATE OF LOUISIANA

vs.

N. Burl Cain, Warden

CUSTODIAN          (Warden,
Superintendent, Jailor, or authoriz-
ed person having custody of
petitioner

Please serve CUSTODIAN and            Doug Herbert

DISTRICT ATTORNEY,    33rd JUDICIAL  DISTRICT,  STATE  OF

LOUISIANA.

### INSTRUCTIONS — READ CAREFULLY

(1) This petition must be legibly written or typed, signed by the petitioner and sworn to before a notary public or institutional officer authorized to ad-minister an oath. Any false statement of a material fact may serve as the basis for a criminal prosecution. All questions must be answered concise-ly in the proper space on the form. Additional pages are not permitted except with respect to the facts which you rely upon to support your claims for relief. No citation of authorities or legal arguments are necessary.

(2) Only one judgement may be challenged in a single petition except that con-victions on multiple counts of a single indictment or information may be challenged in one petition.

(3) YOU MUST INCLUDE ALL CLAIMS FOR RELIEF AND ALL FACTS SUPPORTING SUCH CLAIMS IN THE PETITION.

(4) When the petition is completed, the original must be mailed to the clerk of the district court in the parish where you were convicted and sentenced.

(5) You must attach official documentation showing your sentence and the crime for which you have been convicted. You may obtain that document-ation from the clerk of court of the district court of the parish where you were sentenced or from the institution where you are confined. If that documentation is not attached, you must allege that steps were taken to obtain it.

(6) Petitions which do not conform to these instructions will be returned with a notation as to the deficiency.

### PETITION

1. Name and location of court which entered the judgment of conviction challenged    33rd Judicial District

2. Date of judgment of conviction    11/11/95

3. Length of sentence    Life w/o benefits

4. Nature of offense involved (all counts)

1

2nd degree murder (R.S. 14:30.1) 1-count

5. What was your plea? (check one)

(a) Not guilty (　X　)

(b) Guilty (　　)

(c) Not guilty and not guilty by reason of insanity (　　)

If you entered a guilty plea to one or more counts and not guilty to other counts, give details: _____

(d) Name and address of the lawyer representing you at your plea (if you had no lawyer, please indicate) Bruce A. Thompson, 13652 Hwy. 10, P.O. Box 39, Pitkin, La. 70656 (Now deceased)

(e) Was the lawyer appointed (　X　) or hired (　　)? (check one)

6. Kind of trial: (check one)

(a) Jury (　X　)

(b) Judge only(　　)

7. (a) Name and address of the lawyer representing you at your trial: _____
Bruce A. Thompson, (Deceased).

(b) Was the lawyer appointed (　X　) or hired (　　)? (check one)

8. Did you testify at the trial? Yes (　X　) (No　　)

9. (a) Give the name and address of the lawyer who represented you at sentencing for the conviction being attacked herein. _____
Same as 5(d) above

(b) Was the lawyer appointed (X　) or hired (　　)? (check one)

10. Did you appeal from the judgment of conviction?　　Yes ( X ) No (　)

11. If you did appeal, give the following information:

(a) Citation, docket number, and date of written opinion by the Supreme Court or Court of Appeal (if known)　97-KO-1206, (10/31/97)

(b) Name and address of lawyer representing you on appeal: _____
Same as 5(d) above

(c) Was the lawyer appointed (　　) or hired ( X )? (check one)

12. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any application for post-conviction relief with respect to this judgment in any state or federal court. Yes ( X ) No (　)

13. If your answer to 12 is "yes", give the following information:

(a) (1) Name of Court　33rd Judicial District Court

(b) (2) Nature of proceeding　Post Conviction Rrelief

(3) Claims raised　Defendants conviction was based upon the perjured

2

testimony of Lavelle Meeks (Due Process Violation); Defendant's
confession was not free and voluntary (5th Amend); jury selectection
in violation of due process

(4) Did you receive an evidentiary hearing on your application?

Yes ( X )      No      ( )

(5) Was relief granted or denied?     Denied

(6) Date of disposition     4/02/97

(7) Citation of Opinion (if known)     96-1306 (unpublished)

(8) Name and address of lawyer representing you (if none, so state)
Author Joiner, Sr., Atty. At Law, 1606 Scenic Hwy., R.R., La.
70802

(9) Was the lawyer appointed    ( ) or hired ( X )? (check one)

(b) Have you filed any other application for post-conviction relief with respect
to the challenged conviction?
Yes ( X ) No ( )

If "yes", set forth the details (as above) on separate paper and attach.

(c) Did you appeal or seek writs of review from the denial of any post-
conviction application?

(1) First petition, etc. Yes ( X ) No ( )

(2) Second petition, etc. Yes ( X ) No ( )

(d) If you did not appeal or seek writs from the denial of any post-conviction
application, explain briefly why you did not:   Time barred, not exhausted

(e) Name of the lawyer who represented you on appeal from the denial
of any post-conviction application (if none, so state):

(1) First petition     None

(2) Second petition     None

## CLAIMS FOR RELIEF

State concisely facts supporting your claim that you are being held unlawful-ly. If necessary, you may attach extra pages stating additional claims and supporting facts. Do not argue points of law.

The following is a list of those claims, and only those claim, that may pro-vide you with grounds for relief:

(1) Your conviction was obtained in violation of the constitution of the United States or the State of Louisiana;

(2) The court exceeded its jurisdiction;

(3) Your conviction or sentence subjected you to double jeopardy;

(4) The limitations on prosecution had expired;

(5) The statute creating the offense for which you were convicted and sentenced is unconstitutional;

(6) The conviction or sentence constitute the ex post facto application of law in violation of the Constitution of the United states or the State of Louisiana.

**A REMINDER: THE ABOVE LIST CONTAINS ONLY THOSE CLAIMS THAT YOU MAY RAISE FOR RELIEF. YOU MUST SET FOURTH ALL OF YOUR COMPLAINTS ABOUT YOUR CONVICTION IN THIS APPLICATION. YOU MAY BE BARRED FROM PRESENTING ADDI-TIONAL CLAIMS AT A LATER DATE. Remember that you must state the FACTS upon which your complaints about your conviction are based. MERE CONCLUSORY ALLEGATIONS WILL NOT SUFFICE.**

## REPETITIVE APPLICATIONS

The above claims may not provide grounds for relief if any of the following applies to you:

(1) Unless required in the interest of justice, any claim for relief which you fully litigated in an appeal shall not be considered.

(2) Any claim of which you had knowledge and inexcusably failed to raise in the proceeding leading to conviction may be denied by the court.

(3) Any claim which you raised in the trial court and inexcusably failed to pursue on appeal may be denied by the court.

(4) A successive application may be dismissed if it fails to raise a new or different claim.

(5) A successive application may be dismissed if it raises a new or different claim that was inexcusably omitted from a prior application.

This application will provided space for you to explain the reasons why you failed to raise your claims in the proceedings leading to conviction, or failed to urge the claim on appeal, or failed to include the claim in a prior application.

## CLAIM[S]

YOU MAY ATTACH ADDITIONAL PAGES SETTING FORTH THE
REQUIRED INFORMATION (BELOW) IF ADDITIONAL CLAIMS ARE
ASSERTED

Claim:    Please see attached Memorandum of Law

_____

_____

(a) Supporting FACTS (tell your story briefly without citing cases or law):

Please see attached Memorandum of Law

_____

_____

_____

_____

_____

_____

_____

_____

_____

(b) List names and addresses of witnesses who could testify in support of your

claim. If you cannot do so, explain why:    Brian Artis, P.O. Box 702,

Oberlin, Louisiana  70655

_____

_____

_____

_____

_____

_____

_____

(c) If you failed to raise this ground in the trial court prior to conviction,

on appeal or in a prior application, explain why:    appealable claims were

raised on appeal, and the post conviction claims are being raised here under

the "new facts" exception of 930.8(A)(1).

_____

_____

_____

A. Do you have in a state or federal court any petition or appeal now pending as to the judgment challenged? Yes (    ) No ( X )  If "yes", name the court _____

B. Do you have any future sentence to serve after you complete the sentence imposed by the judgment challenged? Yes    (    ) No ( X )

   (1) If so, give name and location of court which imposed sentence to be served in the future: _____

   (2) Give date and length of sentence to be served in the future:

   _____
   _____

   (3) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
   Yes (    )  No ( X )

WHEREFORE, petitioner prays that the Court grant petitioner relief to which he may be entitled.

_____
Signature of Petitioner

Day/            Month            /Year

## APPLICATION FOR APPOINTMENT OF COUNSEL

I am unable to employ counsel to represent me in this matter because I have no assets or funds except:

_____ None _____
_____
_____
_____

(Write "None" above if you have nothing; otherwise, list your assets including funds in prison accounts.)

_____
Signature of Petitioner

## AFFIDAVIT

STATE OF LOUISIANA

PARISH OF    WEST FELICIANA

MARCUS ARTIS                            , being first duly sworn says that
(Name of Petitioner)

he has read the foregoing application for post-conviction relief and swears or
affirms that the **allegations contained in the petition are true to the best of
his information and belief**. He further swears or affirms that he is unable to
employ counsel because he has no assets or funds which could be used to hire an
attorney except as listed above. (Delete reference to appointment of counsel if
inapplicable)

_____
Signature of Petitioner

**SWORN TO AND SUBSCRIBED** before me this _____ day
of _____, 20 _____.


_____
Notary Public or other person authoriz-
ed to administer an oath.

Marcus Artis, Petitioner           NUMBER : CR-95-3570

VERSUS                    FILED: _____

N. BURL CAIN
Louisiana State Penitentiary, ET AL.       _____
         Respondent(s)          CLERK OF COURT

### SUCCESSIVE APPLICATION FOR POST CONVICTION RELIEF'S "MEMORANDUM OF LAW IN SUPPORT"
BASED UPON THE AUTHORITY OF *ART. 930.4* THE COURT HAS DISCRETION TO HEAR ANY CLAIM PREVIOUSLY LITIGATED OR NOT AND 930.8(A)(2) ALLOWS A CASE TO BE HEARD BASED ON A NEW INTERPRETATION OF LAW. AND IN THIS CASE THAT IS:

*MARTINEZ V. RYAN*, --- S.Ct. ---, 2012 WL 912950

### A PREVIOUSLY UNKNOWN RULE OF LAW,
ESTABLISHING THAT: *GIDEON, POWELL, HALBERT*
APPLIES TO POST-CONVICTION PROCEEDINGS IN THE FIRST INSTANCE AS TO THE CLAIM OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

**MAY IT PLEASE THE COURT:**

NOW COMES, Marcus Artis, hereinafter "Petitioner", who avers that he has and continues to suffer an illegal custody and the remedy to the same lies with this Honorable Court.

Because of the overlapping operation of *La.C.Cr.P. Art. 930.4(F)* and *930.7(B)* require it, petitioner, requests that he be afforded a full and fair evidentiary hearing should the Court consider a denial of the Application or if the District Attorney or designated respondent raise any procedural objections.[1] Petitioner requests that this Honorable Court provide him with the assistance of counsel, during such an evidentiary hearing. *See: Martinez v. Ryan*, No. 10-1001, 2012 U.S. Lexis 2317 (3/20/12); *28 U.S.C. § 2254(d) and (d)(6).*

### PRO SE PLEADINGS ARE TO BE HELD TO LESS STRINGENT STANDARDS THAN FORMAL PLEADINGS DRAFTED BY LAWYERS

The law, as it is presently exists does not hold a pro se prisoner to the high standards in which attorneys are held to. Further, the pro se prisoner is to be given the benefit of favorable doubts

---

[1]

It is hereby requested that this Honorable Court insure that, if the Allen Parish District Attorney's Office and/or the designated respondent of the 33rd Judicial District Court, file any type of opposition to the relief sought; the application itself, or any document related hereto, that the same be mailed to petitioner with return receipt service by the West Feliciana Sheriff's Department.

regarding his pleading, because he may suffer from an inability to articulate what is really wrong in his case. Most importantly, this is how the United States Supreme Court addressed the matter in *Haines v Kenner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972):

> "A pro se complaint, "however inartfully pleaded," **must be held to "less stringent standards than formal pleadings drafted by lawyers"** and **can only be dismissed for failure to state a claim if it appears " 'beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"** Id., at 520-52, 92 S.Ct. At 596, quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed2d 80 (1957).

Under this settled-principle of law, this Honorable Court is duty-bound to permit the development of the underlying facts of this case. Petitioner hereby invokes his right to be held to a less stringent standard and that his pleading "can only be dismissed for failure to state a claim if it appears 'beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," provision of the precedent of the United States Supreme Court regard pro se pleadings.

### NULLIFICATION OF STATE'S PROCEDURAL DEFENSES
Plaintiff avers that the *Louisiana Code of Criminal Procedure, Article 930.4* places limitations on repetitive applications for post conviction relief. *Article 930.4* states as follows:

**Art. 930.4. Repetitive applications**
A.  Unless required in the interest of justice, any claim for relief which was fully litigated in an appeal from the proceedings leading to the judgment of conviction and sentence shall not be considered.
B.  If the application alleges a claim of which the petitioner had knowledge and inexcusably failed to raise in the proceedings leading to conviction, the court may deny relief.
C.  If the application alleges a claim which the petitioner raised in the trial court and inexcusably failed to pursue on appeal, the court may deny relief.
D.  A successive application may be dismissed if it fails to raise a new or different claim.
E.  A successive application may be dismissed if it raises a new and different claim that was inexcusably omitted from a prior application.
F.  If the court considers dismissing an application for failure of the petitioner to raise the claim in the proceedings leading to conviction, failure to urge the claim on appeal, or failure to include the claim in a prior application, the court shall order the petitioner to state the reasons for his failure. If the court finds that the failure was excusable, it shall consider the merits of the claim.

Petitioner's failure to raise the current claims, either on **appeal** or **in a prior application**, should be excused because he had no knowledge of the existence of the underlying claims or the supporting evidence until after his direct appeal or any prior application had been filed.

*La.C.Cr.P. Article 930.4* provides that any claim previously exhausted on appeal may be re-litigated, if re-litigation is in the "interest of justice." The evidence now adduced ultimately

reflects that the interest of justice demands re-evaluation of this case in life of the "new fact" exception of **930.8(A)(1)** post-conviction provisions and relief granted in accordance therewith. Petitioner submits that this is an issue of blatant constitutional denial of the right to a fair trial, that of confrontation, and as the causation of forced ineffective-assistance of trial-counsel. As such, petitioner is entitled to an evidentiary hearing or reversal of his conviction.

In general, the requirements of Louisiana's independent operative law is governed through the Uniform Application for Post-Conviction Relief. See, *La.C.Cr.P., art. 926(d); La. S.Ct. R.;* and *U.R.C.A.*. *All of which* require an inmate seeking post-conviction relief to explain: "why he may have failed to raise a particular ground in earlier proceedings." The Uniform Application, thus in most cases, provides an inmate with an opportunity to explain his failure to raise a claim earlier and provides the district judge with enough information to undertake the informed exercise of his discretion. Also such a District Judge is thereby empowered to determine whether default of an application under *La.C.Cr.P., arts. 930.4(b), (c) and (e)* is appropriate. Proper use of the uniform application, thus, satisfies the requirement of *La.C.Cr.P., art 930.4(f)* without the need for further filings, formal proceedings or a hearing. *State ex rel. Kenneth Rice v. State of Louisiana*, 749 So.2d 650 (La.S.Ct. Nov. 12, 1999).

Though an Appellate Court of Appeal may itself invoke the mandatory procedural bar of *La.C.Cr.P. art. 930.4(a), cf. State ex rel. Glover v. State*, 93-2330, p. 21, 22 (La. 9/15/95) 660 So.2d 1189, 1201-02 (appellate courts may raise the time bar of *La.C.Cr.P., art. 930.8 sua sponte*), the legislature directed the discretionary procedural bars of *La.C.Cr.P. arts. 930.4 (b) & (e)* to district court judges, who in appropriate cases may but need not invoke them to deny relief or dismiss an application. See *Art. 930.4, cmt.*; *Cheney C. Joseph, Jr., Post-Conviction Procedure, 41 La. L. Rev. 625, 638*. Accordingly, appellate courts may not themselves deny relief under these subsections but instead "may only review a district court's actions under them for an abuse of the district court's discretion or for the district court's compliance with *La.C.Cr.P., art. 930.4(f)*. See, *Errol J. Carlin v. Burl Cain*, 706 So.2d 968, 1997-2390 (La. 3/13/98).

Under the ruling by the First Circuit in *State ex rel Lee v. Louisiana*, No. 97-KW-2500, (Dec. 23, 1997) the found trial court, abused its discretion, power in denying petitioner's post conviction relief application, since the judge failed to order the petitioner to explain why he had not submitted his claims in an earlier proceedings and additional, the district court's ruling did not indicate it considered claim (2) ineffective assistance of counsel. The *Lee* court, held, accordingly, the district

3

court is ordered to reconsider the application for post-conviction relief. Should the district court again consider denying the application because of relator's failure to pursue some of the claims on appeal, the court must first comply with the directive of *article 930.4(f)* and order relator to state reasons for the failure. See, *State v. Turner*, 544 So.2d 387 (La.1989).

**Professor Cheney C. Joseph, Jr., at 638-39**, who constructed the proper procedures for considering an repetitive application and a successive application, noted the following:

> The repetitive application Article recognizes two distinctly different basis for dismissal without reaching the merits of a application. The first involves the prior litigation of the issue on appeal or in a prior application for Post Conviction Relief. **See La.C.Cr.P. art. 930.4 (A) and (D)**. The second involves a successive application that may be dismissed if it raises a new or different claim that was inexcusably omitted from a prior application and the inexcusably procedural default on the part of petitioner due to his failure to raise or pursue the claim in a earlier proceedings. **See La.C.Cr.P., art. 930.4 (C), (E) and (F)**.

However, it remains that the repetitive application Article is very broad in scope and is phrased in discretionary terms. Obviously, the court must assess fairness and considerations to the state and the petitioner in deciding whether to allow the petitioner to relitigate or raise new claims.

In the case *sub judice*, this court should never simply dismiss Mr. Artis' application as repetitive or successive on the face of the pleadings without first affording him an opportunity to show cause for his failure to raise or pursue the claim in the earlier proceedings. *La.C.Cr.P., art. 930.4 (E)* and *(F)*. In fact, Mr. Marcus Artis' can make a substantial showing that delay in filing these claims were not his fault.

The court may always exercise its discretion to consider the merits of any claim. Even claims which were fully litigated in an appeal may be considered in the interest of justice. *State v. Cage,* 637 So.2d 89, 90 (La. 1994). What is more, petitioner are statutorily entitled to counsel if:

    (1)    An evidentiary hearing is ordered, or

    (2)    Discovery is authorized to expand the record;

    (3)    The court is considering dismissal for failure to raise the issue in an earlier proceedings. If the court determines that the repetitive writs provisions may be a basis for dismissal the court must appoint counsel. In appointing counsel for the petitioner is critical in assisting him in explaining his failure to raise the issue in a earlier proceedings. La.C.Cr.P., Art. 930.7.

Mr. MarcusArtis, shall be given the right to due process and equal protection of the law in explaining his failure to raise these issues earlier than now with counsel assisting him to do so. In *State ex rel. Ferrand v. Blackburn*, 414 So.2d 1207, 1209, *footnote 2* (La. 1982), the petitioner applied for post-conviction relief alleging the evidence was insufficient to prove an essential element of the offense. The petitioner had failed to raise the issue on appeal.

4

However, the Louisiana Supreme court was not hesitate to review the claim (and in fact grant relief) since the conviction was based on insufficiency of evidence is a violation of constitutionally guaranteed due process. The Louisiana legislature directed the discretionary power under *La. C.Cr.P. art. 930.4 (F)*, to the district court judges, if the court finds that the default is excusable or pardonable "in the interest of justice" in appropriate case may but need not involve them to deny relief or dismiss an application. This Honorable court should consider petitioner application in light of the rationale in *Carlin v. Cain*, 706 So.2d 968 (La. 1998), and *State v. Chapman*, 699 So.2d 504 (La. App. 4 Cir 1997). Petitioner alleges that: this court should issue a **order** for him to state his excusable reasons for his preservation and presentation of the successive claims in a earlier proceedings.

### ISSUES AND FEDERAL CONSTITUTIONAL VIOLATIONS RAISED

### VIOLATION OF THE U.S. FEDERAL CONSTITUTION #1
[Violation of *Napue v. People of the State of Illinois*, 79 S.Ct. 1173, 360 U.S. 264]

### VIOLATION OF THE U.S. FEDERAL CONSTITUTION #2
[Trial Counsel's Ineffective Assistance]

### VIOLATION OF THE U.S. FEDERAL CONSTITUTION#3
[Through suborning perjury, the state prevented petitioner's right to confrontation of the witnesses against him

### I. Clearly Established Federal Law on A Conviction Obtained Through Use of False Evidence

Since at least 1935, it has been the established law of the United States that a conviction obtained through testimony the prosecutor knows to be false is repugnant to the Constitution. See *Mooney v. Holohan*, 294 U.S. 103, 112, 55 S.Ct. 340, 79 L.Ed.2 791 (1935). This is so because in order to reduce the danger of false convictions, we rely on the prosecutor not to be simply a party in litigation whose sole object is the conviction of the defendant before him. The prosecutor is an officer of the court whose duty is to present a forceful and truthful case to the jury, no to win at any cost. See *Jenkins v. Artuz*, 294 F.3d 284, 296 n. 2 (2d Cir. 2002)

Supreme Court holdings have long "established that a conviction obtained through use of false evidence, *known* to be such by representatives of the State, must fall under the *Fourteenth Amendment*. The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears.

And though one prosecutor may disclaim knowledge had by another prosecutor, this defense too has been rejected. In *Giglio*, the Supreme Court held that, even though the specific prosecutor on the case did not have actual knowledge of the facts giving the lie to a prosecution's witness at trial, he was charged with the knowledge of another prosecutor because a prosecutor's office has a duty to "insure communication of all relevant information on each case to every [prosecutor] who deals with it."

5

## II. Application of Clearly Established Federal Law

### A. *The prosecutor's knowledge of Brian Artis' false testimony*

During the presentation of the states case-in-chief, the prosecution knowing used perjured testimony to sway the jury towards a guilty verdict. The states primary witness Brian Artis was obviously testifying falsely under duress and coercion of D.A.'s office[2] at this point in the trial:

**Eye witness account?**

Pg 359 (lines 19-23) (copy attached)

Q.   What happened after Sammy falls?
A.   Lavelle came back to the car and Marcus pulled Sammy into the bushes.
Q.   Did you see how he dragged Sammy into the bushes?
A.   Like by his shoulders.

This statement was proven false by the state's own witness when the state's expert testified that:

\*   The deceased was obviously drug by his feet because he had scratches all over his back and his shirt tail was rolled up and they also discovered a crack pipe therein. This would have been impossible if the deceased would have been drug by his shoulders. The soil stains would have been in the lower portions of the deceased jeans and shirt tail would not have been rolled up. (see page 269, lines 9-18)(copy attached)

\*   Brian testified that Marcus was the one who threw the gun in the river (see page 361, lines 14-18)(copy attached)

\*   Lavelle testified that he was the one who through the gun in the river (see page 9, lines 8-18)(copy attached)

### B. *The prosecutor's knowledge of Lavell Meeks' false testimony*

During the presentation of the states case-in-chief, the prosecution knowingly used perjured testimony to sway the jury towards a guilty verdict. The states primary witness Brian Artis was obviously testifying falsely under duress and cohercion of D.A.'s office at this point in the trial:

**(1) Perjured Testimony:**

**The Undisclosed Plea deal (UNCORRECTED KNOWN FALSE TESTIMONY)**

| Initial Sworn Testimony | Napue Violation uncorrected "false"testimony |
|---|---|

---

[2] There were letters (undiclosed correspondence) sent to the District Attorney's Office by Lavelle Meeks seeking to work out a deal. During trial Meeks made it seem as though he had no motive in testifying and the District Attorney did nothing to correct this false premise either.

6

| | | | | |
|---|---|---|---|---|
| * | 364 (lines 24-34)(copy attached) | * | 385 (lines 20-27)(copy attached) | |
| 24 Q | Has the District Attorney offered you anything in exchange for | 20 Q | So he told you that you would be charged as an accessory? | |
| 25 | your testimony at this trial? | 21 A | Yes, sir. | |
| 26 A | Yes, Ma'am | 22 Q | Okay. Did he indicate to you that if you cooperated that | |
| 27 Q | And what did they offer | | | |
| 28 A | I wouldn't have a charge | 23 | maybe a deal could be worked | |
| 29 Q | They wouldn't prosecute you on the charge of accessory | 24 | out. | |
| 30 | after the fact? | 25 A | No, sir. | |
| 31 A | Yes, ma'am | 26 Q | He never made no promises to you at all? | |
| 32 Q | Did you accept that offer | 27 | No, sir. | |
| 33 A | Yes ma'am | | | |
| 34 | | | | |

## The Gun

page 308 lines 15-23 (Lavelle Meeks testimony)(copy attached)

> Q.    Did yo recognize the gun?
> A.    Yes, I did
> Q.    And how were you able to recognize it
> A.    **Because it was the same gun that I threw in the river -- I think I threw it in the river.**
> Q.    **That was your gun?**
> A.    **Yes, it was.**
> Q.    Was that the gun that was used to kill Sammy Cole.
> A.    Yes, it was

page 361 lines 9-18 (Brian's Testimony)(copy attached)

> Q.    And then what happened
> A.    We stopped the car. Marcus stopped the car.
> Q.    Marcus stopped the car?
> A.    Yes, ma'am.
> Q.    **And then what happened?**
> A.    **He got out and threw the gun in the river.**
> Q.    Who got out?
> A.    Marcus.

Lavelle testified that it was him who through the gun in the river, but Brian testifies that it was Marcus Artis who through the gun in the river. The prosecutor knew that both statements could not be true and also Lavelle Meeks testimony was more credible that he through the gun in the river because he was making statements against his own interest.

The primary falsehoods which now require a reversal of the conviction and sentence in this case were uncovered when Brian Artis executed a sworn affidavit (see exhibit "A") disclosing for the first time that:

1.)    He gave testimony he knew to be false in the case of *State of Louisiana v. Marcus Artis.*
2.)    That he willingly gave this false testimony as a result of threats made against him by the prosecution if he chose not to cooperate and give the false testimony.
3.)    That he received immunity in return for providing false testimony as instructed.

7

4.) The District Attorney forced him to testify that he witnessed Marcus Artis returning to a car to get a gun under an armrest, walked up to the victim and fired.

5.) He admits to falsely testifying that he witnessed Marcus Artis pull Sammy into the woods

6.) And he admits to falsely testifying to seeing Marcus Artis throw a gun into the river. (When Lavelle Meeks testified that it was his own gun and that he through that same gun in the river.)

7.) Lastly, the affiant declared that the State's prosecutors and staff worked with him until he memorized the false story to be recited to the jury.

The prosecutor in the instant case did precisely what was prohibited in the Napue decision. Although the prosecutor knew the witness to be spewing false testimony under oath, it did nothing to correct the testimony and in its closing argument, the prosecution expressed to the jury:

" The kicker of it all is the testimony of Brian, Marcus' cousin. Nobody ever accused him of lying. (See page 519, lines 1-19)(copy attached) "

The aforementioned statement to the trial jury both by design, poise and deliverey was aimed at having a direct effect on the decision making process of the trial jury. And because the new facts in this case shows that the prosecution new this witness to be giving false testimony under oath, requires the type of relief granted in *Napue*. Wherefore petitioner asks for the same.

### VIOLATION OF THE U.S. FEDERAL CONSTITUTION #1
[Violation of *Napue v. People of the State of Illinois*, 79 S.Ct. 1173, 360 U.S. 264]

Petitioner herein avers that the State secured a wrongful conviction against him by the use of perjured testimony. These witnesses colluded/conspired with the prosecution to:

1.) Present perjured testimony to the trial jury

2.) Not disclose to the jury that the testimony was false; and

3.) To mislead the trial jury into believing the false testimony in order to sway their judgement.

Whereas, this practice served to deprive the petitioner herein of several constitutional protections which will be discussed herein. Furthermore, this Honorable Court is cloaked with the authority through the Federal and State Constitutions to tailor a remedy to this deprivation of rights. The controlling precedent upon which this Honorable decision hinges will be the case of *Napue v. People of the State of Illinois*, 79 S.Ct. 1173, as set forth at the heading of this claim.

Petitioner contends that the prosecutor's failure to correct the testimony of witnesses whom he knew to be untruthful constitutes prosecutorial misconduct[3]. It is a matter of settled law that if the prosecutor has knowingly used perjured testimony or false evidence, the standard is considerably less onerous:

---

[3] Suborning perjury.

8

"the conviction "must" be set aside if there is any reasonable likelihood that the false testimony could have affected the jury's verdict." *Napue v. Illinois*, 360 U.S. 264, 79 S.CT. 1173, 3 L.Ed.2d 1217 (1959).

The proper question for this Honorable Court to resolve in an evidentiary hearing is, whether "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." See, *United States v. Agurs*, 427 U.S. 97, 103, 96 S.CT. 2392, 2397, 49 L.Ed.2d 324 (1976). In reaching its decision, the *Napue* Court made it quite clear what the expectations of the *Due Process Clause* was in instances such as the one presently before this Honorable Court when it wrote:

"Where important witness for the State, in murder prosecution of petitioner, falsely testified that witness had received no promise of consideration in return for his testimony, though in fact Assistant State's Attorney had promised witness consideration, and Assistance State's Attorney did nothing to correct false testimony of witness, fact that jury was appraised of other grounds for believe in that witness may have had an interest in testifying against petitioner did not turn what was otherwise a tainted trial into a fair one. *U.S.C.A. Const. Amend. 14.*

What the U.S. Supreme Court announced here is its intolerance for the State to knowingly use false testimony in order to secure a wrongful conviction. The Court created no cushion nor safeguard for the prosecution to direct the Court's attention to other evidence before the jury tending to suggest to the jury that the falsely testifying witness was brought under scrutiny by the exposure of other reasons for having an interest to testify falsely against the accused. Here the record is replete with the false testimony and the testimony in its form at trial was called into question by the trial jury when they returned to the courtroom and requested an opportunity to re-hear the testimony of this witness (testimony now known to be false).

Such a corruption of the truth-seeking process strike at the heart of the judicial process and renders invalid the conviction and sentence of petitioner, Marcus Artis. More importantly, the prosecution sabotaged the entire purpose of a trial. By design, trials are supposed to be the great instrument through which we seek to establish the truth of an allegation and remove the dross of falsehoods in pursuit of the ambition that:

"It is far worse to convict an innocent man than to let the guilty go free." In re Winship, 397 U.S. at 372, 90 S.Ct. 1068.

It is a better thing for ten guilty persons to escape punishment than for one innocent to suffer wrongly.(See 4 William Blackstone, Commentaries *358; Alexander Volokh, "Guilty Man" 146 U. Penn. C. Rev. 173 (1997).

The attention required to support a juror's determination of credibility to assist in his finding of proof beyond a reasonable doubt is of great import. The false testimony creates skepticism as to whether the jurors minds could support their reasoning in reaching a verdict of guilty as charged. Additionally, as a reflection of juror skepticism, the jurors came out of deliberations requesting re-

9

hear Brian Artis' trial testimony, whereas, the court denied their request. Despite this, the question lingers, "why did they want to hear that testimony again?" **I believe this pleading shows why. It was, because they had reservations**.

Similarly, in order to prevail on the instant claim, *petitioner need only show a reasonable probability that the outcome of his case would have been different*, **"not" that his counsel would, in fact, have obtained a verdict of not guilty**. See *Soffar v. Dretke*, 368 F.3d 441, 478 (5th Cir 2004). And when the issue is one of "false testimony", the principle that a State may not knowingly use false testimony, to obtain a tainted conviction, implicit in any concept of ordered liberty, does not cease to apply merely because the false testimony goes only to the credibility of the witness. The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interests of the witness in testifying falsely that a defendant's life or liberty may depend.

Marcus Artis contends that, had the jury been apprised of the true facts, however, it might well have concluded that Brain Artis and Lavelle Meeks had fabricated testimony in order to curry favor with the very representative of the State who was prosecuting the case in which Brain Artis and Lavelle Meeks were testifying, for Brain Artis and Lavelle Meeks believed that such a representative was in a position to implement a promise of consideration.

In *Soffar*, the Fifth Circuit explained the practical implications of *Strickland's* requirement that a habeas petitioner, "demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id at 478 (citing *Strickland*, 466 U.S. at 694. (Emphasis added). In that case, defense counsel's performance was deficient because he failed to conduct an adequate pretrial investigation. *Soffar*, 368 F.3d at 479. This failure to investigate prevented the jury from hearing evidence that would have cast doubt on Mr. Soffar's guilt. *Id*. Therefore, the Fifth Circuit concluded that Mr. Soffar had been prejudiced. In assessing the prejudice prong of *Strickland*, the Fifth Circuit explicitly framed the question as whether it was reasonably probable that had the jury heard the additional evidence, at least one juror would have voted for acquittal. *Id*. Thus, a reasonable probability of a hung jury suffices to satisfy the prejudice prong of *Strickland*. Marcus Artis is entitled to the same benefit. If the knowledge of this information could have changed the minds of jurors, then he has proven his case.

Although many courts have initially failed to understand this aspect of *Strickland's* prejudice inquiry, petitioner herein explains. The petitioner would indeed have borne the burden of proving,

by a preponderance of the evidence that he was not guilty of the crime charged. However, to succeed on this Post Conviction Application, petitioner need only show a reasonable probability that a competent counsel's performance would have convinced three of twelve jurors to vote for an outcome other than a conviction, or an outcome where the conviction was of a lesser included offense.[1] Petitioner need not demonstrate a reasonable probability that his counsel could actually have obtained a verdict of "not guilty." To hold otherwise is to create a standard that goes beyond *Strickland*, in fact, far heavier than that required by *Strickland*. Petitioner need not prove that his defense would have succeeded; he need only demonstrate that had counsel presented an one of these defenses properly, there is a reasonable probability that at least three of twelve jurors would have voted for an outcome other than conviction or a conviction of a lesser grade of the offense charged.

In our criminal justice system the prosecutor has at his disposal the substantial resources of the government as well as considerable other advantages. In exchange, the system reposes great trust in the prosecutor to place the ends of justice above the goal of merely obtaining a conviction. *Imber v. Pachman*, 424 U.S. 409, 96 S.CT. 984, 47 L.Ed.2d 128 (1976); *Kirkpatrick v. Whitley*, 992 F.2d 491 (5th Cir. 1993). See also *ABA Model Rules of Professional Conduct, Rules 3.3(a)(4), 3.4(a), (b), and (f), and 3.8*, all of which has been violated by the prosecution.

This contention implicates the United States Supreme Court's decision in *Napue*. To prove a *Napue* claim, the accused must show that the prosecutor acted in collusion with the witness to facilitate false testimony. The prosecutor in this case allowed the State witness to give false testimony without correction, therefore, the convictions gained as a result of that perjured testimony must be reversed, if the witness's testimony reasonably could have affected the jury's verdict, even though the testimony may be relevant only to the credibility of the witness. Id. at 269, 79 S.CT. 1173.

Furthermore, fundamental fairness to an accused, *i.e.*, due process, is offended "when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." Id. When false testimony has been given under such circumstances, the defendant is entitled to a new trial unless there is no reasonable likelihood that the alleged false testimony could have affected the outcome of the trial. *Giglio v. United States*, 405 U.S. 150, 92 S.CT. 763, 31 L.Ed.2d 104 (1972).

In this case, petitioner's argument is wholly substantiated as he provides a copy of the police report/interviews with the alleged witnesses lend support to his contentions, which eliminates this claim as a bare assertion. *State v. Broadway*, 753 So.2d 801 (La.1999). The prosecution's actions raise serious questions about both the reality and appearance of fairness in petitioner's conviction and

11

punishment. Absent an adequate and factual record, petitioner respectfully ask the Court not to sweep away these realities on the assumption that the jury would not have arrived at a different conclusion, had it been told of the matters he attributes to the prosecution. .

Petitioner argues that the State's conduct in this issue is governed by the principle of *Napue v. Illinois*, supra. It is true as supported by the statements, not only did the witness lie, the prosecutor also knew that he was lying. It would be upon hearing the witness' reason for lying in his testimony, a rational trier of fact would discount the witness' testimony and others who were directly connected to the plot to present false testimony and find that a reasonable doubt exist as to whether Marcus Artis actually did the things alleged against him in this case.

The United States Supreme Court has held that there is no place in our system of criminal justice for prosecutorial misconduct. *Nash v. Illinois*, 389 U.S. 906, 88 S.CT. 222 (1967); *Giles v. Maryland*, 386 U.S. 66, 87 S.CT. 793, 17 L.Ed.2d 737 (1967).

The presentation of known false evidence is incompatible with the rudimentary requirements of our system of justice. *Mooney v. Holohan*, 294 U.S. 103, 55 S.CT. 340, 79 L.Ed. 791 (1935). To gain release based upon it, a petitioner must show that the testimony was material and affected the outcome of the trial; that the government knew or should have known that the testimony was false. *United States v. Chagra*, 735 F.2d 870 (5th Cir. 1984). A conviction must be set aside if there is any reasonable possibility that the use of false testimony could have affected the trial. *United States v. Bagley*, supra. The cardinal proposition is that "[t]he constitutional right of a criminal defendant to cross-examine witnesses against him that are free to testify without fear of the state retaliation." It is hard not to conclude, after all the statements that were made and changed each time the Brain Artis and Lavelle Meeks talked with the police or investigators, why the prosecution would still allow their witnesses to testify falsely at trial, the reason should be quite obvious to the Court.

The Court must provide a cumulative evaluation of the false testimony, keeping in mind that petitioner does not have to show that, his trial would have resulted in acquittal or that there would an insufficiency of the evidence to support a conviction. Petitioner need only to show a reasonable likelihood that the false testimony affected the jury's verdict. *Bagley*, 105 S.CT. at 3382 n. 9.

What is also important to the fair administration of justice in this case is the fact that it is now known that the witness's sworn testimony was the result of the prosecution's misconduct, where the prosecutor knew both of the witnesses were testifying falsely and he did nothing to correct it. In accordance with the law and argument presented, petitioner's conviction in this matter should be set

12

aside, and in the alternative, this matter remanded back to the District Court for an evidentiary hearing.

## VIOLATION OF THE U.S. FEDERAL CONSTITUTION #2
[Trial Counsel Was "Forced" to Provide Ineffective Assistance]

Also, trial counsel was forced to be ineffective because the state withheld that it gave witnesses incentives in return for false testimony . Because this was concealed from the defense, the defense could not properly prepare for false testimony it knew nothing of. This severely hampered defense counsel's ability to defend his client altogether. The state allowed their witnesses to proceed during trial with known false testimony being poured over the jury. Had trial defense counsel been aware of this, he could have properly objected and pointed out before the jury that the testimony presented by the state's star witness was false. Under these circumstances, the credibility of these witnesses would have been greatly undermined. This type of information could have easily occassioned a reasonable probability of a different outcome. Counsel for the defense *did not know that the false testimony was the result of prosecutorial coercion*. These facts were concealed and are better viewed under a combination of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed2d 215 (1963); *Dupart v. United States*, 541 F.2d 1148 (5th Cir. 1976); and *Cronic* where the accused is actively deprived of counsel by state action.

Past judicial decisions on the issue in controversy declare:

"it's not only up to the Prosecutor to correct it's own witnesses false testimony, it the **duty** of petitioner's counsel to be alert and detect it and bring it fourth before the eyes of the jury so that they could make the appropriate credibility determination."

Given the above and foregoing, it is appropriate for the court to grant an evidentiary hearing to determine counsel's ineffectiveness provided to petitioner at trial.

After the alleged crime and much interaction with the state prosecutor and threats to charge these individuals as the perpetrators, the witnesses (Brain Artis and Lavelle Meeks) testimony would change drastically in favor of the state. The prosecutor knew that this testimony was fabricated, as it was by his design. This is one and the same reason why the known use of the false testimony went uncorrected. The state prosecutor understood very well that, the believability of the manufactured testimony is what the whole of this conviction would rest upon. Therefore, two constitutional violations occur. *First*, the prosecution's known use of false testimony to secure a conviction, *secondly*, the prosecution's intimidation of witnesses into lying under oath in order to directly affect their verdict; the equivalent of "witness tampering", "creating false evidence" and "obstruction of justice."

Lastly, petitioner contends, that due to the substance of what Brain Artis' testimony would be

13

now, he stands to enjoy the effective assistance of his attorney who then could question Brian Artis about his manufactured false testimony he gave in return for an undisclosed immunity deal. Because Brian Artis no longer lives in fear of retribution by the state, his truthful testimony would be and is fundamental to the ends of justice. Undoubtably, as long as the perjured and fabricated testimony is excluded in a retrial of this matter, a not guilty verdict would be the likely end result. The writer of this petition arrived at this conclusion in light of there not being overwhelming evidence of guilt, and in a retrial the prosecution would not be afforded the benefit of using manufactured testimony before the new jury.

In addition to the above and forgoing, petitioner, in a new trial could conduct better cross-examination of each remaining witness, because their testimony would have to stand on its own for accuracy and truthfulness without the aid of the perjured testimony to uphold it. Specifially, referencing the false testimony of Lavelle Meeks and the fabricated trial testimony of Brian Artis. In all other respects, petitioner's chances of producing a different verdict are far more probable than a second finding of guilty as charged.

Finally, in ruling on the issue of a new trial, because the accused's attorney would no longer be forced into a state of ineffectiveness. In this instance, the trial judge's duty is not to weigh the evidence as though he were a jury determining guilt or innocence, rather his duty is the narrow one of ascertaining whether there is new material fit for a new jury's determination and judgement. *State v. Cavalier*, 701 So.2d 949 (1997).

### VIOLATION OF THE U.S. FEDERAL CONSTITUTION#3
**[Through suborning perjury, the state prevented petitioner's right to confrontation of the witnesses against him]**

Petitioner contends that he was denied due process of law and the right to call a witness on his own behalf , thereby likewise denying him equal protection of the law,as well as the right to confront, properly cross-examine and call witnesses on his own behalf. Brian Artis, was to be a witness for the defense, however, the prosecution threatened with accessory charges and incarceration if he did not change his story to fit the state's version of events. (See affidavit by the same). The relevant matter here is how many occasions did the prosecution meet with this witness and how did the threats issued during those meetings sway his testimony.

The court should note that after changing their testimony, neither of the state's witnesses were threatened with the possibility of perjury charges for giving their perjured testimony which was favorable to the state. This amounts to witness intimidation, because absent the threat made by the

14

prosecution, this witness WAS GOING TO TESTIFY, "TRUTHFULLY" and FOR THE DEFENSE. And let it be noted that all witnesses are required, by law, to be sworn in before they testify and at all times the prosecutor was aware that this false testimony would be given to the jury as sworn truth..

The first statements of these witnesses were not made under oath, however, had the witness taken the stand and false testimony been exposed, the jury would have been afforded an opportunity to make note of it for deliberating purposes. However, the threat of prosecution was aimed at one objective and one objective alone, sealing shut the lips of this witness as an asset to the defense. The looming threat of prosecution effectively made these witnesses unavailable. The witnesses referenced herein were effectively placed under duress so as to preclude then from making free and voluntary choice whether or not to testify truthfully.

In *United States v. Winter*, 348 F.2d 204, 210 (1965), Judge Weinfeld, writing for the Second Circuit, stated:

> 'Once a witness swears to give truthful answers, there is no requirement to 'warn him not to commit perjury or, conversely to direct him to tell the truth.' It would render the sanctity of the oath quite meaningless to require admonition to adhere to it.'

In *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967), the Supreme Court stated:

> "The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies."

Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

There was another option available to the prosecution, remind the witnesses of their obligation to testify truthfully while under oath or alternatively inform them that they did not have to testify at all, yet, the choice was made to issue a threat was selected. The question need be asked, "What was so important that the lips of thiese witnesses had to be sealed under the threat of a prosecution?" If evidence of guilt of petitioner having committed the murder was so overwhelming, or alternatively so clearly discernable from the facts, no matter what this one witness would have said, guilt would have been the verdict. However, this was not the case, the jury even concluded that they needed to re-hear witness testimony, however, the trial court denied this request.

Wherefore, petitioner prays that he be granted a new trial based upon the evidence presented

within these pleadings. Also, petitioner requests an evidentiary hearing, where at, he can support the factual basis of these pleadings. This is needed specifically because, In every respect, petitioner avers that the Sixth Amendment guarantees the accused in a criminal prosecution, the right to present a defense. *Washington v. Texas*, 87 S.CT. 1920 (1967). Thus, the state's unethical practice of presenting the perjured testimony of Brian Artis and Lavelle Meeks deprived the petitioner the opportunity to present a plausible defense.

## CONCLUSION

For the reasons and factual content of the above and aforementioned, petitioner urges this Honorable Court to declare relief in the form of granting Post Conviction Relief or alternatively take all the necessary steps in order to bring this case into conformity with the U.S. Supreme Court holdings in *Martinez v. Ryan*, --- S.Ct. ---, 2012 WL 912950. Also the court may proceed to announce the reversal of the illegally secured conviction, and nullify the sentence imposed as a result thereof

Respectfully submitted:

Marcus Artis #361755
La. State Prison, Spruce-4
Angola, La. 70712

cc: submitted/filed ___/___/12

## CERTIFICATE OF SERVICE

I, Marcus Artis, hereby certify that I have forwarded a copy of the above proceedings to the Clerk of Court and District Attorney's Office for the 33rd Judicial District, Parish of Allen on this _____ day of _____ 2012.

Marcus Artis

STATE EX REL. Marcus Artis          DOCKET NO. CR-95-3570
         *Petitioner*

VERSUS          FILED_____

BURL CAIN, WARDEN
LA. STATE PENITENTIARY          Deputy Clerk
         *Respondent*

## MOTION FOR APPOINTMENT OF COUNSEL AND EVIDENTIARY HEARING

MAY IT PLEASE THE COURT:

    NOW INTO COURT comes, Marcus Artis, in proper person, who moves this Honorable Court to appoint counsel to represent petitioner's meritorious post-conviction relief application and grant an evidentiary hearing where he is entitled to relief requested.

    Currently, petitioner is presently incarcerated and unable to retain counsel and motions the Court, out of the abundance of caution and in the interest of justice, to appoint counsel pursuant to the United States Supreme Court decision in *Martinez v. Ryan*, 2012 WL 912950 and *La.C.Cr.P. art. 930.7(A)(B)(C)*.

    Petitioner submits that the court will not be able to resolve and determine the factual and legal issues presented based solely on the answer by the State and the supporting documents of exhibits submitted and should order an evidentiary hearing under the provisions of *La.C.Cr.P. arts. 928, 929* and *930*.

Respectfully Submitted By:

Marcus Artis #361755
Spruce-4
LA. STATE PENITENTIARY
ANGOLA, LOUISIANA 70712

17

STATE EX REL. Marcus Artis                                    DOCKET NO.  CR-95-3570
                        Petitioner

VERSUS                                                        FILED_____

BURL CAIN, WARDEN                                             _____
LA. STATE PENITENTIARY                                       Deputy Clerk
                        Respondent
_____

## ORDER

*CONSIDERING THE FOREGOING POST-CONVICTION RELIEF APPLICATION AND*

*MOTION FOR APPOINTMENT OF COUNSEL AND EVIDENTIARY HEARING:*

      IT IS HEREBY ORDERED that attorney_____, enroll as counsel

of record to represent petitioner, Marcus Artis., before this Court pursuant to *La.C.Cr.P. art.*

*930.7(A)(B)(C)* at an evidentiary hearing to be held on this ____ day of _____, 2012.

      Thus done this____ day of_____,2012.


                                               _____
                                               DISTRICT COURT JUDGE



Please Serve:

Marcus Artis #361755
Spruce-4
La. State Penitentiary
Angola, LA 70712

**IN THE**
**33rd JUDICIAL DISTRICT COURT**
**PARISH OF ALLEN**
**STATE OF LOUISIANA**

STATE EX REL. Marcus Artis
     *Petitioner*

VERSUS

BURL CAIN, WARDEN
LA. STATE PENITENTIARY
     *Respondent*

DOCKET NO. CR-95-3570

FILED _____

_____
Deputy Clerk

## MOTION TO COMPEL ANSWER

MAY IT PLEASE THE COURT:

Petitioner, Marcus Artis, who respectfully submits that the allegations presented herein, if established, would entitle him to post-conviction relief, and respectfully moves this Honorable Court to require _____, District Attorney for the 33rd Judicial District Criminal District Court, Parish of Allen, State of Louisiana, to file an answer and present any opposition to the application filed in this matter within the specified period pursuant to *Louisiana Code of Criminal Procedure, Article 927(A)*, at an evidentiary hearing to be held on _____ 2012.

Respectfully Submitted By:

_____
Marcus Artis #361755
Spruce-4
LA. STATE PENITENTIARY
ANGOLA, LOUISIANA 70712

19

121

STATE EX REL.Marcus Artis

Petitioner

VERSUS

BURL CAIN, WARDEN
LA. STATE PENITENTIARY

Respondent

DOCKET NO.  CR-95-3570

FILED_____

_____

Deputy Clerk

## ORDER

**IT IS ORDERED** that the Honorable _____, District Attorney for the 33rd Judicial

District Court, Parish of Allen, State of Louisiana, file an answer or present any argument in

opposition to the foregoing Application for Post-conviction Relief before this Court on the___day of

_____,2012, at the evidentiary hearing.

Thus said and done and signed this day of_____2012.

_____

DISTRICT COURT JUDGE

Please Serve:
Marcus Artis #361755
Spruce-4
La. State Penitentiary
Angola, LA 70712

20

122

Marcus Artis

STATE EX REL. ~~KEVIN GOODELY~~                    DOCKET NO. CR-95-3570
                    Petitioner

VERSUS                                             FILED_____

BURL CAIN, WARDEN                                  _____
LA. STATE PENITENTIARY                             Deputy Clerk
                    Respondent
_____

### PETITION AND ORDER FOR
### WRIT OF HABEAS CORPUS AD TESTIFICANDUM

MAY IT PLEASE THE COURT:

Petitioner, Marcus Artis, in proper person, respectfully request this Honorable Court to order

the Respondent Warden to produce petitioner for an Evidentiary Hearing, pursuant to Louisiana Code

of Criminal Procedure, *Article 930.A* for the following reasons to wit:

I.

That, said petitioner, Marcus Artis #361755, is incarcerated in the Louisiana State

Penitentiary, at Angola, Louisiana.

II.

That petitioner, therefore, desires that a Writ of Habeas Corpus Ad Testificandum be issued

and directed to Burl Cain, Warden at the Louisiana State Penitentiary, Angola, LA, to produce the

person of Marcus Artis, #361755, petitioner for an evidentiary hearing to be held at the 33rd Judicial

District Court, Parish of Allen, State of Louisiana, on this _____ day

of_____,2012, at ___o'clock____.m.

**WHEREFORE**, premises considered, petitioner prays that a Writ of Habeas Corpus Ad

Testificandum be issued herein as hereinafter set forth so that the petitioner, Marcus Artis #361755,

may be present to present witnesses and testify at the hearing set in the above entitled cause.

Respectfully Submitted By:

_____
Marcus Artis #361755
Spruce-4
LA. STATE PENITENTIARY
ANGOLA, LOUISIANA 70712

21

123

STATE EX REL. Marcus Artis          DOCKET NO. CR-95-3570
        Petitioner

VERSUS                FILED_____

BURL CAIN, WARDEN        _____
LA. STATE PENITENTIARY
        Respondent      Deputy Clerk

## ORDER

IT IS ORDERED that a Writ of Habeas Corpus Ad Testificandum be issued on the foregoing petition and be directed to Burl Cain, Warden, Louisiana State Penitentiary, Angola, Louisiana, to produce the person, Marcus Artis #361755, for an Evidentiary Hearing to be held at the 33rd Judicial District Court, Parish of Allen, State of Louisiana, on this_____day of_____,2012, at the time of_____o'clock____.m.

Thus done and signed in the 33rd Judicial District Court, Parish of Allen, State of Louisiana, on this___day of_____,2012.

_____
DISTRICT COURT JUDGE

Please Serve:

Marcus Artis # _361755_
Spruce-4
La. State Penitentiary
Angola, LA 70712

22

124

1    A    Mr. Gil Granger.

2    Q    Okay. And it's your testimony that you have no fear of

3    Lavelle Meeks at all?

4    A    Yes, sir.

5    Q    And you realize that you're under oath?

6    A    Yes, sir.

7    Q    Is there any doubt in your mind who shot Sammy Cole?

8    A    A little bit.

9    Q    And you could not clearly see Lavelle, is that right?

10   A    No, sir.

11   Q    Okay. Are you absolutely sure that when Sammy was shot that

12   all three of them were together at the side of the road?

13   A    Yes.

14   Q    And are you absolutely sure that when Marcus came back to the

15   car that he did not stay there? Because you said that he came

16   back to the car, left and then came back. Okay?

17   A    Uh-huh.

18   Q    What I'm asking you is, are you absolutely sure that he did

19   not come back to the car just once and stay there?

20   A    He got out the car, he came back and then he went over there

21   and then he came back.

22   Q    Okay. And in return for your testimony against Marcus, you

23   will not be prosecuted, is that correct?

24   A    I don't know.

25   Q    The charges against you have been dropped, haven't they?

26   A    I don't know.

27   Q    If I told you that the State in their answer to discovery

28   indicated that you would not be prosecuted in return for your

29   testimony, would you disagree with that statement?

30   A    Excuse me?

31   Q    Okay. If I told you that the State told me in response to

32   discovery -- That's when I ask them for information -- that they

33   told me that in return for your testimony, you would not be

34

| 1 | A | Mr. Gil Granger. |

1    A    Mr. Gil Granger.

2    Q    Okay. And it's your testimony that you have no fear of

3  Lavelle Meeks at all?

4    A    Yes, sir.

5    Q    And you realize that you're under oath?

6    A    Yes, sir.

7    Q    Is there any doubt in your mind who shot Sammy Cole?

8    A    A little bit.

9    Q    And you could not clearly see Lavelle, is that right?

10    A    No, sir.

11    Q    Okay. Are you absolutely sure that when Sammy was shot that

12  all three of them were together at the side of the road?

13    A    Yes.

14    Q    And are you absolutely sure that when Marcus came back to the

15  car that he did not stay there? Because you said that he came

16  back to the car, left and then came back. Okay?

17    A    Uh-huh.

18    Q    What I'm asking you is, are you absolutely sure that he did

19  not come back to the car just once and stay there?

20    A    He got out the car, he came back and then he went over there

21  and then he came back.

22    Q    Okay. And in return for your testimony against Marcus, you

23  will not be prosecuted, is that correct?

24    A    I don't know.

25    Q    The charges against you have been dropped, haven't they?

26    A    I don't know.

27    Q    If I told you that the State in their answer to discovery

28  indicated that you would not be prosecuted in return for your

29  testimony, would you disagree with that statement?

30    A    Excuse me?

31    Q    Okay. If I told you that the State told me in response to

32  discovery -- That's when I ask them for information -- that they

33  told me that in return for your testimony, you would not be

34

A    Mr. Gil Granger.

Q    Okay.  And it's your testimony that you have no fear of Lavelle Meeks at all?

A    Yes, sir.

Q    And you realize that you're under oath?

A    Yes, sir.

Q    Is there any doubt in your mind who shot Sammy Cole?

A    A little bit.

Q    And you could not clearly see Lavelle, is that right?

A    No, sir.

Q    Okay.  Are you absolutely sure that when Sammy was shot that all three of them were together at the side of the road?

A    Yes.

Q    And are you absolutely sure that when Marcus came back to the car that he did not stay there?  Because you said that he came back to the car, left and then came back.  Okay?

A    Uh-huh.

Q    What I'm asking you is, are you absolutely sure that he did not come back to the car just once and stay there?

A    He got out the car, he came back and then he went over there and then he came back.

Q    Okay.  And in return for your testimony against Marcus, you will not be prosecuted, is that correct?

A    I don't know.

Q    The charges against you have been dropped, haven't they?

A    I don't know.

Q    If I told you that the State in their answer to discovery indicated that you would not be prosecuted in return for your testimony, would you disagree with that statement?

A    Excuse me?

Q    Okay.  If I told you that the State told me in response to discovery -- That's when I ask them for information -- that they told me that in return for your testimony, you would not be

COURT REPORTERS
33RD JUDICIAL DISTRICT
P. O. BOX 496
OBERLIN, LOUISIANA 70655

387

127

1   A   Mr. Gil Granger.

2   Q   Okay. And it's your testimony that you have no fear of

3   Lavelle Meeks at all?

4   A   Yes, sir.

5   Q   And you realize that you're under oath?

6   A   Yes, sir.

7   Q   Is there any doubt in your mind who shot Sammy Cole?

8   A   A little bit.

9   Q   And you could not clearly see Lavelle, is that right?

10   A   No, sir.

11   Q   Okay. Are you absolutely sure that when Sammy was shot that

12   all three of them were together at the side of the road?

13   A   Yes.

14   Q   And are you absolutely sure that when Marcus came back to the

15   car that he did not stay there? Because you said that he came

16   back to the car, left and then came back. Okay?

17   A   Uh-huh.

18   Q   What I'm asking you is, are you absolutely sure that he did

19   not come back to the car just once and stay there?

20   A   He got out the car, he came back and then he went over there

21   and then he came back.

22   Q   Okay. And in return for your testimony against Marcus, you

23   will not be prosecuted, is that correct?

24   A   I don't know.

25   Q   The charges against you have been dropped, haven't they?

26   A   I don't know.

27   Q   If I told you that the State in their answer to discovery

28   indicated that you would not be prosecuted in return for your

29   testimony, would you disagree with that statement?

30   A   Excuse me?

31   Q   Okay. If I told you that the State told me in response to

32   discovery -- That's when I ask them for information -- that they

33   told me that in return for your testimony, you would not be

34

COURT REPORTERS
33RD JUDICIAL DISTRICT
P. O. BOX 496
OBERLIN, LOUISIANA 70655

387

125

1  Q    And it's open until January 15th if your testimony is in

2  substantial compliance with your statement of August 29, is that

3  correct?

4  A    I don't know.

5  Q    But you're not saying that's not true, are you?

6  A    No, I'm not.

7  Q    So it is your expectation that if you do testify correctly

8  at this trial, that you will be able to accept the deal after this

9  trial is over?

10  A    No.

11  Q    Why not?

12  A    Because I'm charged with second degree murder.

13  Q    Why won't you be able to accept the deal after the trial is

14  over?

15  A    Because I'm not.

16  Q    You're telling this Court that you're not going to accept the

17  deal?

18  A    No.

19  Q    And you're going to go to trial?

20  A    Yes.

21  Q    Do you know what the penalty for second degree murder is?

22  A    Yes.

23  Q    What is it?

24  A    Life in the penitentiary.

25  Q    Is that without benefit of probation or parole or suspension

26  of sentence?

27  A    Yes.

28  Q    And you realize that if -- Okay.  Do you realize that if you

29  do accept the deal that the State has offered you after this trial,

30  you have committed perjury now?

31  A    Yes.

32  Q    You understand that?

33  A    Yes.

34

COURT REPORTERS
33RD JUDICIAL DISTRICT
P. O. BOX 496
OBERLIN, LOUISIANA 70655

311

128

Q    And what did we offer to you?

A    Conspiracy of a murder.

Q    And how many years?

A    Twenty years.

Q    Did you accept that offer?

A    No, I didn't.

Q    Despite not accepting that offer, did you after speaking with your attorney decide to testify at this trial?

A    Yes.

Q    Have you accepted that offer?

A    Yes.

Q    Have you accepted the offer that we made to you?

A    No, I haven't.

Q    Is what you told the Court today the truth as to what happened to Sammy Cole?

A    Yes.

Q    Did you kill Sammy Cole?

A    Did Marcus Artis kill Sammy Cole?

A    Yes.


MRS. COLE:

            I tender the witness, Your Honor.

THE COURT:

            Mr. Thompson.


                    CROSS EXAMINATION

BY MR. THOMPSON:

Q    Mr. Meeks, the deal that was just talked about with the District Attorney's office, you have indicated that you have not accepted that deal, is that correct?

A    That is correct.

Q    But the deal is still open, isn't it?

A    Yes.

COURT REPORTERS
33RD JUDICIAL DISTRICT
P. O. BOX 496
OBERLIN, LOUISIANA 70655

310

130

**APPENDIX #9**

Mail Receipt showing PCR filed 12/10/12. Prison withdrawal slip to cover mailing costs attached



# DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
## CORRECTIONS SERVICES
### OFFENDER FUNDS WITHDRAWAL REQUEST



| CODE | DRAWING ACCOUNT | |
|---|---|---|
| 73 | ☐ Offender club | District Attorney office Herbert Todd Nesom 106 S. 5th St. P.O. Box 839 |
| 74 | ☐ Outside purchase | Oberlin, La. 70655-0839 |
| | ☐ Family member | Clerk: Gerald W. Harrington |
| | ☐ Educational courses | 33rd J.D.C. |
| | ☐ Outside bank savings acct# | |
| | ☐ Newspaper ad for clemency / pardon. | |
| | ☐ Other:_____ 2 photo | |
| 79 | ☐ Court Cost - Civil action number _____ | |
| 94 | ☐ Savings Bond | |

| DOC NUMBER | NAME: LAST NAME, FIRST NAME, INITIAL |
|---|---|
| 361755 | Artis Marcus |

| LIVING QUARTERS | DATE OF REQUEST | | TOTAL AMOUNT |
|---|---|---|---|
| Spr-4 | MO. 12 | DAY 1 | $ 5.20 |
| | YEAR 12 | | |

_____ DOLLARS
WRITTEN AMOUNT

**PAYEE:**

| VENDOR NO. | OFFENDER MUST ATTACH A STAMPED, ADDRESSED ENVELOPE FOR ALL OUTSIDE MAIL |
|---|---|
| NAME | General Funds |
| ADDRESS | L.S.P. |
| CITY Angola, La. | STATE 70712 ZIP |

| CODE | SAVINGS ACCOUNT |
|---|---|
| 94 | ☐ Savings Bond |
| 79 | ☐ Court Cost - Civil action number _____ |
| 82 | ☐ Educational courses |

OFFENDER SIGNATURE:

REQUEST DENIED. REASON:

| CODE | TRANSFERS - No check will be produced |
|---|---|
| 68T | ☐ Transfer from drawing account to savings. |

| RIGHT THUMB PRINT | VERIFIED BY: |
|---|---|
| | TITLE: |
| | APPROVED BY: John G. Joseph |
| | TITLE: |

Note: Print name and address in the payee section to the right. Attach necessary documents including a stamped, self-addressed envelope for all outside mail.

DOC Form PF-30

10-A

CIB Form Revised 08-2003

OFFENDER'S REQUEST FOR LEGAL / INDIGENT MAIL

NAME: _Marcus Artis_

NUMBER: _361755_

LOCATION: _Spr-4_

BALANCE IN YOUR DRAWING ACCOUNT: $_____

LIST EACH ITEM TO BE MAILED
GIVE THE NAME AND COMPLETE ADDRESS OF EACH
PIECE TO BE MAILED :

_Gerald W. Harrington, Clerk of Court,_
name
_33rd Judicial District, P.O. Box 248_
address
_Oberlin, Louisiana 70655_
city, state, zip code

_Herbert Todd Nesom_
name
_105 S. 5th St. P.O. Box 839_
address
_Oberlin, LA 70655-0839_
city, state, zip code

_____
name
_____
address
_____
city, state, zip code

ANY DELIBERATE MISREPRESENTATION WILL RESULT
IN YOUR MAIL BEING RETURNED

_____
offender's signature and number

_____          _12-10-12_
classification officer          date