UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **MARCUS ARTIS** | : | **DOCKET NO. 14-cv-1162** |
| **D.O.C. # 361755** | | |
| **VERSUS** | : | **JUDGE MINALDI** |
| **N. BURL CAIN** | : | **MAGISTRATE JUDGE KAY** |

### REPORT AND RECOMMENDATION

Before the court is a pro se application for a writ of habeas corpus [doc. 1] pursuant to 28 U.S.C § 2254, filed by Marcus Artis ("petitioner"). The petitioner is a prisoner in the custody of the Louisiana Department of Public Safety and Corrections. He is currently incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. N. Burl Cain ("respondent"), warden, has responded. Doc. 23.

This matter is referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the court. For the following reasons **IT IS RECOMMEDED** that the application be **DENIED** and that the petition be **DISMISSED WITH PREJUDICE**.

**I.
BACKGROUND**

*A. Conviction*

The petitioner and a co-defendant, Lavelle Meeks ("Meeks"), were both indicted on September 7, 1995, in the 33rd Judicial District, Allen Parish, Louisiana, on a charge of second

degree murder. Doc. 17, p. 18. The charges related to the killing of Samuel Cole on July 23, 1995. *Id.* The petitioner's jury trial commenced on November 11, 1995. *See* Doc. 17, att. 2, pp. 258–60.[1] At its conclusion he was convicted of second degree murder. Doc. 17, att. 4, pp. 80–81.

### B. *Direct Appeal*

The petitioner appealed his conviction and sentence, raising several assignments of error. Doc. 11, pp. 82–95; doc. 11, att. 1, pp. 1–5. After reviewing all allegations the Third Circuit Court of Appeal affirmed the conviction and remanded the case for resentencing to account for time served in pretrial detention. *Id.* The petitioner then sought review at the Louisiana Supreme Court, which denied same on October 31, 1997. *State v. Artis*, 703 So.2d 18 (La. 1997). It does not appear that he sought review in the United States Supreme Court.[2]

### C. *State Collateral Review and Federal Habeas Petition*

The petitioner filed his first application for post-conviction relief ("PCR") with the 33rd Judicial District on October 27, 1998, raising multiple claims. Doc. 1, p. 4; doc. 11, att. 1, pp. 34–36. There are no documents relating to the trial court or Third Circuit's decision on this application but the unfavorable outcome is shown in the Louisiana Supreme Court denial of review of same. *State v. Artis*, 801 So.2d 359 (La. 2001).

Artis filed a second application for PCR based on new evidence with the trial court on March 21, 2002. Doc. 11, att. 1, p. 70; doc. 12, att. 1, p. 53 (U.S. Postal Service Certified Mail Receipt). The trial court denied the application and Artis appealed to the Third Circuit, which ruled that he had not met the requirements for a successive application for PCR. Doc. 11, att. 2, pp. 17–

---

[1] The index to the trial court record [doc. 17, att. 2, pp. 129–32] does not provide the date on which the trial began, but the cited pages provide the date and then show the beginning of opening statements.

[2] In the coversheet for the instant application, the petitioner was asked whether he had filed a petition for certiorari in the United States Supreme Court. Doc. 1, p. 4. The petitioner checked "yes" but then provided the citation for the Louisiana Supreme Court decision on his appeal. *Id.* The undersigned cannot locate any record of the petitioner's alleged petition for certiorari.

18. He sought review at the Louisiana Supreme Court, which also denied the application as repetitive. *State ex rel. Artis v. State*, 876 So.2d 79 (La. 2004).

The petitioner filed a third application for PCR with the trial court on December 10, 2012.[3] Doc. 1, att. 2, pp. 67–90. He argued that his conviction was improper because the state induced the perjured testimony of defense witness Brian Artis ("Brian"). *Id.* at 79–80. Because of this alleged inducement of perjury, he claimed the following constitutional violations:

1. The prosecution knowingly obtained a conviction through the use of false evidence.
2. Trial counsel was forced to provide ineffective assistance due to the prosecution's use of false testimony.
3. By suborning perjury, the prosecution violated the petitioner's right to confront the witnesses against him.

*Id.* at 79–90. In support he submitted an affidavit from Brian dated July 31, 2012, in which the latter stated that the testimony he gave at trial was false and coerced. *Id.* at 3–4. The petitioner asserts that he had no knowledge of the existence of these claims or their supporting evidence "until after his direct appeal or any prior application [for PCR] had been filed." *Id.* at 76.

The trial court denied the petition without stating a reason. Doc. 17, att. 2, p. 96. The petitioner then sought review from the Third Circuit. Doc. 12, pp. 68–90; doc. 12, att. 1, pp. 1–2, 9. The Third Circuit likewise denied relief, stating that "[t]here is no error to the trial court's ruling." Doc. 17, att. 2, p. 115. He then sought review in the Louisiana Supreme Court, which denied relief in a one-word ruling on February 7, 2014. Doc. 12, pp. 40–66, 38.

### D. Federal Habeas Petition

The instant petition was filed on June 10, 2014. Doc. 1, p. 16. The petitioner renews his three claims from the third application for PCR, listed *supra*.[4] Doc. 1, att. 1, pp. 14–29.

---

[3] *See* Doc. 1, att. 2, pp. 104–05 (date provided through prison legal mail record of petition's submission).
[4] He also alleges that the state courts erroneously failed to consider his claims from the third application for PCR on the merits, contravening "procedural mandates imposed by La. C. Cr. P. art 930.8(A)(1); art. 930.4(F); [and] 930.7(B)"

## II.
## LEGAL STANDARDS ON HABEAS REVIEW

### A. *Timeliness*

Federal law imposes a one-year limitation period within which persons who are in custody pursuant to the judgment of a state court may seek habeas review in federal court. 28 U.S.C. § 2244(d)(1). This period generally runs from the date that the conviction becomes final. 28 U.S.C. § 2244(d)(1)(A). The time during which a properly-filed application for post-conviction relief is pending in state court is not counted toward the one-year limit. 28 U.S.C. § 2244(d)(2); *Ott v. Johnson*, 192 F.3d 510, 512 (5th Cir. 1999). However, any lapse of time before proper filing in state court *is* counted. *Flanagan v. Johnson*, 154 F.3d 196, 199 n. 1 (5th Cir. 1998).

A state application is considered pending both while it is in state court for review and also during intervals between a state court's disposition and the petitioner's timely filing for review at the next level of state consideration. *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001). The limitations period is not tolled, however, for the period between the completion of state review and the filing of the federal habeas application. *Mayle v. Felix*, 545 U.S. 644, 644 (2005). Accordingly, in order to determine whether a habeas petition is time-barred under the provisions of §2244(d) the court must ascertain: (1) the date upon which the judgment became final either by the conclusion of direct review or by the expiration of time for seeking further direct review, (2) the

---

and by failing to appoint counsel or grant an evidentiary hearing in those proceedings. Doc. 1, att. 1, pp. 4–13. He then amended his petition to assert that the trial court judge who allegedly applied these procedural bars had a conflict of interest. Docs. 6, 7.

Federal habeas relief is only available to petitioners in state custody if they are confined "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. 2254(a). Thus federal habeas review generally does not invite reconsideration of a state court's application of state law, including procedural rules. An exception is made where the rule is "clearly untenable and amounts to a subterfuge to avoid federal review of a deprivation by the state of rights guaranteed by the Constitution." *Lopez v. Schriro*, 491 F.3d 1029, 1043 (9th Cir. 2007). However, this issue is considered under the court's determination of procedural default. *See* BRIAN R. MEANS, FEDERAL HABEAS MANUAL § 9B:22 (2015); *see also Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995) (errors in state habeas proceedings do not entitle the petitioner to relief with respect to his conviction). Therefore these claims will be considered *infra* under Section III.B if the undersigned determines that a procedural bar was imposed.

dates during which properly filed petitions for post-conviction or other collateral review were pending in the state courts, and (3) the date upon which the petitioner filed his federal habeas corpus petition.

### B. *Procedural Default and Exhaustion of State Court Remedies*

Before proceeding to the merits of the issues raised in the petition, this court considers the doctrines of procedural default and exhaustion of state court remedies. Exhaustion and procedural default are both affirmative defenses that may be waived by the state if not raised in its responsive pleadings. *See, e.g.*, *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994). However, the federal district court may also consider both doctrines on its own motion. *Magouirk v. Phillips*, 144 F.3d 348, 357–59 (5th Cir. 1998). Therefore we consider any claims by respondent under these doctrines, in addition to conducting our own review.

#### 1. *Exhaustion of State Court Remedies*

The federal habeas corpus statute and decades of federal jurisprudence require a petitioner seeking federal habeas corpus relief to exhaust all available state court remedies prior to filing his federal petition. 28 U.S.C. § 2254(b)(1); *e.g.*, *Whitehead v. Johnson,* 157 F.3d 384, 387 (5th Cir. 1998). This is a matter of comity. *Ex parte Royall*, 6 S.Ct. 734, 740–41 (1886). In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his federal constitutional claims to the state courts "in a procedurally proper manner according to the rules of the state courts." *Wilder v. Cockrell,* 274 F.3d 255, 259 (5th Cir. 2001); *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988). Each claim must be presented to the state's highest court, even when review by that court is discretionary. *E.g.*, *Wilson v. Foti*, 832 F.2d 891, 893–94 (5th Cir. 1987). Exhaustion is not satisfied if the petitioner presents new legal theories or entirely new factual

claims in support of his federal habeas petition. *Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir. 1983).

In Louisiana the highest court is the Louisiana Supreme Court. *See* LSA–Const. art. 5, § 5(a). Thus, in order for a Louisiana prisoner to have exhausted his state court remedies he must have fairly presented the substance of his federal constitutional claims to the Louisiana Supreme Court in a procedurally correct manner, supported by the legal theories and factual allegations that he raises now. *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997).

### 2. *Procedural Default*

When a petitioner has defaulted a claim by violating a state procedural rule which constitutes adequate and independent grounds to bar direct review in the United States Supreme Court, he may not raise that claim in a federal habeas proceeding absent a showing of cause and prejudice or actual innocence. *Coleman v. Thompson*, 111 S.Ct. 2546, 2554 (1991). Failure to satisfy state procedural requirements results in forfeiture of a petitioner's right to present a claim in a federal habeas proceeding. *Murray v. Carrier*, 106 S.Ct. 2639 (1986). This is not a jurisdictional matter; rather, it is grounded in concerns of comity and federalism. *Trest v. Cain*, 118 S.Ct. 478, 480 (1997).

Procedural default exists where (1) a state court clearly and expressly bases its dismissal of the petitioner's constitutional claim on a state procedural rule and that procedural rule provides an independent and adequate ground for the dismissal ("traditional" procedural default) or (2) the petitioner fails to properly exhaust all available state court remedies and the state court to which he would be required to petition would now find the claims procedurally barred ("technical" procedural default). In either instance, the petitioner is considered to have forfeited his federal habeas claims. *Bledsue v. Johnson*, 188 F.3d 250, 254–5 (5th Cir. 1999). The grounds for

procedural default must be based on the actions of the last state court rendering a judgment. *Harris v. Reed*, 109 S.Ct. 1038, 1043 (1989).

### C. *General Principles*

When a state court adjudicates a petitioner's claim on the merits, this court reviews the ruling under the deferential standard of 28 U.S.C. § 2254(d). *Corwin v. Johnson*, 150 F.3d 456, 471 (5th Cir. 1998). Section 2254(d) provides that a writ of habeas corpus shall not be granted unless the state court's adjudication on the merits resulted in a decision that was either (1) contrary to clearly established federal law or involved an unreasonable application of that law, or (2) based on an unreasonable determination of the facts in light of the evidence before the state court. 28 U.S.C. § 2254(d).

The first standard, whether the state court's adjudication was contrary to or involved an unreasonable application of clearly established federal law, applies to questions of law as well as mixed questions of law and fact. A petitioner must demonstrate that the "fair import" of the state court decision shows that the court failed to apply the controlling federal standard. *Early v. Packer*, 537 U.S. 3, 9 (2002) (per curiam). Furthermore, the decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 131 S.Ct. 770, 784 (2011). A decision is contrary to clearly established federal law "if the state court applies a rule that contradicts the governing law set forth [by the Supreme Court], or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedents and arrives at a [contrary] result . . . ." *Bell v. Cone*, 543 U.S. 447, 452-53 (2005), quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (internal quotations omitted).

The second standard – whether the state court's adjudication was based on an unreasonable determination of the facts in light of the evidence – applies to questions of fact. It is insufficient for a petitioner to show that the state court erred in its factual determination but rather he must demonstrate that the factual determination was objectively unreasonable, a "substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S.Ct. 841, 849 (2010). Rather, the petitioner has to show that "a reasonable factfinder must conclude" that the determination of facts by the state court was unreasonable. *Rice v. Collins*, 546 U.S. 333, 341 (2006).

## III.
### LEGAL ANALYSIS

As a preliminary matter this court reviews the petitioner's application for timeliness, failure to exhaust state court remedies, and procedural default. If the claim is procedurally viable, its merits are considered under the general standards set forth in Section II.C.

### A. *Timeliness*

The petitioner's claims are plainly untimely if calculated from the date that his conviction became final. However, § 2244(d) also allows that the limitation period may begin to run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). As the undersigned previously determined, the factual predicate of the petitioner's claims arises from Brian's declaration that the prosecution knowingly coerced him into offering false testimony at the petitioner's trial. Doc. 13, pp. 1–2.

Between Brian's affidavit on July 31, 2012, and the petitioner's filing of his third application for PCR with the trial court on December 10, 2012, **132 days** accrued. The limitation

period was tolled while the matter was pending in the state courts and resumed with the Louisiana Supreme Court's denial of review on February 7, 2014. An additional **123 days** accrued before the instant petition was filed in this court on June 10, 2014, which creates a total of **245 days** run against the one year limit. The instant petition is therefore timely if we accept that the petitioner did not learn of Brian's recantation until Brian authored the affidavit.

The respondent points out that Brian and the petitioner are cousins, and alleges that Brian must have communicated his recantation to the petitioner at a date early enough to make this petition untimely. However, he fails to allege when exactly Brian must have made his realization and communicated it to the petitioner. Given that these events could have taken place up to 120 days earlier and still made the instant petition timely, the respondent's allegations are insufficient to overturn this court's earlier finding of timeliness. *See* Doc. 13, p. 2. Accordingly, we continue to consider the petition timely.

### B. *Exhaustion of State Court Remedies and Procedural Default*

#### 1. *Exhaustion*

A review of the petitioner's filings indicates that all three issues raised here were fairly presented to the state courts. Therefore these claims are exhausted. The claim relating to the trial court's conflict of interest in ruling on the third application for PCR was not raised in the state courts. However, as stated *supra* note 4, this allegation relates to the question of whether a procedural default should be imposed and will only be considered if the undersigned determines that the state courts applied a procedural bar to the exhausted claims.

#### 2. *Procedural Default*

The respondent asserts that all claims are subject to procedural default, as he contends that the petitioner had no basis for filing a successive application for post-conviction relief. However,

a state court must clearly and expressly state that its judgment rests on a procedural bar before that judgment can be used as grounds for a procedural default in habeas review. *Caldwell v. Mississippi*, 105 S.Ct. 2633, 2638 (1985). Here there is no reference to any procedural bar in any of the state court decisions on the third application for PCR. Therefore procedural default cannot be imposed by this court on the three claims stemming from Brian Artis' affidavit.

### C. Substantive Analysis

Having determined which claims are timely, exhausted, and not subject to procedural default, this court now considers them under the standards of review outlined above.

All of the petitioner's claims arise from the his allegation that both Brian Artis and Lavelle Meeks offered false testimony in the form of eyewitness accounts identifying the petitioner as the shooter of Samuel Cole. At trial Brian and Meeks were called as witnesses for the prosecution. Doc. 17, att. 3, pp. 185, 117. Brian testified that he had seen both Meeks and the victim, Cole, at a party on the night of the murder. *Id.* at 187–88. He and Meeks left the party together and were picked up by the petitioner. *Id.* at 189–90. Brian testified that the petitioner drove them back to the site of the party, where he (the petitioner) spotted Cole and told him something that Brian couldn't hear. *Id.* at 191. Cole then got in the car and the petitioner drove the group down a road with no houses. *Id.* at 192–93. The petitioner stopped the car halfway down this road and got out with Meeks and Cole. *Id.* After a short time the petitioner returned to the car, where Brian remained, to retrieve the gun and gloves. *Id.* at 193–95. Brian then testified that the petitioner walked back to Cole and Meeks, shot Cole, and dragged Cole's body by the shoulders into the bushes. *Id.* at 196.

Meeks testified that the petitioner asked to borrow his (Meeks') gun and his gloves four days before the shooting because "Sammy [Cole] had got over on him." *Id.* at 121–22. Meeks also stated that the petitioner told him he was going to kill Cole, but that Meeks did not believe him.

*Id.* at 123. He recalled being picked up from the party on Saturday night by the petitioner, picking up Cole, driving out to the same spot, and getting out of the car with Cole and the petitioner in order to look for some marijuana he had stashed in the bushes. *Id.* at 125–30. Meeks then described how the petitioner got out of the car with the gun and gloves and shot Cole in the head. *Id.* at 129–31. He stated that the petitioner dragged Cole's body into the bushes, but Meeks could not recall if the petitioner dragged by the arms or the legs. *Id.* at 132.

### 1. Challenge to Brian's testimony

The petitioner challenges Brian's testimony on the basis of the latter's affidavit. "[R]ecanting affidavits and witnesses are viewed with **extreme suspicion** by the court." *Spence v. Johnson*, 80 F.3d 989, 1003 (5th Cir. 1996) (emphasis added). Recanting affidavits should be compared to the trial record to determine if they are worthy of belief. *Id.*

Brian declared in 2012 that he had been motivated by learning of other cases where witnesses offered false testimony and discovering that the prosecution's alleged actions amounted to misconduct. Doc. 1, att. 2, p. 3. He states that the district attorney and his investigators had told him that they "were going to play a little game of fill in the blanks" and that he would receive immunity from prosecution in exchange for his cooperation. *Id.* Brian also avers that he did not know Artis to be in possession of any type of weapon. *Id.* He maintains that the prosecutor "made [him] testify" to the details described above, which he now alleges are false, until he had committed them to memory. *Id.* He states that he was passed out in the backseat of the car due to the alcohol he had consumed at the party and that he had no memory of what happened from the time they picked up Cole until Meeks and the petitioner got back into the car alone. *Id.* at 3–4.

The petitioner offers an alleged inconsistency between Brian's testimony and that of the coroner to show that Brian's testimony was invented. Brian had testified that the petitioner dragged

the victim's body into the woods by the shoulders. Doc. 17, att. 3, p. 196. Meanwhile, Dr. Dara Vahid ("Vahid") was accepted as an expert in the field of forensic pathology and testified for the state. Doc. 17, att. 3, pp. 99, 102. The petitioner points to Vahid's testimony that the petitioner had scratches on his back and that his clothes were rolled up to argue that the body must have been dragged by the feet rather than shoulders. *Id.* at 105. However, Vahid did not testify that the body had been dragged by the feet and in fact stated that "the clothes are rolled like they . . . [used] it as a handle for pulling . . . ." *Id.* He offered no other opinion on how the body was dragged. Therefore his testimony does not contradict Brian's assertion that the victim's body was dragged by the shoulders.

The petitioner offers other inconsistencies over disposal of the gun and the fact that Brian at one point denied having made a deal with the district attorney. Brian testified that the petitioner had thrown the gun into a river after the shooting. *Id.* at 198. Meanwhile, Meeks testified that he had thrown the gun into the river at the petitioner's instruction. *Id.* at 134–35.

As for the testimony over what he received for his cooperation with the prosecution, Brian explained when the subject was first raised by the prosecutor that the district attorney agreed not to charge him as an accessory after the fact in exchange for his testimony at the petitioner's trial. *Id.* at 201. However, the following exchange took place on cross-examination, when the petitioner's attorney raised the subject:

> Q:   You just went in [to the sheriff's office], [and the sheriff's deputy and district attorney's investigator] said, "Tell me the story." And you told them?
> A:   No, sir.
> Q:   Okay. What happened?
> A:   He told me that . . . I was going to be charged with accessory or something like that.
> . . . .
> Q:   Okay. Did he indicate to you that if you cooperated that maybe something could be done, that maybe a deal could be worked out?

        A:      No, sir.
        Q:      He never made any promises at all?
        A:      No, sir.

*Id.* at 222. Even so, he admitted shortly thereafter to the deal originally described.[5] *Id.* at 225. The petitioner fails to show how this momentary lapse supports the idea that Brian was offering false testimony on the details of the murder.

These inconsistencies are insufficient to undermine the testimony of both witnesses at trial that the petitioner shot the victim. Additionally, as the respondent points out, there is considerable reason to doubt Brian's affidavit. At trial it was established through the testimony of Meeks, Brian, and the petitioner that they were the only ones present when Cole was murdered. Doc. 17, att. 3, pp. 131–32, 195–96; Doc. 17, att. 4, pp. 5–11. Brian's recantation would seem to support the version of events offered at trial by the petitioner, i.e. that Meeks was the one who shot Cole. *See* Doc. 17, att. 4, pp. 5–11. However, in one of his statements to police the petitioner admitted that he had shot Cole in a version of events corroborated by the testimony of Brian and Meeks.[6] Doc. 17, att. 3, pp. 22–23.

Given the petitioner's independent confession, the low persuasive value of the discrepancies, and the lack of corroborating evidence for the version of events offered in the recantation, there is insufficient basis for believing Brian's affidavit over his trial testimony.

---

[5] It is possible, as the respondent argues, that Brian misunderstood the question and thought that the defense attorney was only asking about deals offered by the district attorney's investigator.

[6] The petitioner claimed at trial that this statement was driven by fear, as he alleges that one of the investigators told him that they already had enough evidence to convict and that if he did not confess he would look like a cold-blooded killer and receive the death penalty. Doc. 17, att. 4, pp. 21–22, 25–26. However, as the prosecution pointed out, the statement contained details not suggested by the police, Meeks, or Brian, including how the petitioner put on gloves and retrieved the gun. *Id.* at 28–31. He also supplied police with his motive for killing Cole, by alleging that Cole had stolen three hundred dollars from him, though he claimed at trial that this statement had been a lie. *Id.* at 34.
      The petitioner further alleged that he was afraid that Meeks would kill him if he made a statement implicating Meeks in the shooting. *Id.* at 22–23. However, he admitted that Meeks only said, "I know Brian won't tell nobody, but you better not tell nobody" and did not explicitly threaten his life. *Id.* at 24–25.

Accordingly, the petitioner cannot show that Brian had perjured himself and therefore cannot prove that false evidence was knowingly introduced by the prosecution through Brian's testimony.

### 2. Challenge to Meeks' testimony

The petitioner also alleges that the prosecution knowingly offered false testimony through the use of Lavelle Meeks as a witness. As evidence for the falsity the petitioner again points to the inconsistency over disposal of the gun. He alleges that the prosecution must have been aware that one of their witnesses was lying based on this discrepancy. However, mere discrepancies in the evidence at trial do not establish that the prosecution used false testimony. *See United States v. Haese*, 162 F.3d 359, 365 (5th Cir. 1998). Here, as determined above, the discrepancy over the gun is of minimal persuasive value in light of the overall consistency of the testimonies and the petitioner's independent confession. Therefore these discrepancies do not provide adequate support for the notion that the prosecution introduced false evidence through Meeks' testimony.

Accordingly, this claim offers no basis for federal habeas relief as to the prosecution's use of testimony from either witness. The remaining two claims – that trial counsel was ineffective and the petitioner was denied his right to confront witnesses when the prosecution suborned perjury – are also rendered baseless through this finding.

## IV.
### CONCLUSION

For the reasons stated above, the undersigned concludes that the petitioner is not entitled to federal habeas relief.

Accordingly, **IT IS RECOMMENDED** that the instant application be **DENIED** and **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to

file any objections with the Clerk of Court.  Timely objections will be considered by the district judge prior to a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429–30 (5th Cir.  1996).

In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.  *See* 28 U.S.C. § 2253(c)(2).  A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE AND SIGNED in Chambers this 28th day of April, 2016.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE